Dennis I. Simon
Joel M. Simon
Crossroads LLC
9 Executive Circle
Suite 190
Irvine, California 92614
(949) 567-1600 telephone
(949) 567-1655 facsimile

Real Estate and Business
Consultant to Trustee

FILED

01 DEC 14 AM 9: 25

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY:_____DEPUTY

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re | ) Bk. No. ND 01-11549-RR |
| | ) |
| REED E. SLATKIN, | ) **Chapter 11** |
| | ) |
| Debtor. | ) **FIRST APPLICATION OF CROSSROADS,** |
| | ) **LLC, REAL ESTATE AND BUSINESS** |
| | ) **CONSULTANT TO TRUSTEE, FOR** |
| | ) **INTERIM COMPENSATION AND** |
| | ) **REIMBURSEMENT OF EXPENSES;** |
| | ) **DECLARATION OF JOEL M. SIMON; AND** |
| | ) **EXHIBITS** |
| | ) |
| | ) **Hearing Date and Time:** |
| | ) |
| | ) **DATE:** **January 9, 2002** |
| | ) **TIME:** **2:00 p.m.** |
| | ) **PLACE:** **1415 State Street** |
| | ) **Courtroom 201** |
| | **Santa Barbara, CA   93101]** |
| | {Hon. Robin Riblet} |

///

///

///

CROSSROADS, LLC

400

**TO THE HONORABLE ROBIN RIBLET, UNITED STATES BANKRUPTCY JUDGE, AND TO DEBTOR REED E. SLATKIN AND HIS COUNSEL, THE OFFICIAL UNSECURED CREDITORS COMMITTEE AND ITS COUNSEL, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

**I.    INTRODUCTION**

A.    Crossroads, LLC ("Crossroads" or "Applicant") hereby respectfully submits this first interim application for compensation and reimbursement (the "Application") under 11 U.S.C. §§ 330 and Local Bankruptcy Rule 2016-1(a). Crossroads seeks an order that allows and authorizes payment on an interim basis of Chapter 11 compensation and approval of expenses for the period August 28, 2001 through November 30, 2001 (the "Reporting Period") in the amounts summarized in Exhibit 3.

**II. SUMMARY**

A.    **Identity of Applicant**

On November 5, 2001, the Court entered an order authorizing the employment of Crossroads, effective August 28, 2001, as real estate and business consultants to R. Todd Neilson in his capacity as chapter 11 trustee ("Trustee") of the bankruptcy estate (the "Estate") of Reed E. Slatkin (the "Debtor").

B.    **Compensation And Reimbursement Sought**

Crossroads seeks allowance and payment of compensation in the total amount of $214,307.00 as reasonable and necessary fees for professional services rendered and approval of $22,974.80 as reimbursable expenses incurred during the Reporting Period. Such amounts represent Crossroads' Chapter 11 fees and expenses incurred from August 28, 2001 through November 30, 2001.

C.    **Exhibits**

The time, nature, and extent of the services performed by Crossroads during the

CROSSROADS, LLC

Reporting Period are described in the paragraphs that follow and in the exhibits to this Application. Those exhibits are as follows:

**Exhibit 1** includes a copy of the order that approved the employment of Crossroads by the Trustee.

**Exhibit 2** includes the resumes of the real estate and business consultants at Crossroads who provided services to the Trustee during the Reporting Period.

**Exhibit 3** is a summary and detail of the hours worked by Crossroads during the Reporting Period for each individual matter number.

**Exhibit 4** is a summary and detail of the expenses incurred by Crossroads during the Reporting Period for each individual matter number.

**D.     No Sharing of Compensation**

Any and all compensation awarded under this Application will be paid to Crossroads, for use by it and its members, and Crossroads has not agreed to share such compensation with the Trustee or with any other professional, or with any other person purporting to render professional services to the Estate or the Trustee.

**E.     Billing Practices and Reasonableness of Rates Charged**

1.     The billing rates to be charged by Crossroads in its representation of the Trustee will not exceed the same rates that Crossroads customarily charges to its solvent clients who pay for such services on a monthly or other regular basis.

2.     Crossroads is informed and believes that the rates charged by its professionals are fair and reasonable in light of the services rendered and the rates charged for similar types of services by comparable consulting firms. The hourly rates for Crossroads' consultants during the Reporting Period are as follows:

CROSSROADS, LLC

3.

