ORIGINAL

RICHARD L. WYNNE (Bar No. 120349)
KELLY K. FRAZIER (Bar No. 212527)
KIRKLAND & ELLIS
777 South Figueroa Street
Los Angeles, California 90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Attorneys For Official Committee Of
Unsecured Creditors

JOHN P. REITMAN (Bar No. 80579)
SUSAN I. MONTGOMERY (Bar No. 120667)
GUMPORT, REITMAN & MONTGOMERY
550 South Hope Street, Suite 825
Los Angeles, California 90071-2627
Telephone:  (213) 452-4900
Facsimile:  (213) 623-3302

Attorneys For R. Todd Neilson, Chapter 11 Trustee
Of The Bankruptcy Estate Of Reed E. Slatkin

FILED

DEC 2 6 2001

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

In re:

REED E. SLATKIN,

                    Debtor.

Case No.: ND 01-11549-RR

Chapter 11

**NOTICE OF MOTION AND MOTION PURSUANT TO FED. R. BANKR. P. 2004 AND LOCAL BANKRUPTCY RULE 2004-1 FOR AN ORDER FOR THE EXAMINATION OF AND THE LIMITED PRODUCTION OF DOCUMENTS BY BRETT R. SLATKIN; DECLARATIONS OF KELLY K. FRAZIER AND SUSAN I. MONTGOMERY; EXHIBITS**

DATE:
TIME:
PLACE:       1415 State Street
             Courtroom 201
             Santa Barbara, CA 93101

**[No Hearing Requested or Required.]**



**TO THE DEBTOR REED E. SLATKIN, BRETT R. SLATKIN, THE UNITED STATES TRUSTEE, AND THEIR RESPECTIVE ATTORNEYS:**

**NOTICE IS HEREBY GIVEN** that R. Todd Neilson, Chapter 11 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Reed E. Slatkin ("Debtor") and the Official Committee of Unsecured Creditors (the "Committee") (the Trustee and the Committee are hereinafter referred to as the "Moving Parties") hereby move the Court for an order, substantially in the form of the proposed order filed concurrently herewith (the "Order"), pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 2004-1, that directs Brett R. Slatkin ("BR Slatkin"):

1.  To produce to the Moving Parties the documents described in Exhibit 1 attached hereto on or before January 25, 2002 at 10:00 a.m., at the law offices of Kirkland & Ellis, Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611, Attn: Shirley S. Cho, Esq. (Telephone: 212-446-4800); and

2.  To appear for and submit to an examination under oath, by one or both of the Moving Parties, at 10:00 a.m. on February 12, 2002, at the law offices of Kirkland & Ellis, Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611 (or such other date and place upon which the parties may mutually agree), with said examination to continue from day-to-day (Saturdays, Sundays and holidays excepted) until completed.

This Motion is limited in scope and seeks a limited production of documents and an examination that relate principally to the following subjects: (a) BR Slatkin's contention that certain property is his property and not property of the Estate; (b) if any property is BR Slatkin's property, whether he obtained it by means of actual or constructive fraudulent transfers from the Debtor; and (c) the source of funds used to pay for certain property now in the possession of BR Slatkin and his college tuition and living expenses. The requested production of documents and examination will, *inter alia*, aid ongoing efforts to obtain a complete set of records pertaining to the Debtor's assets, businesses and financial affairs. Because of the limited scope of this Motion, the Moving Parties anticipate that, at a later date, it may be necessary to request the production of additional documents

by BR Slatkin and to examine him further under oath in the course of the Moving Parties' investigation of the Debtor's business and financial affairs and the Estate's assets and liabilities.

**NOTICE IS FURTHER GIVEN** that this Motion is made pursuant to Bankruptcy Rules 2004 and 9016 and Local Bankruptcy Rule 2004-1 on the grounds that the requested documents and examination will facilitate the Moving Parties' investigations, including their investigation of BR Slatkin's claims that certain property is his property and not property of the Estate. In addition, because there is no adversary proceeding or contested matter in which this discovery would be appropriate, the Moving Parties may not proceed under Bankruptcy Rules 7030 or 9014.

**NOTICE IS FURTHER GIVEN** that this Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Kelly K. Frazier and Susan I. Montgomery, and Exhibits, as well as the file in this case, of which the Court is requested to take judicial notice.

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Bankruptcy Rule 2004-1, no hearing on this Motion will be held and any opposition to this Motion or the proposed Order must be made by means of a motion for a protective order. Any such motion for a protective order must be served on the Moving Parties and the United States Trustee and filed with the Court at the following addresses at least eleven (11) days before the scheduled date of the production of documents, and such motion must be set for hearing not less than two (2) court days before the scheduled date of the document production:

**For Filing with the Court**
Clerk's Office
1415 State Street
Santa Barbara, California 93101

**For Service on the Trustee**
R. Todd Neilson, Trustee
c/o Susan I. Montgomery, Esq.
Gumport, Reitman & Montgomery
550 South Hope Street, Suite 825
Los Angeles, California 90071

**For Service on the Committee**
Official Committee of Unsecured Creditors
c/o Richard L. Wynne
Kirkland & Ellis
777 South Figueroa Street, 34th Floor
Los Angeles, California 90017

**For Service on the United States Trustee**
Brian D. Fittipaldi, Esq.
Office of the United States Trustee
128 East Carillo Street
Santa Barbara, California 93101

///

///

-3-

Failure to timely file and serve an opposition may be deemed to constitute consent to the granting of the Motion.

DATED:   December 21, 2001

Respectfully submitted,

GUMPORT, REITMAN & MONTGOMERY
Attorneys for R. Todd Neilson, Chapter 11 Trustee
of the Bankruptcy Estate of Reed E. Slatkin

KIRKLAND & ELLIS

By _____
Kelly K. Frazier
Attorneys for Official Committee of Unsecured
Creditors

-4-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 2004-1, R. Todd Neilson, the chapter 11 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Reed E. Slatkin ("Debtor"), and the Official Committee of Unsecured Creditors (the "Committee") (the Trustee and the Committee are hereinafter referred to as the "Moving Parties"), hereby apply for an order that directs Brett R. Slatkin ("BR Slatkin"):

1. To produce to the Moving Parties the documents described in Exhibit 1 attached hereto at or before 10:00 a.m. on January 25, 2002 at the law offices of Kirkland & Ellis, Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611, Attn: Shirley S. Cho, Esq. (Telephone: 212-446-4800); and

2. To appear for and submit to an examination under oath by one or both of the Moving Parties at 10:00 a.m. on February 12, 2002 at the law offices of Kirkland & Ellis, Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611 (or such other date and time on which the parties may mutually agree), with said examination to continue from day-to-day (Saturdays, Sundays and holidays excepted) until completed.

The Motion seeks a limited production of documents and an examination that relate principally to the following subjects: (a) BR Slatkin's contention that certain property is his property and not property of the Estate; (b) if any property is BR Slatkin's property, whether he obtained it by means of actual or constructive fraudulent transfers by the Debtor; and (c) the source of funds used to pay for certain property now in the possession of BR Slatkin, his college tuition and his living expenses. The Moving Parties anticipate that it may be necessary to request the production of additional documents and to conduct a further examination of BR Slatkin in the course of their investigations, including the investigations of the Debtor's business and financial affairs, the Estate's assets, and the amount and validity of claims against the Estate.

///

///

## II.   THE REQUESTED RELIEF WILL FACILIATE THE MOVING PARTIES' INVESTIGATION OF THE DEBTOR'S FINANCIAL AFFAIRS, ASSETS AND LIABILITIES, PARTICULARLY BR SLATKIN'S CONTENTION THAT CERTAIN PROPERTY IS HIS SEPARATE PROPERTY.

Pursuant to 11 U.S.C. § 1106(a)(2) and (a)(3), the Trustee is required to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business … and any other matter relevant to the case or to the formulation of a plan," and "if the debtor has not done so, file the list, schedule, and statement required under section 521(1) of this title." In addition, 11 U.S.C. § 1103(c) authorizes the Committee to "consult with the trustee … concerning the administration of the case" and to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business … and any other matter relevant to the case …" The Moving Parties believe that the documents and examination requested by the Motion will assist them in performing their respective duties under the Bankruptcy Code, including the duty to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor.

A primary means of making that investigation is Bankruptcy Rule 2004, which provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a); see also Fed. R. Bankr. P. 9016 (adopting the federal subpoena power of Rule 45 of the Federal Rules of Civil Procedure). The scope of a Rule 2004 examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). It is well recognized that the scope of Rule 2004 is "unfettered and broad." In re Dinubilo, 177 B.R. 932, 939 (E.D. Cal. 1993) (citing In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983)).