(a)      Dennis I. Simon had a billing rate of $450 per hour discounted from his customary $550 per hour rate.

(b)      Joel M. Simon had a billing rate of $450 per hour discounted from his customary $535 per hour rate.

(c)      Pam Windham had a customary billing rate of $390 per hour.

(d)      Mark Dombroski had a customary billing rate of $310 per hour.

(e)      Craig Ehlers had a customary billing rate of $290 per hour.

(f)      Carla Cooper had a customary billing rate of $95 per hour.

3.      Crossroads has carefully reviewed all of the time charges incurred in its representation of the Estate to insure that those charges were reasonable and non-duplicative. All time charged to the Estate was billed in tenths of an hour.

4.      During the Reporting Period, Crossroads billed a total of 540.20 hours to the Estate, at an average hourly billing rate of approximately $322.33.

## III.   **FINANCIAL CONDITION OF ESTATE**

A.      Under Local Bankruptcy Rule 2016-1(a)(1), interim fee applications for compensation and reimbursement "shall contain a report of the administration of the case including the disposition of property of the Estate, what property remains to be disposed of, why the Estate is not in a position to be closed, and whether it is feasible to pay an interim dividend to creditors." Rule 2016-1(a)(1)(A) also requires a statement of the amount of funds on hand and the estimated amount of accrued and other administrative expenses. The Trustee has informed Crossroads that this information will be included in the interim fee application filed by the Trustee or by his accountants, Neilson Elggren LLP. Accordingly, Crossroads incorporates that information herein by reference.

## IV.    SERVICES PROVIDED

This section summarizes each of the separate categories of services rendered by Crossroads on the business entity headlined in the category . The billings for those services are summarized and detailed as well in Exhibit 3.

### REED SLATKIN – BON CARRE/BATON ROUGE

### A.    Business Analysis

Crossroads spent 158.50 hours and incurred fees in the amount of $61,525.00 on Business Analysis.

Applicant's services with respect to this category included the following:

The Applicant engaged in numerous individual telephonic communications, conference calls and other communications with the Reed Slatkin Estate Trustee, R. Todd Neilson ("Trustee"), other members of the Bon Carre LLC and counsel for the Estate's Committee of Unsecured Creditors, Bennett Spiegel, Esq., pertaining to the operations and financing of the Bon Carre Mall project, the Estate's interest therein, LLC member investment and governance issues, on-going property management matters, construction contractor payment issues, prospective operations of the project, and general project and area background and history. The foregoing were needed to assist the Trustee in his administration of the Estate as it pertains to the Bon Carre Mall.

From time-to-time, as required, the Applicant met with the Trustee and other LLC members, on matters relating to the foregoing, as well as the additional other specific matters further described in the following paragraphs. The meetings included an initial site visit with the Managing Member of the LLC. The Applicant also reviewed various analyses and communicated extensively with the Trustee and the Managing

CROSSROADS, LLC

Member of the LLC, Norman Harrower III ("Harrower"), concerning various proposals relating to an expression of interest in the project from Milton Womack, a local Baton Rouge developer/investor. During this same time, the LLC was negotiating another possible third party investment in the project from Ron Burkle. In connection therewith, Applicant reviewed certain correspondence between the LLC and the Burkle interests pertaining to the possible investment, and engaged in several extensive discussions and communications with the Trustee and other LLC members regarding this specific matter. The Applicant also participated with the LLC members in reviewing and responding to the initial Letter of Intent received from Research Park Corporation, indicating their interest in purchasing the project.

Additionally, Applicant communicated several times, telephonically and electronically, with the project's banker, Tim Collins, First Tennessee Bank, to discuss the status and administration of the outstanding construction financing, and certain refinancing alternatives under consideration, as well as the expressions of third party investor interest.

The Applicant also attended a meeting in Baton Rouge, LA with the Bank and LLC members to discuss the status of the outstanding project financing and the plans to repay the indebtedness.