BR Slatkin is the Debtor's son. Through his counsel, BR Slatkin has asserted that various items of personal property and accounts are his separate property. See Exhibit 2. The Moving Parties request that the Court order BR Slatkin to produce the documents described in Exhibit 1 attached hereto, and to appear for his examination under oath so that the Moving Parties may better assess whether that property is, in fact, BR Slatkin's property or, alternatively, property of the Estate. The Moving Parties also expect that this discovery will help them to determine whether BR Slatkin

obtained any personal property by means of actual or constructive fraudulent transfers from the Debtor. Although the Trustee, through his counsel, previously has sought copies of some of the documents requested in Exhibit 1 informally, by means of letters dated October 10, 2001 and October 26, 2001 to BR Slatkin's counsel, Michaelson, Susi & Michaelson (see Exhibits 3 and 4, respectively), BR Slatkin has not provided the requested documents.

In addition, the requested examination will explain the true import of the documentary evidence, and will therefore increase the utility of any document production. Thus, the examination is necessary for a full understanding of the documents requested, and more generally, will help the Moving Parties assess the Debtor's activities to properly analyze the assets and liabilities of the Estate.

### III. THE MOVING PARTIES HAVE COMPLIED WITH ALL PROCEDURAL REQUIREMENTS OF BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1.

Pursuant to Local Bankruptcy Rule 2004-1, a party moving for a Rule 2004 examination must, among other things, "state the place of residence and place of employment of the party whose examination is requested, if known" and "state why the examination cannot proceed under F.R.B.P. 7030 or 9014." In addition, motions for Rule 2004 examinations must be "served on the debtor, the trustee ..., the United States trustee, and the examinee." Local Bankruptcy Rule 2004-1. In accordance with these prescribed requirements, the Moving Parties are informed and believe that BR Slatkin is a college student residing in New York, New York. BR Slatkin's parents reside at 904 Skyview Drive in Santa Barbara, California. The Moving Parties have been unable to obtain BR Slatkin's college residence address, and his business address, if any, is unknown. However, the Michaelson, Susi & Michaelson firm has notified the Trustee's counsel that it will accept service of the Rule 2004 Motion and subpoena on behalf of BR Slatkin. Because there is no adversary proceeding or contested matter currently pending in which this discovery would be appropriate, the Moving Parties may not proceed under Bankruptcy Rules 7030 or 9014. A copy of the Motion is being served on, among others, BR Slatkin, through his counsel, the Debtor (through his counsel), and the United States Trustee. In addition to the requirements of Local Bankruptcy Rule 2004-1, Bankruptcy Rule 2004(e) provides that a non-debtor "shall not be required to attend as a witness

unless lawful mileage and witness fee for one day's attendance shall be first tendered." The Moving Parties submit that, if applicable, lawful mileage and witness fees will be tendered to the examinee, or his counsel, with service of the subpoena issued in conjunction with this Rule 2004 examination request in accordance with 28 U.S.C. § 1821.

III.    **CONCLUSION**

For the reasons set forth above, the Moving Parties respectfully request that the Court enter an order directing BR Slatkin to produce the documents described in Exhibit 1, to appear for an examination under oath at the date and time set forth herein, and to grant such further relief as the Court deems just and proper.

DATED:  December 21, 2001                    Respectfully submitted,

GUMPORT, REITMAN & MONTGOMERY
Attorneys for R. Todd Neilson, Chapter 11 Trustee of the
Bankruptcy Estate of Reed E. Slaktin

KIRKLAND & ELLIS

By _____
         Kelly K. Frazier
Attorneys for Official Committee of Unsecured Creditors

-8-

## DECLARATION OF KELLY K. FRAZIER

I, KELLY K. FRAZIER, declare that:

1.      I am an attorney licensed to practice before, among other jurisdictions, the state of California and the United States District Court for the Central District of California. I also am an associate in the law firm of Kirkland & Ellis, counsel for the Official Committee of Unsecured Creditors ("Committee") appointed in the pending chapter 11 bankruptcy proceeding of Reed E. Slatkin ("Debtor").

2.      I make this declaration in support of the "Motion Pursuant To Fed. R. Bankr. P. 2004 And Local Bankruptcy Rule 2004-1 For An Order For The Examination Of And The Limited Production Of Documents By Brett R. Slatkin" (the "Motion") filed by the Committee and R. Todd Neilson, chapter 11 trustee ("Trustee") for the Debtor's bankruptcy estate (the "Estate"). Except as otherwise stated, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

3.      Based on the declaration filed by Brett R. Slatkin ("BR Slatkin") on or about October 9, 2001, the Court may take judicial notice that BR Slatkin is the Debtor's son.

4.      The Motion seeks a limited production of documents and an examination that relate principally to the following subjects: (a) BR Slatkin's contention that certain property is his property and not property of the Estate; (b) if any property is BR Slatkin's property, whether he obtained it by means of actual or constructive fraudulent transfers by the Debtor; and (c) the source of funds used to pay for certain property now in the possession of BR Slatkin, his college tuition and living expenses.

5.      The relief requested in the Motion will aid the Committee and the Trustee to better assess whether certain property alleged by BR Slatkin to be his property is, in fact, his property or, alternatively, property of the Estate. The requested discovery also will help the Committee and the Trustee to determine whether BR Slatkin obtained any personal property by means of actual or constructive fraudulent transfers from the Debtor.

6.      In addition, the requested examination of BR Slatkin will explain the true import of the documentary evidence, and will therefore, in my opinion, increase the utility of any document production. Thus, I believe the examination is necessary for a full understanding of the documents

requested, and more generally, will help the Trustee and the Committee assess the Debtor's activities and properly analyze the assets and liabilities of the Estate.

7. I anticipate that it may be necessary to request the production of additional documents and to conduct a further examination of BR Slatkin in the course of the Committee's and Trustee's investigations, including the investigations of the Debtor's business and financial affairs, the Estate's assets, and the amount and validity of claims against the Estate.

8. There is no adversary proceeding or contested matter currently pending in which the discovery sought by the attached Motion would be appropriate, and thus such discovery is not properly obtained pursuant to Rules 7030 or 9014 of the Federal Rules of Bankruptcy Procedure.

9. I submit that, if applicable, I will cause lawful mileage and witness fees to be tendered to the examinee, or his counsel, with service of the subpoena issued in conjunction with the Rule 2004 examination request in accordance with 11 U.S.C. § 1821.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of December, 2001, at Los Angeles, California.

Kelly K. Frazier

## DECLARATION OF SUSAN I. MONTGOMERY

I, SUSAN I. MONTGOMERY, hereby declare that:

1.      I am an attorney admitted to practice before this Court, and I am a partner in the law firm of Gumport, Reitman & Montgomery ("GRM"), counsel to R. Todd Neilson, chapter 11 trustee (the "Trustee") of the bankruptcy estate of Reed E. Slatkin (the "Debtor"). I make this declaration in support of the "Motion Pursuant To Fed. R. Bankr. P. 2004 And Local Bankruptcy Rule 2004-1 For An Order For The Examination Of And The Limited Production Of Documents By Brett R. Slatkin" (the "Motion") filed by the Trustee and the Official Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case. Since approximately May 30, 2001, I have personally participated in GRM's representation of the Trustee in this case. As a result, except as otherwise expressly stated, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.      Exhibit 2 attached to the Motion is a true and correct copy of a September 27, 2001 letter that I received from Joseph M. Sholder, Esq. of the law firm of Michaelson, Susi & Michaelson ("MSM"), counsel for BR Slatkin. Pursuant to that letter, BR Slatkin asserted, among other things, that various items of personal property and accounts are his separate property.

3.      Exhibits 3 and 4, both of which are attached to the Motion, are true and correct copies of letters, dated October 10, 2001 and October 26, 2001, respectively, that I sent to MSM. Pursuant to these letters, I requested, among other things, copies of some of the documents requested in Exhibit 1 to the Motion and that constitute, discuss, describe or mention the assets that BR Slatkin purports are his separate property. As of the date hereof, neither MSM nor BR Slatkin have provided me or my firm with the requested documents.

4.      Based on statements made by the Debtor that he was taking his son to New York for college in or about September 2001, I am informed and believe that BR Slatkin is a college student living in New York. However, I do not know BR Slatkin's specific residential address in New York or his business address, if any. BR Slatkin's parents reside at 904 Skyview Drive in Santa Barbara, California.