Further to the aforementioned financing issues, the Applicant participated with one of the LLC members (Mark O'Donnell, POA for Kevin O'Donnell) in conversations with a potential refinancing prospect (Hibernia Bank) and reported the results of the communications to the Trustee and other LLC members. The Applicant worked extensively with Harrower in reviewing and responding to a draft Letter of Intent

CROSSROADS, LLC

6.

pertaining to a proposed major lease with Cox Communications. The results of the reviews and responses were reported regularly to the Trustee.

As requested by the Trustee, the Applicant undertook the responsibility to prepare a financial analysis of the project, including extensive due diligence requests for information, interviews of the various LLC members, gathering of source documentation and other information from the LLC members, the property management firm, and certain other parties involved in the project. The preparation of the financial analysis required a site visit, detailed reviews of available historical operating information, leasing and financing documentation, and other pertinent materials, as well as interviews of those persons providing the aforementioned information and materials.

Applicant's personnel spent considerable time in the development and preparation of the financial analysis models and related inputs, including online Internet based research for information pertaining to unpaid real estate taxes.

**B.      Business Operations**

Crossroads spent 10.70 hours and incurred fees in the amount of $3,517.00 on Business Operations.

Applicant's services with respect to this category included the following:

The Applicant spent time in this category engaged in discussions pertaining to historical operating issues and the on-going Construction Loan "draw" process.

Additionally, interviews were conducted with the property management personnel pertaining to a review of capital expenditures, tenant improvements program and the related financing requirements.

Applicant also participated in conference calls with the property

CROSSROADS, LLC

7.

management personnel and others (i.e. Johnson Capital) pertaining to the project's costs incurred to date and projected improvement costs.

## C.    Asset Sale

Crossroads spent 16.40 hours and incurred fees in the amount of $7,380.00 on Asset Sales.

Applicant's services with respect to this category included the following:

During the month of November, the Applicant engaged in an extensive series of communications with the Slatkin Trustee and other LLC members in connection with the possible sale of the project to Research Park Corporation. The Applicant was required to participate in the development of appropriate negotiation strategies, the review of various draft communications, discussions and considerations of financing alternatives and options for the buyer and the seller, meeting with the buyer's representatives at the Trustee's offices in Los Angeles, CA to discuss their offer and various other discussions and related communications pertaining to the response to the offer from First Tennessee Bank, the project's lender.

## D.    Travel

Crossroads spent 40.70 hours and incurred fees in the amount of $8,352.50 on Travel.

Applicant's services with respect to this category included the following:

Crossroads' has charged the Estate for one-half of the travel time spent by its personnel in working on the Estate's matters. Travel time will be computed from the time the individual leaves the location from which he or she departs until arrival at the

CROSSROADS, LLC

designated work location, and will be based on the individuals then current billing rate.

## REED SLATKIN – EASTGATE/CHATTANOOGA

**E.    Business Analysis**

Crossroads spent 106.40 hours and incurred fees in the amount of $41,310.00 on Business Analysis.

Applicant's services with respect to this category included the following:

The Applicant engaged in numerous individual telephonic conversations, conference calls, and other communications with the Reed Slatkin Estate Trustee, R. Todd Neilson ("Trustee"), other members of the Eastgate Mall LLC, and counsel for the Estate's Committee of Unsecured Creditors, Bennett Spiegel, Esq., pertaining to the operations and financing of the Eastgate Mall project and related adjacent properties which are, generally speaking, owned by the same group of investors. Applicant also discussed the Estate's interest therein, LLC member investment, governance issues, on-going property management matters, prospective operations of the project, delivery and coordination of property information to the project's lender, general project and area background, and history required to assist the Trustee in his administration of the Estate as it pertains to the Eastgate Mall and the aforementioned related properties.

From time-to-time, as required, the Applicant also met with the Trustee and other LLC members pertaining to the foregoing matters, as well as the additional other specific matters further described in the following paragraphs. The Applicant also reviewed and kept in regular and routine contact with the Trustee, the Managing Member of the LLC, Norman Harrower III ("Harrower"), and other LLC members concerning a draft offer to purchase the project and related properties from James Hudson, a local

CROSSROADS, LLC

Chattanooga, TN developer/investor.

Additionally, Applicant communicated several times, telephonically and electronically, with Richard Pulido, the representative of the project's lender, Prudential Mortgage Capital Company, LLC, pertaining to the status and administration of the outstanding project financing, as well as refinancing alternatives under consideration and the expression of interest from Hudson.