///

-11-

5.      In or about October and November 2001, I sent letters to Jay Michaelson of MSM requesting BR Slatkin's address or confirmation that MSM was authorized to accept service of the Rule 2004 Motion and subpoena on BR Slatkin's behalf. Andrew S. Rotter, Esq. of GRM informed me that Joseph Shoulder, Esq. of MSM confirmed in a telephone conversation with Mr. Rotter, in November 2001, that MSM is authorized to accept service on behalf of BR Slatkin.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of December, 2001, at Los Angeles, California.

Susan I. Montgomery

-12-

**"EXHIBIT 1"**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure and by Order of the United States Bankruptcy Court for the Central District of California, Northern District, Brett R. Slatkin shall produce for inspection and copying on January 25, 2002 at 10:00 a.m., at the offices of Kirkland & Ellis, Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611, Attn. Shirley S. Cho, Esq. (Telephone: 212-446-4800), the Documents described below.

**INSTRUCTIONS**

A.       You are instructed to produce the Documents, as defined below and described herein, that are in your possession, custody, control, and/or constructive possession, including, but not limited to, Documents in the possession of your attorneys, accountants, bookkeepers, representatives and/or agents. You are further instructed to produce the Documents as they are kept in the usual course of business. To the extent that a Document is maintained on computer, a hard copy of the Documents shall be produced. In addition, Documents are to be produced in their entirety; redacted Documents will not constitute compliance with this request.

B.       If you contend that the contents of a Document are protected from disclosure because of an applicable privilege or the work-product doctrine, you must supply a description of that Document providing the following information:

1.       Each privilege or doctrine that you contend protects the contents of that Document from disclosure;

2.       Each fact upon which you rely to support your claim of privilege;

3.       The type of Document (e.g., letter, memorandum, telegram, facsimile transmission, e-mail, computer database, notes, memorandum of telephone conversation, etc.);

4.       The date of the Document or, if it bears no date, the date on which it was prepared;

5.       The name of each author of the Document;

6.       The name of each person to whom the Document was directed;

-13-   **EXHIBIT**        1

7. The name of each person who received or reviewed the Document or to whom the Document or a copy of it was supplied; and

8. The general subject matter of the Document.

C. In the event that any Document demanded has been destroyed, discarded, or otherwise disposed of (a "Disposal"), each such Document is to be identified as completely as possible, including, without limitation, the following information:

1. The type of Document (e.g., letter, memorandum, telegram, facsimile transmission, e-mail, computer database, notes, memorandum of telephone conversation, etc.);

2. The date of the Document;

3. The name of each author of the Document;

4. The name of each person to whom the Document was directed;

5. The name of each person who received or reviewed the Document or to whom the Document or a copy thereof was supplied;

6. The general subject matter of the Document;

7. The date of the Disposal;

8. The manner of Disposal;

9. The reason for the Disposal;

10. The name of the person(s) who authorized the Disposal;

11. The name of the person(s) who disposed of the Document; and

12. The name of the custodian of the Document at the time of the Disposal.

D. Each of the following requests for production of Documents is intended to be continuing in nature, and thus supplemental production is demanded in the event you directly or indirectly obtain subsequent information.

**DEFINITIONS**

For purposes of the requests set forth below, the following terms have the following, specified meanings:

1. "Debtor" means Reed E. Slatkin.

-14-   **EXHIBIT   1**

2. "Document" means a "writing" or "recording," as those terms are defined in Federal Rule of Evidence 1001, and refers to those materials in your actual or constructive possession, custody or control, including, but not limited to, originals, copies, non-identical copies, and preliminary, intermediate, and final drafts of writings, recordings of oral communications, correspondence, e-mails, papers, books, pamphlets, periodicals, bills, accounts, checks, check registers, letters, photographs, objects, telegrams, notes, minutes, memoranda, inter-office and intra-office communications, reports, studies, surveys, forecasts, analysis, indices, calendars, diaries, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic (such as on a computer hard drive or diskette), microfilm, phonic (such as tape recordings), photographic or other means. Handwritten or other notations of any kind on any copy of a Document render it non-identical.

3. "Estate" means the Debtor's bankruptcy estate in In re Reed E. Slatkin, Case No. ND 01-11549-RR, currently pending in the United States Bankruptcy Court for the Central District of California, Northern Division.

4. "Living Expenses" include, but are not limited to, the cost of rent, mortgage payments, real estate taxes, electricity, heating, water, sewer charges, telephone bills, home maintenance and repair, food, clothing, tuition and other education-related expenses (such as books, meals, etc…), laundry and dry cleaning, medical and dental expenses, transportation, recreation, clubs and entertainment, travel expenses, newspapers, periodicals, homeowner's and/or renter's insurance, life insurance, health insurance, auto insurance, other insurance of any kind whatsoever, taxes, installment payments, and support paid to others.

5. "BR Investment Account" means any and all investment accounts of any kind whatsoever (including, but not limited to, any and all brokerage firm, broker dealer and mutual fund accounts, Franklin Templeton account no. 112-11229280842, and Merrill Lynch account no. 649-57008) owned (directly or indirectly, wholly or in part) by you or for your benefit at any time on or after May 1, 1994.

6. "BR Bank Account" means any and all accounts at a bank, savings and loan association, credit union, or other financial institution owned (directly or indirectly, wholly or in part)

-15-

**EXHIBIT** 1

by you or for your benefit or with respect to which you are or were a signatory at any time on or after May 1, 1994.

7. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

8. The plural includes the singular, and the singular includes the plural.

9. "You" and "yours" refer to Brett R. Slatkin, including (without limitation) each of his agents, representatives, attorneys, and accountants.

## DOCUMENTS TO BE PRODUCED

1. All Documents (including, but not limited to, all account statements) that discuss, describe or mention any BR Investment Account.

2. All Documents that discuss, describe or mention the source(s) of the consideration used to acquire any of the property held in any BR Investment Account at any time on or after May 1, 1994.

3. All Documents that constitute, discuss, describe, or mention the transfer, sale, or other disposition, at any time on or after May 1, 1994, of any of the property held in any BR Investment Account.

4. If you contend that the property, or any of it, held in any BR Investment Account, at any time on or after May 1, 1994, is not property of the Estate, all Documents upon which you rely in support of that contention.

5. All Documents (including, but not limited to, all account statements) that discuss, describe, or mention any BR Bank Account.

6. All Documents that discuss, describe, or mention the source(s) of funds or other property deposited into any BR Bank Account at any time on or after May 1, 1994.

7. All Documents that constitute, discuss, describe, or mention the withdrawal or other disposition, at any time on or after May 1, 1994, of any of the funds or other property held in any BR Bank Account.

-16-   **EXHIBIT   1**

8. If you contend that any of the funds or other property held in any BR Bank Account, at any time on or after May 1, 2001, is not property of the Estate, all Documents upon which you rely in support of that contention.

9. All Documents that constitute, discuss, describe, or mention any insurance policy owned (directly or indirectly, wholly or in part) by you or of which you are a beneficiary.

10. All Documents that discuss, describe or mention the source(s) of funds (including, but not limited to, each check (front and back)) used to pay the premiums, or any of them, for each insurance policy owned (directly or indirectly, wholly or in part) by you or of which you are a beneficiary.

11. If you contend that any insurance policy owned by you (directly or indirectly, wholly or in part) is not property of the Estate, all Documents upon which you rely in support of that contention.

12. All Documents (including, but not limited to, account statements) that constitute, discuss, describe, or mention any trust (including, but not limited to, the Brett R. Slatkin 1995 Trust) of which you are or were a Trustee, Trustor, and/or beneficiary at any time on or after May 1, 1994.

13. All Documents that discuss, describe, or mention the source(s) of the funds or other property held by any trust (including, but not limited to, the Brett R. Slatkin 1995 Trust) of which you are or were a Trustee, Trustor, and/or beneficiary at any time on or after May 1, 1994.

14. All Documents that discuss, describe, or mention the transfer, sale, or other disposition, at any time on or after May 1, 1994, of any of the funds or other property held by any trust (including, but not limited to, the Brett R. Slatkin 1995 Trust) of which you are or were a Trustee, Trustor, or beneficiary.