Applicant was asked to, and obliged in, assisting the LLC to identify and engage appropriate local legal counsel.  This was in response to the actions and demands being placed on Eastgate Mall LLC by Prudential.  In connection therewith, Applicant was required to contact various law firms and speak with the appropriate attorneys to ascertain their firms' experience and availability to represent the LLC in responding to Prudential, and to assist in the contemplated negotiations with Hudson.

The Applicant also had a number of detailed conversations with a former LLC employee, Jerry Chauvin, who is now working with the Hudson interests to help facilitate the contemplated transaction. The conversations were intended to clarify the Hudson proposal and the results of the conversations were reported to the Trustee and other LLC members.

Additionally, the Trustee requested the Applicant to prepare a detailed financial analysis of the project, including extensive due diligence requests for information, interviews of the various LLC members, gathering of source documentation and other information from the LLC members, the property management firm, and certain other parties involved in the project.

CROSSROADS, LLC

The preparation of the financial analysis required a site visit, detailed reviews of available historical operating information, leasing and financing documentation, and other pertinent materials, as well as interviews of those persons providing the aforementioned information and materials. Applicant's personnel spent considerable time in the development and preparation of the financial analysis models and related inputs.

**F.     Business Operations**

Crossroads spent 14.20 hours and incurred fees in the amount of $4,514.00 on Business Operations.

Applicant's services with respect to this category included the following:

The Applicant spent time in this category engaged in discussions pertaining to historical operating issues. Additionally, reviews of certain electronic files and interviews were conducted with the property management personnel pertaining to the project's historical results. Certain LLC tax return information was also reviewed.

Applicant participated in various conference calls with the property management personnel pertaining to the project's costs incurred to date, as well as projected operations and requirements.

**G.     Litigation**

Crossroads spent .20 hours and incurred fees in the amount of $90.00 on Litigation.

Applicant's services with respect to this category included the following:

During the period, the Applicant engaged in communications with certain LLC members concerning the possible chapter 11 filing for the Eastgate LLC.

CROSSROADS, LLC

## H.   Asset Sale

Crossroads spent 28.30 hours and incurred fees in the amount of $12,735.00 on Asset Sales.

<u>Applicant's services with respect to this category included the following:</u>

During the month of November, the Applicant engaged in extensive communication with the Trustee, members of the Eastgate LLC, counsel for the LLC, counsel for the Slatkin Estate's Official committee of Unsecured Creditors and others pertaining to the contemplated sale of the project and related negotiations with the project lender concerning the project debt. The Applicant participated in direct negotiations with the prospective purchaser Hudson and his counsel and other representatives, reviewed various draft documents covering the possible purchase and other related draft documents and communications. At the same time, the Applicant participated in negotiations and extensive communications with the aforementioned parties, excluding the prospective purchaser, and the project lender, Prudential and its counsel pertaining to a contemplated Forbearance Agreement in connection with the outstanding indebtedness on the property.

## I.   Travel

Crossroads spent 32.50 hours and incurred fees in the amount of $6,297.50 on Travel.

<u>Applicant's services with respect to this category included the following:</u>

Crossroads' has charged the Estate for one-half of the travel time spent by its personnel in working on the Estate's matters. Travel time will be computed from the time the individual leaves the location from which he or she departs until arrival at the designated work location, and will be based on the individuals then current billing rate.

CROSSROADS, LLC                                        12.

## REED SLATKIN – ORANGE BLOSSOM/FT. PIERCE

J.    **Business Analysis**

Crossroads spent 7.70 hours and incurred fees in the amount of $3,099.00 on Business Analysis.

Applicant's services with respect to this category included the following:

The Applicant engaged in certain specific communications, conference calls and other communications with the Reed Slatkin Estate Trustee, R. Todd Neilson ("Trustee"), pertaining to the operations and financial structure of the Orange Blossom Mall project, the Estate's interest therein, LLC member investment and governance issues, on-going property management and operational matters, prospective operations of the project and general project and area background and history required to assist the Trustee in his administration of the Estate as it pertains to the Orange Blossom Mall. Additionally, Applicant visited the project to gather information pertaining to the property's operations and to meet with the local property manager in connection with the preparation of a financial evaluation of the project, similar to Bon Carre and Eastgate, as requested by the Trustee

K.    **Travel**

Crossroads spent 8.00 hours and incurred fees in the amount of $1,560.00 on Travel.