15. If you contend that any of the funds or other property held (at any time on or after May 1, 1994) in any trust (including, but not limited to, the Brett R. Slatkin 1995 Trust) of which you are or were a Trustee, Trustor, or beneficiary is not property of the Estate, all Documents upon which you rely in support of that contention.

16. With respect to Haxor, Ltd. ("Haxor"), including each of its affiliates, parents, and subsidiaries, all Documents that constitute, discuss, describe, or mention:

**EXHIBIT   1**

(i)     the source(s) of the consideration used to acquire any stock of or other interest of any kind whatsoever in Haxor owned (directly or indirectly, wholly or in part) by you or for your benefit at any time on or after May 1, 1994;

(ii)     the transfer, sale, or other disposition of any stock of or other interest of any kind whatsoever in Haxor owned (directly or indirectly, wholly or in part) by you or for your benefit at any time on or after May 1, 1994;

(iii)     any payment or transfer of property made by or on behalf of Haxor to you or for your benefit;

(iv)     any account statement for any bank account owned (either directly or indirectly, wholly or in part) by or for the benefit of Haxor, including, but not limited to, all such accounts at Wells Fargo Bank or Santa Barbara Bank & Trust;

(v)     Haxor's corporate minutes, or any of them; and

(vi)     Haxor's state and federal tax returns, or any of them.

17.     If you contend that any stock of or other interest of any kind whatsoever in Haxor owned (directly or indirectly, wholly or in part) by you or for your benefit, at any time on or after May 1, 2001, is not property of the Estate, all Documents upon which you rely in support of that contention.

18.     All Documents that constitute, discuss, describe, or mention any stock or other equity interest of any kind whatsoever owned (directly or indirectly, wholly or in part) by you or for your benefit, at any time on or after May 1, 1994, including, but not limited to, any stock of or other interest of any kind whatsoever in EarthLink, Inc. ("Earthlink") and Haxor, or either of them.

19.     All Documents that discuss, describe, or mention the source(s) of the consideration used to acquire any stock or other equity interest of any kind whatsoever owned (directly or indirectly, wholly or in part) by you or for your benefit, at any time on or after May 1, 1994, including, but not limited to, any stock of or other interest of any kind whatsoever in Earthlink.

20.     All Documents that discuss, describe, or mention the transfer, sale, or other disposition of any stock or other equity interest of any kind whatsoever owned (directly or indirectly, wholly or

-18-     **EXHIBIT**        **1**

in part) by you or for your benefit, at any time on or after May 1, 1994, including, but not limited to, any stock of or other interest of any kind whatsoever in Earthlink.

21. If you contend that any stock or other equity interest of any kind whatsoever owned (directly or indirectly, wholly or in part) by you or for your benefit, at any time on or after May 1, 2001 (including, but not limited to, any stock of or other interest of any kind whatsoever in Earthlink) is not property of the Estate, all Documents upon which you rely in support of that contention.

22. All Documents that discuss, describe, or mention Project Lucerne, Inc. ("Project Lucerne"), including, but not limited to, all Documents that discuss, describe, or mention any payment made or transfer of property by or on behalf of Project Lucerne to you or for your benefit.

23. All Documents that constitute, describe, or mention any agreement to which both you and Project Lucerne were or are parties.

24. If you contend that you own a 2001 Toyota Prius (the "Prius"), all Documents that discuss, describe, or mention the source(s) of the consideration used to acquire the Prius.

25. If you contend that you own the Prius, all Documents that constitute, discuss, describe, or mention the source(s) of funds or other property used to pay the costs, or any of them, of maintaining and/or repairing the Prius during the time that you have owned it.

26. If you contend that you own the Prius, all Documents that constitute, discuss, describe, or mention the source(s) of funds or other property used to pay the premiums, or any of them, for each insurance policy that provides or provided insurance coverage of any kind whatsoever with respect to the Prius during the time that you have owned it.

27. If you contend that you own the Prius, all Documents that constitute, discuss, describe, or mention the source(s) of funds or other property used to pay the registration fees, or any of them, for the Prius during the time that you have owned it.

28. If you contend that the Prius is not property of the Estate, all Documents upon which you rely in support of that contention.

29. With respect to each credit card account held or owned (either directly or indirectly, wholly or in part) by you, for your benefit, and/or with respect to which you are an authorized signatory, all account statements prepared at any time on or after May 1, 1994 and all checks (front

-19-    EXHIBIT    1

and back) used to pay the obligations, or any of them, incurred with respect to such credit card account at any time on or after May 1, 1994.

30.    All Documents that discuss, describe, or mention the source(s) of funds or other property used to pay (at any time on or after May 1, 1994) the obligations, or any of them, incurred with respect to any credit card account held or owned (either directly or indirectly, wholly or in part) by you, for your benefit, and/or with respect to which you are an authorized signatory.

31.    All Documents that constitute, discuss, describe, or mention any property having a value, at any time on or after May 1, 2001, equal to or greater than $1,000.00 (including, but not limited to, the aggregate value of assets held in any BR Bank Account, BR Investment Account, trading account, or trust account) that you contend is your property and not property of the Estate.

32.    All Documents that constitute, discuss describe, or mention the source(s) of the consideration used to acquire any property having a value, at any time on or after May 1, 2001, equal to or greater than $1,000.00 (including, but not limited to, the aggregate value of assets in any BR Bank Account, BR Investment Account, trading account, or trust account) that you contend is your property and not property of the Estate.

33.    All Documents that constitute, discuss, describe, or mention the transfer, sale, or other disposition (at any time on or after May 1, 1994) by you or on your behalf of any property having a value as of the date of such transfer, sale, or other disposition equal to or greater than $1,000.00 that you contend is your property and not property of the Estate.

34.    Each of your federal and state income tax returns prepared at any time on or after January 1, 1994.

35.    All Documents that discuss, describe, or mention any of your earned income at any time on or after January 1, 1994.

36.    All Documents that discuss, describe, or mention any of your income (other than earned income) at any time on or after January 1, 1994.

37.    All Documents that constitute, discuss, describe, or mention any of your financial statements prepared at any time on or after January 1, 1994.

-20-        EXHIBIT    ' 1

38.   All Documents that discuss, describe, or mention the source(s) of the funds or other property used to pay your Living Expenses, or any of them, from and after May 1, 2001.

39.   Your current passport and all expired or prior passports.

-21-   **EXHIBIT   1**

MICHAELSON, SUSI & MICHAELSON
A PROFESSIONAL CORPORATION

JAY L. MICHAELSON
PETER SUSI
FRANKLYN S. MICHAELSON
JOSEPH M. SHOLDER
THOMAS M. HINSHAW

ATTORNEYS AT LAW
SEVEN WEST FIGUEROA STREET, SECOND FLOOR
SANTA BARBARA, CALIFORNIA 93101-3181

TELEPHONE
(805) 965-1011
TELECOPIER
(805) 966-7381
E-MAIL: MSM@MSMLAW.COM

September 27, 2001

**VIA FACSIMILE AND MAIL**
(213) 623-3302

Susan I. Montgomery, Esq.
Gumport, Reitman & Montgomery
550 South Hope Street, Suite 825
Los Angeles, CA 90071-2627

Re:  Slatkin -- Exempt, Separate Property, and Non-Estate Property

Dear Ms. Montgomery:

Enclosed is the list of exempt, separate and non-estate property you requested. This list
represents the best effort of Mr. Slatkin and his family to comprehensively detail their exempt,
separate and non-estate property. They reserve the right to amend this list if they have
overlooked some items.

As you will see, most of the items on this list are household goods and furnishings of nominal
and inconsequential value, have been viewed on a number of occasions by Mr. Boyle, and should
require no further discussion for you to determine that the Trustee should not attempt to
administer this property. I am providing you with additional information on several items which
should be helpful in the Trustee coming to the same conclusion with respect to those items.

In my August 3, 2001 letter to you, I addressed Justin's and Brett's Earthlink stock, noting that
their Earthlink stock was held in trust for Justin and Brett, and citing Ninth Circuit case law
establishing that property held in trust is not property of the estate under 11 U.S.C. § 541.
Justin's Wells Fargo Bank and Union Bank accounts and Brett's Wells Fargo Bank account
(which have been frozen by the SEC) are also either held in trust and are subject to the same
analysis or are not estate property because the funds in them were gifts from various sources.