Applicant's services with respect to this category included the following:

Crossroads' has charged the Estate for one-half of the travel time spent by its personnel in working on the Estate's matters. Travel time will be computed from the

CROSSROADS, LLC                                                    13.

time the individual leaves the location from which he or she departs until arrival at the designated work location, and will be based on the individuals then current billing rate.

### REED SLATKIN – ASHLAND HOTEL

**L.**      **Business Analysis**

Crossroads spent 55.50 hours and incurred fees in the amount of $16,767.00 on Business Analysis.

Applicant's services with respect to this category included the following:

The Applicant engaged in several communications, conference calls and other communications with the Reed Slatkin Estate Trustee, R. Todd Neilson ("Trustee"), pertaining to the operations and financial structure of the Ashland Springs Hotel project, the Estate's interest therein, LLC member investment and governance issues, on-going property management and operational matters, prospective operations of the project and general project and area background and history required to assist the Trustee in his administration of the Estate as it pertains to the Hotel.

As required, the Applicant met with Douglas Neuman, Managing Member of the ownership LLC, and various financial and operating Hotel personnel pertaining to the foregoing matters, as well as the other specific matters further described in the following paragraph. As requested by the Trustee, the Applicant undertook the responsibility to prepare a detailed report/financial analysis of the project, including extensive due diligence requests for information, interviews of the Managing LLC member and appropriate Hotel personnel, gathering of source documentation and other information from other relevant industry and local sources.

CROSSROADS, LLC

14.

The report preparation required a site visit, detailed reviews of available historical operating information, projections and business plans, financing documentation, and other pertinent materials, as well as interviews of those persons providing the aforementioned information and materials. Applicant's personnel spent considerable time in the development and preparation of the report, financial analysis and related inputs.

**M.     Travel**

Crossroads spent 8.50 hours and incurred fees in the amount of $1,232.50 on Travel.

Applicant's services with respect to this category included the following:

Crossroads' has charged the Estate for one-half of the travel time spent by its personnel in working on the Estate's matters.  Travel time will be computed from the time the individual leaves the location from which he or she departs until arrival at the designated work location, and will be based on the individuals then current billing rate.

**REED SLATKIN /GENERAL**

**N.     Business Analysis**

Crossroads spent 43.60 hours and incurred fees in the amount of $18,286.00 on Business Analysis.

Applicant's services with respect to this category included the following:

The Applicant engaged in numerous individual telephonic communications, conference calls and other communications with Trustee, other members of the "Mall Real Estate LLC Group" (including the Bon Carre, Eastgate and Orange Blossom Malls and related adjacent property interests, wherever applicable) and counsel for the Estate's

CROSSROADS, LLC

Committee of Unsecured Creditors, Bennett Spiegel, Esq.   These communications all related to the operations and financing of the aforementioned group of Mall projects, Ashland Springs Hotel project, the Estate's interest therein, LLC member investment, governance issues, on-going property management matters, prospective operations of the projects and general project and area background, and history required to assist the Trustee in his administration of the Estate as it pertains to the Mall projects as a group and the Hotel.

From time-to-time, as required, the Applicant met with the Trustee and other LLC members pertaining to the foregoing matters, as well as the additional other specific matters further described in this paragraph.   The Applicant gathered, organized and prepared numerous documents from various sources in connection with the various aforementioned projects' operating results, debt structures and corporate organization in connection with the required specific due diligence tasks and development of property specific financial models and analyses.

**O.     Business Operations**

Crossroads spent 27.60 hours and incurred fees in the amount of $9,264.00 on Business Operations.

Applicant's services with respect to this category included the following:

The Applicant spent time in this category engaged in individual telephonic and conference call communications pertaining to gathering historical project operating data to develop the required financial models and related analyses. Additionally, meetings and interviews were conducted with various LLC members and others (e.g. Johnson Capital) to gather source documentation, representative financial information and, if

CROSSROADS, LLC

16.

possible, the identification of other information resources and corroboration.