The Toyota Prius belongs to Brett and the 1995 Jeep Cherokee belongs to Justin. Those cars
were gifts given to them by their parents. Title to the vehicles is held in the name of Mr. Slatkin
and his wife for insurance purposes, but they hold only bare legal title. The equitable ownership
of these vehicles is in Justin and Brett. As such, under applicable Ninth Circuit law and § 541 of
the Bankruptcy Code, these assets are not property of the bankruptcy estate and cannot be
administered by the Trustee. Further, as the holder of bare legal title, Mr. Slatkin cannot accede
to the Trustee's September 26, 2001 request that these vehicles be turned over to him.

**EXHIBIT** •• **2**

22

Susan I. Montgomery, Esq.
September 27, 2001
Page -2-

Among the items on Justin's list of property is certain music memorabilia. That music memorabilia was turned over to the Trustee by Mr. Slatkin last month. The Trustee was going to have this memorabilia appraised and was to return the memorabilia to Justin if the appraisal determined that the memorabilia was of inconsequential value. Please let us know if the Trustee has obtained that appraisal.

Mary Jo Slatkin's separate property includes jewelry, including jewelry which the Trustee removed from the safe in the Esperanza house. This jewelry is of two types: (1) jewelry having a nominal value (photographs enclosed), and (2) the jewelry the Trustee removed from the Esperanza house and three additional items, an Ebel watch, a diamond engagement ring, and a tourmaline broach and two earrings. Mr. Slatkin has had the non-costume jewelry in his possession appraised by Bryant & Sons, Ltd. in Santa Barbara, California. If the Trustee makes an inquiry, he will find Bryant & Sons, Ltd. to enjoy the highest reputation for professionalism and honesty. A copy of that appraisal and photographs of the jewelry is enclosed. The property was appraised at estate value, which I understand to mean the price at which Bryant & Sons would purchase this jewelry if it was interested in doing so (which I am informed it is not). Both categories of jewelry are Mrs. Slatkin's separate property because they are gifts she received from Mr. Slatkin and third parties. See, Cal. Family Code § 770(1). As such, the jewelry is not an asset of this bankruptcy estate. See, 11 U.S.C. § 541(a)(2) (limiting property of the estate to community property). This same analysis applies to the Sue Rios paintings which were given to Mrs. Slatkin by the artist Ms. Rios and a friend of Ms. Rios.

We are informed that Mrs. Slatkin's Wells Fargo Bank account contains funds which were gifts to Mrs. Slatkin and her earnings and other deposits. This account is held in her own name. Thus, it too is her separate property. We are also informed that the securities and cash (which is the proceeds of the sale of securities) in Mrs. Slatkin's separate brokerage accounts are her separate property because they were gifts from Mr. Slatkin. Further, these securities were issued to Mrs. Slatkin in her own name, and these separate brokerage accounts were opened by Mrs. Slatkin to comply with a requirement of certain brokerage firms limiting the number of initial-public-offering shares which could be issued to Mr. Slatkin and, separately, to Mrs. Slatkin.

Finally, when you visited our offices on September 19, 2001 to view the contents of certain file cabinets, you took with you a mezuzah. This mezuzah was made for Mr. Slatkin by his deceased grandfather, is of nominal value and is of significant sentimental value to Mr. Slatkin. Please promptly determine if the Trustee thinks the mezuzah is of consequential value. If not, please return it to us.

In reviewing this letter, the Trustee should keep in mind that Mr. Slatkin, his wife and children make these claims of exemption, separate property, and non-estate property, in good faith, based upon the facts known to them, and consistent with applicable law. We hope the Trustee does not

**EXHIBIT    2**

Susan I. Montgomery, Esq.
September 27, 2001
Page -3-

misinterpret this letter as a lack of cooperation.  On the contrary, as you know, Mr. Slatkin has
met with the Trustee and counsel for the Creditors' Committee on several occasions, and has
several outstanding offers to the Trustee and Creditors' Committee counsel for additional
meetings.  A fair evaluation of Mr. Slatkin's cooperation to date is that he has assisted this estate
in making significant strides toward recovering millions of dollars for creditors.
Notwithstanding his past, current and future efforts to cooperate, however, Mr. Slatkin's family
is simply not in a position to turnover to the Trustee assets which are either exempt or not estate
property and which they need to conduct their daily lives, especially in the dire circumstances in
which they find themselves, circumstances not of their own doing.

Very truly yours,

JOSEPH M. SHOLDER

JMS\ajd
Enclosures
cc:     Reed Slatkin
        Richard Wynne
        Brian Sun
        Richard Pachulski

**EXHIBIT**        2        24

<u>EXEMPT PROPERTY</u>

<u>Skyview House</u>

<u>Upstairs Bedroom (All photographed by Regis Boyle)</u>
    2 night stands
    1 bed, includes mattress, boxspring & frame
    Chest (18" x 4' x 2')
    Desk
    Office chair
    TV stand
    Metal credenza w/2 drawers
    TV (27")
    VCR
    Computer, monitor and printer
    File cabinet (4-drawer)
    2 small desk lamps
    2 chests of drawers
    Floor lamp
    Coat rack
    Books (unknown amount -- some from Public Library?)
    Hand calculator
    Mirror over dresser

<u>Bathroom</u>
    2-drawer magazine cabinet

<u>Balcony Outside Bedroom</u>
    2 chairs and table (photographed by Regis)
    Floor mat
    2 pieces of luggage (nylon carry bags)

<u>Dining Room</u>
    Green Carpet (photographed at Alisal) (8' x 10')
    Dining room set with 6 chairs and table
    Small chest in corner (photographed)
    Mirror
    Entry table (photographed)
    Decorative box (Pier One)
    2 plants
    Print (pots with flowers)

**EXHIBIT    2**

<u>Living Room (Most of these items photographed by Regis)</u>

    3 wooden cats
    4 bookcases
      (2) 6' x 3' x 1'
      (1) 7' x 3' x 1'
      (1) 7' x 4' x 1'
    Stereo set (single unit) (photographed)
    Table w/2 drawers
    2 couches (living room set)
    Coffee table
    Side table between couches
    Chinese box (1' x 1.5') (bought at Pier One)
    TV (27")
    VCR
    DVD player
    Standing lamp
    Side table (ducks) (photographed)
    2 metal candlesticks
    Wall clock
    Black easy chair (from Esperanza) (photographed)

<u>Sitting Room</u>

    Small dinette table with 2 chairs
    Lazyboy chair
    Coffee table
    Gold-colored couch (from Esperanza)
    2 end tables (one with lamp in it) (purchased at McMahons Furniture)
    2 standing lamps
    2 prints (flowers)
    Birdcage
    Photographs - Riley Road
    Wooden chair with cushion

<u>Kitchen</u>

    Dishes
    Corningware
    Glasses
    Flatware (stainless)
    Blender
    Porcelain parrots
    2 blue glass bottles
    Poster

Hallway
    Hutch (from Esperanza)
        Contents –wine glasses, water glasses, one set of informal china (white); various
            napkins and tablecloths
    Bird screen (from Esperanza)

Downstairs Bedroom
    Bookcase (4' x 2' x 1') (Office Depot)
    Desk (particle board)
    Desk chair
    Bed, including frame, box spring, and mattress
    Small office wooden table
    Fax machine
    Pencil sharpener
    Chest of drawers
    Couple of decorative plates
    Clock
    Pencil holders, stapler etc.
    Standing lamp

One of the Kids' Bedrooms
    Chest of drawers (McMahon's)
    2 Lamps
    Second chair from Alisal (similar to one in sitting room)
    Bed, boxspring, mattess & frame
    End table from Esperanza (1976 vintage)
    Candlestick
    Wastebasket
    Bowl (personal gift from Reed's sister)

Outside Patio
    2 chairs and table (wrought iron)
    2 lawn chairs
    Table w/umbrella with 4 chairs

Reed's Personal Items
    Items from boxes reviewed by Susan Montgomery on September 19, 2001, including a
    mezuzah and other items taken by Ms. Montgomery
    Miscellaneous clothing and personal items

### 4480 Esperanza House

Miscellaneous Books in Reed's old office, family room and sitting room
Photographs (5 or 6 – not valuable – given to family as gifts)

Additional furniture:
 Standing lamp
 Gold couch that matches set at Skyview
 CD's and tapes
 Very inexpensive knick-knacks

Guest House
 Bret's arcade game
 2 small rugs (one with tiger, one with floral pattern)
 Dumbbells
 Wooden bench
 Picture on wall (collage)
 Yoga mat
 Inexpensive children-style guitars

### 4484 Esperanza

Floor heater
More miscellaneous books
Mary Jo's golf clubs and shoes
Massage table