Additionally, the time spent on the preliminary development of spreadsheets to analyze various financing alternatives and project cash flows was charged to this category, as well as the time spent on matters of overall task planning and engagement management.

**P.     Case Administration**

Crossroads spent .30 hours and incurred fees in the amount of $135.00 on Case Administration.

Applicant's services with respect to this category included the following:

The Applicant prepared staffing plans in connection with additional assignments identified by the Trustee.

**Q.     Fee Application**

Crossroads spent 14.40 hours and incurred fees in the amount of $4,350.00 in preparation of the Fee Application.

Applicant's services with respect to this category included the following:

The Applicant prepared and filed this first interim application for compensation and reimbursement of costs.

**R.     Travel**

Crossroads spent 74.70 hours and incurred fees in the amount of $13,892.50 on Travel.

Applicant's services with respect to this category included the following:

Crossroads' has charged the Estate for one-half of the travel time spent by its personnel in working on the Estate's matters.  Travel time will be computed from the

CROSSROADS, LLC

time the individual leaves the location from which he or she departs until arrival at the designated work location, and will be based on the individuals then current billing rate.

## V.    ENTITLEMENT TO REASONABLE COMPENSATION

A.    Under 11 U.S.C. § 330, the Court has the power to award reasonable interim compensation. "Section 330 of the Bankruptcy Reform Act was intended to overrule the judicially fashioned doctrine of 'economy of the Estate' and to ensure adequate compensation for bankruptcy attorneys so that highly qualified specialists would not be forced to abandon the practice of bankruptcy law in favor of more remunerative kinds of legal work . . . ." In re Nucorp Energy, Inc., 764 F.2d 655, 658 (9th Cir. 1985). "Professionals in bankruptcy cases are entitled to be paid on a comparable basis to other privately retained counsel, both in terms of timeliness and amount of payment." In re Commercial Consortium, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991). "Reasonable compensation" must be based on an analysis of various factors, including results obtained, quality of work and expertise of counsel.

## VI.    REIMBURSEMENT OF COSTS

By this Application, Crossroads is requesting reimbursement of expenses incurred during the Application Period in the amount of $22,974.80. Crossroads has prepared a breakdown of the expenses by the business entity headlined in the category below.

The following is a brief cost summary as to the various types of expenses Crossroads has sustained and is seeking reimbursement for:

### REED SLATKIN – BON CARRE/BATON ROUGE

A.    Telephone Charges: Crossroads incurred the sum of $8.27 in telephone charges.

B.    Travel: Parking charges, train, and/or airline fares, taxi, meals, car rentals, hotel, mileage and the like are passed directly to the client at Crossroads' cost. In this case, Crossroads

CROSSROADS, LLC

18.

incurred travel charges of $8,206.66 on behalf of the Trustee.

### REED SLATKIN – EASTGATE/CHATTANOOGA

C.      Travel: Parking charges, train, and/or airline fares, taxi, meals, car rentals, hotel, mileage and the like are passed directly to the client at Crossroads' cost.  In this case, Crossroads incurred travel charges of $3,383.14 on behalf of the Trustee.

### REED SLATKIN – ORANGE BLOSSOM/FT PIERCE

D.      Travel: Parking charges, train, and/or airline fares, taxi, meals, car rentals, hotel, mileage and the like are passed directly to the client at Crossroads' cost.  In this case, Crossroads incurred travel charges of $231.13 on behalf of the Trustee.

### REED SLATKIN – ASHLAND HOTEL

E.      Telephone Charges: Crossroads incurred the sum of $32.78 in telephone charges.

F.      Travel: Parking charges, train, and/or airline fares, taxi, meals, car rentals, hotel, mileage and the like are passed directly to the client at Crossroads' cost.  In this case, Crossroads incurred travel charges of $1,173.39 on behalf of the Trustee.

### REED SLATKIN – SLATKIN/GENERAL

G.      Document Reproduction: Crossroads incurred the total sum of $64.20 in document reproduction expenses.  Crossroads' photocopy equipment will operate only when a specific client number is entered into the equipment.  In addition, the coding system permits the entry of a code number for the type of photocopying to be done.  All of Crossroads' clients are charged $.15 per page.