### 890 Kellogg

Space heater
Red desk chair
2-drawer file cabinet
Numerous office supplies
Vacuum cleaner
2-drawer credenza
Miscellaneous books
CD's, tapes
Personal mementos
3-drawer file
2 torch lamps
Black credenza
2-drawer small credenza
Picture w/map of Long Island (family gift)
Records - vinyl

-4-    **EXHIBIT**    2

Storage Shed
  Old guitar
  Boxes w/letters and books
  Old golf clubs
  Old pictures
  Earthlink sign (given to Reed as founder)


## NON-ESTATE PROPERTY

Bret's Property
  Couch
  Coffee table
  Hutch from Alisal
  2 wooden office tables
  Black office chair (beat-up)
  White book shelf (purchased after bankruptcy)
  Punching bag
  10-year old big screen TV
  Stereo system
  Receiver
  Tape deck
  2 speakers
  2 turntables (purchased by Bret)
  2 computers (not new)
  2 monitors (not new)
  Printer
  Old suitcase
  Records
  20-40 CD's
  Old video games (collection since childhood)
  Standing lamp
  Floor fan
  Indoor-Outdoor 8x10 carpet
  Numerous books (computer, schoolbooks)
  Old bookshelf (particle board)
  Stuffed animals (from Esperanza)
  Skateboard
  Rollerblades
  Baseball cards (Sets bought when kids were 8-10 years old)
  Games
  Nintendo set
  Bret's car (Prius) (14,000 miles)
  Personal mementos
  Kid's artwork
  Plaques, trophies, letters

-5-    **EXHIBIT    2**

Shares of Earthlink stock (held by Michaelson, Susi & Michaelson)
Wells Fargo Bank account (frozen by SEC)

Justin's Property

Apple computer
Two amplifiers
Three or four guitars
Rock and roll memorabilia (turned into trustee)
Three posters
Four guitars

One signed by Dwight Yoakam, one by Sting, one by the Eagles and one a
combination of signatures of people who appeared at the Santa Barbara Bowl that
year including Don Henly

Justin's car - 1995 Jeep Cherokee (104,000 miles)
Band equipment boxes (still in Esperanza)
Assorted books
CD's
Dumbbells
Baseball cards
Bed
Bookshelf
Desk
Desk lamp
Piano keyboard (portable)
Nightstand
Bedside table lamp
Shares of Earthlink stock (held by Michaelson, Susi & Michaelson)
Wells Fargo Bank account and Union Bank account (frozen by SEC)

Mary Jo's Separate Property

Jewelry - pictures
The Sue Rios paintings and prints (gift to Mary Jo by the artist, friend of the artist)
Clothes
Keys
Wallet
Purses
Books
CD's
Cats
Wells Fargo Bank account #0693553117
Merrill Lynch brokerage account
Jersey Shore Trading brokerage account

-6-       **EXHIBIT**          2

## At Reily Road address

Books (want to keep)
Clothes (want to keep)
Bicycle for Justin

-7-   **EXHIBIT**   2

**BRYANT & SONS, LTD.**



812 State Street
Santa Barbara, CA 93101
Telephone (805) 966-9187

JEWELRY APPRAISAL PREPARED FOR

| | |
|---|---|
| Name | Joseph M. Sholder |
| Address | Seven West Figueroa |
| City, State, Zip | Santa Barbara, CA 93101 |
| Date | Wednesday, September 26, 2001 |

Estate Appraisal

DESCRIPTION OF ARTICLE

1) A Lady's 18K Yellow Gold and Stainless Steel Ebel "Sport Wave" Wrist Watch. The watch has a round case and dial, black face with diamond markers, gold dart hands and diamond case bezel. The watch is fitted with the Ebel sport wave steel and gold link bracelet, is case back number #1057092 and has serial number #11657684.

$2,750.00

2) A Lady's 18K Yellow Gold Diamond Engagement Ring. Prong set as the center feature is one (1) pear shape diamond having an estimated weight of one carat twenty-five points (1.25 ct.). The diamonds has a clarity range of VS-2 to SI-1 and a color range of F to G as rated on the Gemological Institute of America grading scale. Set in half bezels as accents flanking the center feature are two (2) pear shape diamonds having an estimated total weight of thirty points (.30 ct.) with a clarity range of VS-1 to VS-2 and a color range of I to J.

These estimated replacement costs are based only on estimates of the quality and weight of the stones examined (unless specifically stated that the stones were removed and graded). Appraisal values do not include applicable taxes. We assume no liability with respect to any action that may be taken on the basis of the appraisal.
Any reference to pearls is done on the assumption that they are cultured, not natural, pearls. Diagnostic x-ray tests to verify their origin were not performed unless otherwise specified.

Appraiser _Paul M. Boswell_

Paul Boswell, Graduate Gemologist   **EXHIBIT**   2

Channel set on the ring shoulders as accents in graduation are eight (8) princess cut diamonds having an estimated total weight of fifty-two points (.52 ct.). The diamonds have a clarity range of VS-1 to SI-1 and a color range of H to I.

$6,500.00

3) **A Lady's Hand-Made 18K White Gold Diamond and Pink Tourmaline Brooch.** Prong set as the center feature in the arced edged triangular brooch is one (1) modified triangular cut faceted natural pink tourmaline having an estimated weight of eight carats twenty-five points (8.25 ct.). The tourmaline is of good quality having pink color, medium dark tone, SI clarity, good cut and polish. Set in pave' as accents on each of three corners in groups of ten each are thirty (30) round brilliant cut diamonds having an estimated total weight of one carat eighty points (1.80 ct.). The diamonds have a clarity range of VS-1 to SI-1 and a color range of F to H as rated on the Gemological Institute of America grading scale. The brooch is hallmarked, 18K S. Powell.

$4,700.00

4) **A Pair of 18K White Gold Diamond and Pink Tourmaline Earrings.** Prong set as the center feature in each of the arced edged triangular earring is one (1) modified triangular cut faceted natural pink tourmaline having an estimated combined weight of three carats fifteen points (3.15 ct.). The tourmalines are of very good quality having pink color, medium dark tone, VS clarity, very good cut, very good polish and excellent match. Set in pave' as accents one each of three corners in groups of eight each on each earring are twenty-four (24) round brilliant cut diamonds having an estimated combined total weight of sixty points (.60 ct.). The diamonds have a clarity range of VS-1 to SI-1 and a color range of F to H as rated on the Gemological Institute of America grading scale. The earrings are hallmarked, 18K S. Powell.

$3,850.00

2                    **EXHIBIT**          2



# STATEMENT
# OF ACCOUNTS

UNION BANK OF CALIFORNIA
NEWPORT BEACH PRIVATE BANK REG.OFFICE 470
PO BOX 513840
LOS ANGELES            CA  90052-3840

Page 1 of 1
Statement Number: 0631439924
8/17/01 - 9/13/01

Teleservices®
For 24-hour Automated Direct Service
800-238-4486
800-826-7345(TDD)
Representatives are available
from 6 am to 11 pm

To open additional accounts,
or apply for loans, call your
banking office at 888-825-2669

Visit us at www.ubcc.com

Thank you for banking with us
since 1998

CY10Z  03 1200

JUSTIN SLATKIN
11684 VENTURA BLVD STE 922
STUDIO CITY CA 91604

■ *"Give your business buying power with our Fast Step® lease. Enjoy 100% equipment financing, low
monthly payments and flexible lease plans to fit your business needs. (See enclosed coupon for details.)"*.

## REGULAR CHECKING SUMMARY

Account Number: 0631439924

Days in statement period: 28

Date of next statement: October 16, 2001

| | | | |
|---|---|---|---|
| Balance on 8/17 | $ | | 780.96 |
| Additions | | | 1.00 |
| Subtractions | | | -9.00 |
| Other withdrawals | | -9.00 | |
| Balance on 9/13 | $ | | 772.96 |
| Statement Average Ledger Balance | | $ | 780.67 |

| Additions | Date | Description | | Reference | | Amount |
|---|---|---|---|---|---|---|
| | 9/13 | CHECK SAFEKEEPING DISCOUNT | | | $ | 1.00 |

| Other withdrawals | Date | Description | | Reference | | Amount |
|---|---|---|---|---|---|---|
| including fees and adjustments | 9/13 | SERVICE CHARGE | | | $ | 9.00 |

## About Your Monthly Service Charge

You can avoid a monthly service charge in one of the following ways
- keep at least $1,000.00 in your account at all times - the first day you had less was on 8/17
- keep an average balance of at least $2,500.00 in your checking account - your average checking balance between 8/17 and 9/13 was $780.67
- keep a Combined Balance of at least $3,000.00 in your combined checking, savings, time deposit and money market accounts - your Combined Balance between 8/17 and 9/13 was $780.67

Your account was charged a monthly service charge. You may be able to avoid this charge in the future by changing to a different type of account. Call Teleservices at 800-238-4486 for details.