CROSSROADS, LLC

H.    Facsimile Charges: Crossroads incurred a total sum of $48.00 in Fax expenses. Crossroads' facsimile equipment will operate only when a specific client number is entered in the equipment. All of Crossroads' clients are charged $.50 per page.

I.    Telephone Charges: Crossroads incurred the sum of $36.76 in telephone charges.

J.    Federal Express/Overnight Delivery: Crossroads incurred the sum of $132.20 in federal express/overnight delivery charges during the Reporting Period. Crossroads only used federal express/overnight delivery services when it was critical for documents to be delivered on an expedited basis.

K.    Travel: Parking charges, train, and/or airline fares, taxi, meals, car rentals, hotel, mileage and the like are passed directly to the client at Crossroads' cost. In this case, Crossroads incurred travel charges of $9,658.27 on behalf of the Trustee.

No agreement or understanding of any kind exists between Crossroads and any other person for the sharing of compensation received or to be received by Crossroads for services rendered to the Trustee, in connection with these administratively consolidated chapter 11 cases.

## VII.    CONCLUSION

WHEREFORE, Crossroads respectfully requests that the Court enter an order that:

(i)    allows Crossroads a Chapter 11 administrative claim under 11 U.S.C. §§ 330, 503(b), and 507(a)(1) for interim compensation of $174,122.00 and approves Crossroads' expenses of $22,974.80;

(ii)    authorizes and directs the Trustee to pay Crossroads' allowed administrative claim for compensation;

CROSSROADS, LLC

20.

**(iii)** provides that Crossroads' claim is allowed on an interim basis and subject to reconsideration under 11 U.S.C. § 502(j); and

**(iv)** grants such other and further relief as the Court deems proper.

DATED: December _____, 2001

Respectfully submitted,

CROSSROADS, LLC

By: _____
         Joel M. Simon

Real Estate and Business Consultant to the Chapter 11 Trustee of the Bankruptcy Estate of Reed E. Slatkin

CROSSROADS LLC

21

## DECLARATION OF JOEL M. SIMON

I, JOEL M. SIMON, declare:

1.  I am a principal in Crossroads LLC ("Crossroads") headquartered at 9 Executive Circle, Suite 190, Irvine, California 92614. I have personally represented the Trustee in this case since approximately August 28, 2001. As a result, I have personal knowledge of the matters set forth in this declaration and would competently testify to those facts under oath if requested to do so.

2.  Crossroads' First Interim Fee Application for the time period August 28, 2001 through November 30, 2001 ("the Reporting Period") complies with the United States Trustee Guidelines A and B.

3.  I have reviewed the time records of Crossroads submitted herewith, and I believe them to accurately reflect the services rendered and to be reasonable. Where appropriate, shortly after the work was performed, on a monthly basis and prior to putting the billing statements in final form, I caused any work which I believed was not justified to be deleted from the bills. Additionally, in preparing this Fee Application, I again reviewed the bills and wrote off additional time where I believed any charges were inappropriate or improper.

4.  Attached to this Application are the following exhibits:

    **Exhibit 1** includes a copy of the order that approved the employment of Crossroads by the Trustee.

    **Exhibit 2** includes the resumes of the real estate and business consultants at Crossroads who provided services to the Trustee during the Reporting Period.

    **Exhibit 3** is a summary and detail of the hours worked by Crossroads during the Reporting Period. The summary is divided into categories as required by U.S. Trustee Guidelines.

    **Exhibit 4** is a summary and detail of the expenses incurred by Crossroads on behalf of the Estate during the Reporting Period.

CROSSROADS LLC                                         22.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this ____ day of December 2001.

_____
JOEL M. SIMON

# DECLARATION OF R. TODD NEILSON

I, R. TODD NEILSON, declare:

1.      I am the Chapter 11 Trustee of the Bankruptcy Estate ("the Estate") of Reed E. Slatkin and have served as such since May 2001. I have personal knowledge of each fact stated in this declaration, and if called as a witness, I could and would testify competently to those facts.

2.      I have reviewed the time charges for Crossroads, LLC, my real estate and business consultants, which are set forth as Exhibit 4 to this Application.

3.      I believe that the time charges are reasonable, necessary and appropriate and hereby request that they be approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 12th day of December, 2001 at Los Angeles, California.

_____
R. TODD NEILSON