**EXHIBIT    2**

3⁴





**EXHIBIT        2**







EXHIBIT    2





**EXHIBIT** 2



37



**EXHIBIT** 2

38

# GUMPORT, REITMAN & MONTGOMERY  FILE COPY
*A Law Partnership*

550 South Hope Street, Suite 825
Los Angeles, California 90071-2627
TELEPHONE (213) 452-4900
FACSIMILE (213) 623-3302
E-mail: grm@grmaccy.com

Leonard L. Gumport
John P. Reitman
Susan I. Montgomery
Andrew S. Rotter
Peter J. Mastan

October 10, 2001

Patrick L. Shreve
*Of Counsel*

**BY FACSIMILE**
Joseph M. Sholder, Esq.
Michaelson, Susi & Michaelson
Seven West Figueroa Street, 2nd Floor
Santa Barbara, California 93101

**Re:   In re Slatkin**

Dear Joe:

This letter responds to your letter of September 27, 2001, regarding the claims of separate property by Mrs. Slatkin and her children, Brett and Justin Slatkin. The Trustee has carefully reviewed your letter and considered their demand to keep certain items as their separate property. The Trustee does not agree with your characterization of much of the property as separate property. The Trustee contends that the property is property of the Estate under 11 U.S.C. § 541. Furthermore, although certain property may not be property of the Estate at the present time, the Trustee contends that the gifting or transfer of property to Mrs. Slatkin and/or the children are fraudulent transfers that must be returned to the Estate. Their failure to voluntarily return the transfers will result in the Trustee commencing litigation against Mrs. Slatkin and the children, and will be viewed as evidence of Mr. Slatkin's lack of cooperation.

The Automobiles
With regard to the 1995 Jeep and 2001 Prius, we have reviewed the bank records and confirmed that the cars were purchased by Mr. Slatkin, title to the cars is held in the name of Mr. Slatkin, and registration and insurance on the cars were paid for by Mr. Slatkin. Under Cal. Evid. Code § 662, the owner of the legal title, i.e. Reed Slatkin, is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof. Unless Justin and Brett can show that they paid for the automobiles, the vehicles are property of the Estate pursuant to 11 U.S.C. § 541. Unless the cars are turned over immediately, the Trustee will commence litigation to recover them, and will seek additional damages for the wear and

**EXHIBIT**      3      39

Joseph M. Sholder, Esq.
October 10, 2001
Page 2

tear and general depreciation of the cars. I strongly urge the Slatkins to turn over the cars to the Trustee as soon as possible so that they can be sold by the Trustee.

Wells Fargo Bank and Union Bank accounts

With regard to Brett and Justin's bank accounts, the Trustee does not at this time assert an interest in Justin's Union Bank account that contained $772.96 as of September 13, 2001. We have not reviewed bank statements for Brett's accounts or for any other accounts allegedly owned by Justin. Please provide us with copies of the most recent statements for Brett's accounts and any account in the name of Justin other than Union Bank account 0631439924.

Additionally, for each account, please provide us with documentation that reflects the source of the funds in the accounts. To the extent that the accounts contain funds earned by Justin or Brett, those funds would be their separate property. To the extent that the accounts were funded by Mr. Slatkin, however, the funds in those accounts belong to the Estate.

Earthlink Stock

We have previously considered your argument that the Earthlink stock issued to Brent and Justin is their separate property. Please provide me with documentation that describes the circumstances under which the stock was issued to Brent and Justin and the dates on which it was issued. The Trustee believes that all of the stock should be turned over to the Estate and sold.

Rock and Roll Memorabilia and Signed Guitars

The bank records and other testimony obtained by the Trustee establish that the memorabilia, including the signed guitars, were purchased by Mr. Slatkin. If you have documents to the contrary, please provide them to us immediately. To the extent that you claim that the items were gifted to the children, such gifts were clearly fraudulent transfers. The children can either voluntarily return them to the Estate or the Trustee will pursue fraudulent transfer litigation against them.

Mrs. Slatkin's accounts

We have not reviewed all of the bank statements for Mrs. Slatkin's accounts and therefore we are not in a position to agree or disagree with her claim that the funds on hand are her separate property. We hereby demand that she produce all bank

EXHIBIT      3

Joseph M. Sholder, Esq.
October 10, 2001
Page 3

statements for her accounts, including those at Wells Fargo Bank (including, but not limited to, account 0693553117), Merrill Lynch, and Jersey Shore Trading, and all documentation establishing the source of funds in the accounts. The Trustee's accountants are currently tracing funds into and out of the accounts. Unless Mrs. Slatkin can show that she personally earned the funds in her accounts or received the funds from independent third parties, the Trustee asserts that the funds are property of the Estate. Again, if Mrs. Slatkin is not willing to voluntarily turn over the funds to the Trustee, the Trustee will commence litigation against Mrs. Slatkin.

Mrs. Slatkin's Jewelry
     Based on the pictures and other information you have provided, the Trustee will not assert a claim to the costume jewelry. With regard to the jewelry appraised by Bryant & Sons, Ltd., and the jewelry previously seized by the Trustee from the Via Esperanza safe and the diamond earrings seized from the bank safe deposit box, the Trustee hereby requests documentation to establish when the items were purchased, by whom, and for what amount. To the extent the jewelry was purchased by Mr. Slatkin or with Mr. Slatkin's funds, the Trustee contends that the jewelry belongs to the Estate.

Susan Rios Paintings and Prints
     Please provide evidence to establish that the paintings and prints were given to Mrs. Slatkin by the artist, including a declaration signed under penalty of perjury by Susan Rios.

Books
     Except as to books valued in excess of $200, the Trustee will not object to the Slatkin's claim of exemption or Mrs. Slatkin's claim of separate property. As to the Chinese books, the Trustee intends to have an expert examine the books to determine whether any of them are of significant value.

Items Removed by Ms. Montgomery
     With regard to the silver Mezuzah that was removed from your office, it will be returned to Mr. Slatkin. We will have it delivered to you at the next hearing in the case currently scheduled for October 24, 2001. We will also return the opera glasses and stamps that were taken. There is a notation on the box containing the stamps that says the stamps are duplicates, suggesting the existence of a more complete collection. Please let me know if a stamp collection exists and please turn it over to the Trustee

EXHIBIT · 8

Joseph M. Sholder, Esq.
October 10, 2001
Page 4


immediately for inspection.  We have a buyer for the Muhammad Ali watch that was taken and will file a motion to sell it.

Miscellaneous Items and Furniture

With regard to the miscellaneous furniture and personal items, including clothing, golf clubs, Justin's bicycle and the Earthlink sign, the Trustee does not object to their designation as separate or exempt property.  Some of the property is currently stored at Kellogg, and arrangements can be made with Regis Boyle, the Trustee's agent, to retrieve it.

Please provide the documentation requested herein as soon as possible.  If we do not receive it within the next two weeks, we will set Rule 2004 examinations to examine the children and Mrs. Slatkin and require the production of records.  You continue to claim that Mr. Slatkin is fully cooperating with the Trustee.  The above requests for turnover and/or information are reasonable and Mr. Slatkin should cooperate with the Trustee by insisting that the turnover and/or information be provided to the Trustee immediately.

Sincerely,

SUSAN I. MONTGOMERY

SIM:ss
F:\CLIENTS\Slatkin\Letters\Sholder4.ltr.wpd
cc:    R. Todd Neilson, Trustee
       Richard L. Wynne, Esq.
       John P. Reitman, Esq.
       Andrew S. Rotter, Esq.
       Peter J. Mastan, Esq.

EXHIBIT    3

# GUMPORT, REITMAN & MONTGOMERY     **FILE COPY**

*A Law Partnership*

550 South Hope Street, Suite 825
Los Angeles, California 90071-2627
TELEPHONE (213) 452-4900
FACSIMILE (213) 623-3302
E-mail: grm@grmatty.com

Leonard L. Gumport
John P. Reitman
Susan I. Montgomery
Andrew S. Rotter
Peter J. Mastan

October 26, 2001

Patrick L. Shreve
*Of Counsel*

**BY FACSIMILE**
Jay L. Michaelson, Esq.
Michaelson, Susi & Michaelson
Seven West Figueroa Street, 2nd Floor
Santa Barbara, California 93101

Re:     **In re Slatkin**

Dear Jay:

This letter responds to yours of October 18, 2001. I was out of town last week so this is the first opportunity I have had to respond.

Your letter suggests that Mrs. Slatkin and the Slatkin children (now adults) are entitled to retain as their separate property the purported gifts, including automobiles, jewelry, stock and cash, acquired with funds that were Mr. Slatkin's separate property or community property. Even if Mrs. Slatkin, Justin, and Brett were not involved in Mr. Slatkin's business activities, they are the beneficiaries of those activities, they gave no consideration for the assets that were transferred to them, and they are not entitled to retain those assets when the claims of Mr. Slatkin's creditors remain unpaid.

The Trustee does not agree with your claim that Mr. Slatkin cannot assert control over his wife and children on the issue of the return of assets to the estate. Mr. Slatkin clearly can do so, particularly where the assets remain titled in his name. Moreover, he obviously can influence the decisions of his wife and children. The fact that these assets clearly are recoverable by the Trustee (as property of the estate or as fraudulent transfers) and your clients' decision to fight the Trustee and creditors over ownership of the assets, speaks to Mr. Slatkin's lack of cooperation.

Since the interests of Mr. Slatkin and his family are adverse to those of the Trustee and the estate, it is not appropriate for you and members of your firm to communicate directly with the Trustee and his employees and accountants. Accordingly, unless you receive my firm's written authorization, all future communications from your firm are to be directed to this office and not to the Trustee, his employees, or accountants.

The Automobiles

With regard to the Jeep and Prius, I spoke to the Trustee and he wants a turnover of both cars. He never agreed to leave the Jeep with Justin. Based on the hearing on Wednesday, the Trustee will proceed against both Justin and Brett. Please provide me with

**EXHIBIT       4**

45

Jay L. Michaelson, Esq.
October 26, 2001
Page 2

addresses where Justin and Brett can be served with process. If you are authorized to accept service of process on their behalf, please let me know.

## Children's Bank Accounts

The Trustee is entitled to bank records and other documents to support Justin's and Brett's contention that money in their accounts was earned by them or came from third parties. Please let me know if they will voluntarily provide the documentation to confirm their claim. If they are not willing to do so, the Trustee will obtain the information necessary to ascertain the ownership of the money pursuant to Rule 2004.

## Earthlink Stock

Justin and Brett may have acquired the Earthlink stock "several years ago," but not more than seven years ago. It is the Trustee's position that the stock, to the extent it was "gifted" to them, is a fraudulent transfer and should be returned to the Estate voluntarily. The Trustee encourages your clients to reconsider their position. If the stock is not voluntarily returned, the Trustee will take legal action to recover it.

## Rock 'N Roll Memorabilia and Guitars

We have spoken with the auctioneer and he has informed us that the "signed" pictures are prints that have nominal value. Accordingly, these will be returned. The signed guitars, however, are worth between $2,000 and $5,000. The Trustee believes that these items were purchased by Mr. Slatkin within the past few years. If the guitars were gifted to the Slatkin children, they are recoverable as fraudulent transfers, and any claim to the guitars should be withdrawn voluntarily.

## Mrs. Slatkin's Bank Accounts

Money earned by Mrs. Slatkin during her marriage is community property that belongs to the estate. She should voluntarily provide the Trustee with all documents that reflect the source of funds in her bank accounts and the sources of funds used to purchase stock in her brokerage accounts. If Mrs. Slatkin will not voluntarily provide this information, the Trustee will obtain it pursuant to Rule 2004.

## Mrs. Slatkin's Jewelry

While we understand that Mrs. Slatkin contends that her jewelry was gifted to her by Mr. Slatkin and third parties, to the extent it was purchased by Mr. Slatkin or with community property funds, it may be property of the estate. Mrs. Slatkin should voluntarily provide evidence of when the jewelry was purchased. and by whom and from whom it was purchased. If Mrs. Slatkin will not voluntarily provide this information, the Trustee will obtain it pursuant to Rule 2004.

EXHIBIT   4

Jay L. Michaelson, Esq.
October 26, 2001
Page 3

Susan Rios Painting and Prints

Other than the Susan Rios painting, what paintings or prints does Mrs. Slatkin claim
are her separate property? We are awaiting the declaration from Ms. Rios. Absent that
declaration we will be preparing a motion to sell the personal property, including this artwork,
at auction.

Books

I have arranged for some of the books to be taken for valuation. Those books that are
of minimal value will be returned to Mr. Slatkin.

Items Removed from Your Office

Unfortunately, we were unable to collect the mezuzah, stamps, binoculars, etc., in time
to return them to you on Wednesday. We hope to return them next Wednesday when my
associate will be in Santa Barbara for the hearing on the motion to assume the Riley ground
lease.

Miscellaneous Items and Furniture

As we discussed on Thursday, Mr. Slatkin can meet Regis Boyle at the Kellogg house
at 8:00 a.m. on Saturday, October 27, 2001 to pick up furniture and miscellaneous items
previously agreed to by the Trustee. Mr. Slatkin should bring a truck to move the items.

Access to the Depository Documents

As you know, the Trustee has established a document depository to make the records
available to everyone, including Mr. Slatkin and representatives of the United States Attorney.
If Mr. Slatkin wishes to review and copy documents, please contact me and I will arrange
access for him under supervision of the Estate's professionals.

Sincerely,

SUSAN I. MONTGOMERY

SIM:ss
F:\CLIENTS\Slatkin\Letters\michaelson34r.ltr.wpd

cc:   R. Todd Neilson, Trustee
      Richard L. Wynne, Esq.
      John P. Reitman, Esq.
      Andrew S. Rotter, Esq.
      Peter J. Mastan, Esq.
      Aleksandra Zimonjic, Esq.

**EXHIBIT     4**

## DECLARATION OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed in an office that employs a member of the bar of this Court, at whose direction the within service was made. My business address is KIRKLAND & ELLIS, 777 South Figueroa Street, Los Angeles, California 90017.

On December 26, 2001, I served the following Notice Of Motion And Motion Pursuant To Fed.R.Bankr.P. 2004 And Local Bankruptcy Rule 2004-1 For An Order For The Examination Of And The Limited Production Of Documents By Brett R. Slatkin; Declarations Of Kelly K. Frazier And Susan I. Montgomery; Exhibits on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

The above-described pleading was transmitted to the indicated parties set forth above in the manner described below:

**By United States Mail.**

[ X ]   *I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[X] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 26, 2001 at Los Angeles, California.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

MARCELLA CALDWELL

## *IN RE REED SLATKIN*

UNITED STATES TRUSTEE
Brian Fittipaldi
Staff Attorney
128 East Carillo Street
Santa Barbara, CA 93101

Chapter 11 Trustee
R. Todd Neilson
Neilson Elggren LLP
10100 Santa Monica Blvd., #410
Los Angeles, CA 90067

Committee Member-Co-Chair
Michael B. Azeez
Unitel Wireless Communications Sys
P.O. Box 1000
Pleasantville, NJ 08232-0038

Committee Member
Anthony Podell
320 The Strand
Manhattan Beach, CA 90266

Attorney for Debtor
Richard Pachulski, Esq.
Eric S. Kurtzman, Esq.
Pachulski, Stang, Ziehl Young Jones
10100 Santa Monica Blvd., # 1100
Los Angeles, CA 90067

Attys to Chapter 11 Trustee
John P. Reitman
Gumport Reitman & Montgomery
550 South Hope Street, Suite 825
Los Angeles, CA 90071-2627

Committee Member
Stuart W. Stedman, President
Wesley West Interests, Inc.
P.O. Box 7
Houston, TX 77001

Committee Member-Co-Chair
Gregory B. Abbott
1200 Kessler Drive
Aspen, Co 81611

Attorney for Debtor
Jay L. Michaelson, Esq.
Joseph M. Sholder, Esq.
Michaelson Susi & Michaelson
7 West Figueroa Street, 2nd Floor
Santa Barbara, CA 93101-3191

Committee Member
John K. Poitras
30 Echo Lane
HC-01, Box 30
Woodside, CA 94602

Committee Member
George V. Kriste
20643 Seaboard Road
Malibu, CA 90265