ORIGINAL

1   RICHARD L. WYNNE (SBN 120349)
    BENNETT L. SPIEGEL (SBN 129558)
2   JACQUELINE H. SLOAN (SBN 179648)
    **KIRKLAND & ELLIS LLP**
3   777 South Figueroa Street
    Los Angeles, California 90017
4   Telephone:   (213) 680-8400
    Facsimile:   (213) 680-8500
5   Counsel for R. Todd Neilson, Trustee of the
6   "Estate of Reed E. Slatkin and Substantively
    Consolidated Affiliates Topsight Oregon Inc.
7   and the Reed Slatkin Investment Club, L.P.
    Liquidating Trust"
8

9

FILED

SEP 2 6 2003

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                    **NORTHERN DIVISION**

| | |
|---|---|
| 13  In re | Case No. ND 01-11549-RR [Substantively consolidated with former Case No. ND 01-12990-RR] |
| 14  REED E. SLATKIN  and Substantively Consolidated Affiliates TOPSIGHT OREGON INC., and REED SLATKIN INVESTMENT CLUB, L.P., | |
| 15 | Chapter 11 |
| 16           Reorganized Debtors. | **DECLARATION OF CHARLES B. ROSENBERG IN FURTHER SUPPORT OF THE FOURTH AND FINAL FEE APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF KIRKLAND & ELLIS LLP** |
| 17 | |
| 18 | |
| 19 | |
| 20 | Date:   October 3, 2003 |
| 21 | Time:   2:00 p.m. |
| 22 | Place:  Courtroom 201 |
| | 1415 State Street |
| | Santa Barbara, CA 93101 |

23

24

25

26

27

28

CRosenbergDeclCover                    1

1880
up

## **DECLARATION OF CHARLES B. ROSENBERG**

I, Charles B. Rosenberg, declare as follows:

1.     I have personal knowledge of the facts set forth herein, and if called to testify, I could and would testify competently thereto.  I have been asked by Kirkland & Ellis LLP (sometimes hereinafter "K&E") to provide this declaration as an expert on legal fees, billing rates and litigation management.

2.     I received a J.D. Degree from the Harvard Law School in 1971 and have been a member of the bar of the State of California since 1972.  I have been a member of the bar of the District of Columbia since 1980.  I have been an active litigator of business-related cases for more than thirty years, both as a partner in major law firms and as a partner in my own law firm, Rosenberg & Mendlin, where I currently practice. My experience has included representing corporate plaintiffs and defendants in business and commercial litigation in both the federal and state courts.  These cases have included, among others, disputes involving breach of contract, copyright and trademark infringement, unfair competition, antitrust violations, partnership dissolutions, securities fraud, hostile take-overs, and other real estate and business-related contract and tort issues.  A number of my cases have involved large corporate clients (including Fortune 50 and Fortune 500 companies, NYSE listed companies and major universities), multiple parties (including mass tort cases), substantial sums or rights in controversy, and complex procedural issues; many  have been staffed by major law firms throughout the United States.

3.     My experience as an active litigator embraces all phases of business litigation -- pleadings, discovery, dispositive motions, settlement negotiations, mediation, arbitration, trial and appeal.  Although I am not an insolvency expert, I also have some background in the issues involved in business bankruptcies.  In 1983 I attended the one week ALI/ABI intensive bankruptcy course and over the intervening years have advised clients on a number of bankruptcy related issues, including creditors' rights, involuntary bankruptcy and Chapter 11-related issues.  I have also managed a complex Chapter 11

1  case for a Debtor's parent company.  It was through that bankruptcy case that I met

2  counsel to the Trustee in this case, Richard L. Wynne, who had been retained as

3  Chapter 11 counsel by the debtor subsidiary of the corporate client for whom I provided

4  litigation management consulting services.  My experiences as a business litigator are

5  summarized in more detail in paragraphs 5 and 6 below.

6      4.      During my years as a business litigator, I have also developed a sub-

7  specialty in litigation assessment and management.  In that practice, I regularly assist

8  corporations and individuals engaged in substantial business and commercial litigation

9  to assess and control that litigation through such methodologies as budgeting and

10  strategic planning.  Such tasks frequently involve assessment of and/or negotiation of

11  legal fees, including rates.

12      5.      In connection with litigation management and fee assessment, I have

13  engaged in the following activities, among others:

14      (a)      I have written and lectured on the topic of litigation management,

15  budgeting and legal fees.  As one example, during the 1980's, I originated and taught a

16  full course in the MBA program of the Anderson Graduate School of Management at

17  UCLA entitled "Legal Analysis for Managers."  The course contained a section on hiring

18  counsel, evaluation and control of legal fees, and management of the litigation process.

19  I have continued to teach similar courses at the Anderson School in the intervening

20  years, most recently in the Fall of both 2001, 2002 and again this Fall under the course

21  title "Legal Strategy for Business Leaders."  That course has been taught in the

22  Executive MBA program of the Anderson school.  I have also taught "Contract Law for

23  Managers" at the Drucker School of the Claremont Graduate University.  That course

24  also contained a "module" on management of lawyers, including negotiation of legal

25  fees.

26      (b)      For the past sixteen years, I have served as a commercial arbitrator

27  for the American Arbitration Association.  In that capacity, I have served as a sole

28  arbitrator or a member of a panel of three arbitrators in approximately two hundred days

1 | of commercial arbitration, including a number of complex arbitrations. I have also been
2 | a member of the AAA Panel of Neutrals for attorney-client and attorney-attorney
3 | disputes. In my capacity as an arbitrator, I have had the opportunity to rule on various
4 | motions to award legal fees at the conclusion of a case.

5 | (c)      During the years 1992-95, I was the co-chair of the Training the
6 | Advocate Committee of the Litigation Section of the American Bar Association. That
7 | committee developed a model curriculum for the training of young lawyers. One of its
8 | important elements is an increased emphasis on strategic planning and cost control in
9 | litigation.

10 | (d)      I have attended and lectured at continuing legal education
11 | programs dealing with litigation management.

12 | (e)      I have served as an expert witness, both testifying and consulting,
13 | in connection with challenges to legal fees.

14 | (f)      In connection with advising corporations and individuals on litigation
15 | management, I have personally reviewed cases and invoices involving dozens of law
16 | firms in California and throughout the United States, including their fees and rate
17 | structures.

18 | 6.      The following summarizes my professional experience.

19 | (a)      From 1971 through 1976, I was an associate in the downtown Los
20 | Angeles firm of Tuttle & Taylor and practiced law there commencing with my admission
21 | to the bar in January, 1972. From 1976 until 1982, I was a partner in that firm. During
22 | more than eleven years at Tuttle & Taylor, I concentrated my practice on the
23 | representation of business entities, although at one point I also represented a senior
24 | officer of a large corporation in a federal indictment for alleged mail fraud in connection
25 | with the sale of products. I administered Tuttle & Taylor's paralegal department from
26 | 1977 through 1978. From 1978 through 1980, I administered the firm's litigation
27 | department. I was the managing partner of the firm's Washington, D.C. office during the
28 | years 1980 through 1981.

(b)    During the academic year 1982-83, I was a full-time adjunct (visiting) professor at the UCLA School of Law, where I taught Civil Remedies and Criminal Procedure. I have continued over the years to teach as an adjunct professor in various law schools.

(c)    In 1985, I formed my own law firm ("Rosenberg, Chittum & Hobbet" later "Rosenberg, Chittum, Mendlin & Hecht") and continued as an active officer and shareholder of that firm through early 1993. While there, I continued to concentrate on the same types of complex business litigation as at Tuttle & Taylor, with an increasing emphasis on litigation management.

(d)    In 1993 I left active involvement in Rosenberg, Chittum, Mendlin & Hecht to concentrate full time on litigation management. In that practice, which covered a period of four years, I advised corporations and individuals on the assessment, management and control of litigation. My legal advise in this area included budgeting and strategic planning for litigation, analysis of likely outcomes, settlement analysis and second opinions. These management tasks also frequently involved assisting clients in hiring outside counsel for major litigation, including identification of appropriate counsel, negotiation of fee agreements, continuing assessment of attorney performance, review of invoices for legal fees, and replacement of counsel. My work in these areas included cases across a broad range of issues and commercial litigation. In many of these cases, I worked on a close basis with the outside counsel for the companies I was assisting.

(e)    In the Fall of 1997, I became an equity shareholder in the firm of Heller Ehrman White & McAuliffe, resident in its Los Angeles office. While there, I continued as a litigator of complex business matters.

(f)    In the Spring of 2000, I left Heller Ehrman to again establish my own firm, Rosenberg & Mendlin, where I continue to practice in the area of business litigation. I continue to advise, write, teach and consult on issues of litigation management. While a member of Rosenberg & Mendlin, I have continued to teach as

1   an adjunct professor in various law schools.  For example, in the Spring of 2001, I

2   taught Civil Discovery (an advanced third year course) at the Loyola Law School, and

3   am currently teaching Entertainment Law at the Pepperdine School of Law.

4   <u>Materials Examined in Connection with this Case</u>

5        7.     I have examined the following filed case materials in connection with Case

6   No. ND 01-11549-RR [substantively consolidated with former Case No. ND 01-12990-

7   RR]:

8        First Interim Report of the Trustee and Creditors Committee;

9        Fourth and Final Fee Application for Payment of Fees and
    Reimbursement of Expenses of Kirkland & Ellis LLP,  as well as the First,
10  Second and Third Fee Applications.

11       Trustee's Motion for Partial Summary Judgment;

12       Amended [Proposed] Findings of Fact and Conclusions of Law;

13       Chapter 11 Trustee and Creditors' Committee's Second Amended Joint
    Plan of Reorganization
14

15       Disclosure Statement to Accompany Chapter 11 Trustee and Creditors'
    Committee's Joint Plan of Reorganization

16       Declaration of Edward S. Adams, Kenneth N. Klee and Grant W. Newton
    in Support of Plan Confirmation;
17

18       Memorandum of Points and Authorities in Support of Confirmation;

19       Plan Proponents Reply to Certain Objecting Parties' "Stockbroker"
    Objection;

20       Transcript of Proceedings before this Court on July 7, 2003

21       8.     I have also discussed the overall structure and progress of the case with

22  Richard L. Wynne.

23       9.     I have relied on the accuracy of the Declarations and Exhibits attached to

24  the first, second, third and fourth fee applications, including the various summaries that

25  are attached to it.  I have also relied on a rate survey prepared by K&E, which is

26  attached to this Declaration as Exhibit A, as well as the August 11, 2003 article which

27  appeared in *The Deal*, attached hereto as Exhibit B.  It is my understanding that rate

28  information contained in that article was used, in part, to prepare Exhibit A.  I have

1  reviewed only the fees charged by professionals. I have not reviewed billings for costs

2  and disbursements.

3      10.    Based on my experience and on the analysis set forth below in

4  paragraphs 11 through 34, I am of the opinion that the hourly rates billed by the

5  professionals at K&E, as reflected in the fee applications, are reasonable market rates

6  and that the proportion of hours billed by professionals at various levels in the firm

7  (senior partners, more junior partners, associates, paralegals and clerks) are in

8  reasonable proportion in light of the complexity of the case and the proceedings

9  engendered by the case. I am also of the opinion that the total hours billed to each of

10  the various categories of activity do not appear out of normal range given the complexity

11  of the matter, the amount at issue in the matter, and complexities engendered by

12  parallel civil and criminal proceedings, as well as by the fraud allegations at the heart of

13  various transactions.

14      <u>Evaluating Hourly Rates</u>

15      11.    In my experience and observation, rates for attorneys are set by a

16  competitive market. Factors that the market appears to take into account include the (1)

17  perceived expertise of an attorney in the legal subject matter at issue (2) overall

18  reputation of the attorney (including reputation for good results and good case

19  management) and (3) the geographic area in which the attorney is based.

20      12.    The third factor -- geographic area – is sometimes the starting point for a

21  market analysis because the city in which a lawyer practices tends, through its

22  overhead costs and other factors, to set something of a "floor" for rates for all lawyers in

23  that city. Thus, for example, New York generally has the among the highest market

24  rates in the United States, with Los Angeles not far behind. Small and medium-sized

25  cities, by contrast, tend to have substantially lower rates. However, in the bankruptcy

26  area, and especially with regard to lawyers who are managing complex cases, the trend

27  appears, particularly in the last two to three years, to be moving towards the creation of

28  a national bankruptcy bar. This trend deemphasizes the geographic base of the lawyer

1  or law firm in relation to the setting of hourly rates.  The trend may be the result, in part,

2  of the need, in complex cases, to staff and manage such cases through large law firms

3  with national or international reach.  Such firms have a "deep" pool of resources, both

4  as to specialty and as to the ability to address urgent matters with the appropriate

5  number of lawyers should that be necessary.

6  13.    The first and second factors – the market's assessment of subject-matter

7  expertise and reputation for good results – are to some extent mediated by the opinion

8  of clients, to some extent by the opinion of peers and to some extent by the opinion of

9  the judiciary.    In recent years, as legal "media" has grown and as lawyers have

10 increasingly hired media specialists to burnish their reputations, public relations has

11 also come to play a role in reputation and its concomitant market impact.    In my

12 observation, however,  the approbation of professional colleagues – particularly in areas

13 of high legal specialty -- is the key to understanding the market "price" for attorneys,

14 since peers are in an excellent position to judge a lawyer's overall effectiveness and to

15 refer clients to lawyers – both externally and within an attorney's own law firm, where

16 there is often a highly competitive internal market.

17 14.    One marker of peer-reputation can be found by examining the lawyer's

18 professional profile:  whether the lawyer is frequently invited to speak at professional

19 conferences, whether the lawyer is sought after by serious legal publications to provide

20 commentary on areas of the lawyer's expertise, and whether the lawyer is active in

21 leadership positions within the relevant bar and practice associations and groups.

22 There are, of course, occasional false positives in these markers – lawyers whose

23 reputations among their colleagues are artificially inflated or outdated.  But these are

24 relatively rare.  There are also false negatives – lawyers who stay in their offices and do

25 nothing but practice but are nevertheless well-regarded and effective.

26 15.    Approbation of clients is also very important to a determination of

27 reputation.  Absent an expensive survey, however, this information is more difficult to

28 tap into.  In the end, client approval may be inferred simply by a client's having identified

1   a lawyer, a client's willingness to pay the hourly rate that a lawyer requests rather than

2   seeking out a less expensive lawyer, and the client's willingness to approve fee

3   invoices.  Client approval may also be indicated by the simple ability of a lawyer to

4   continue to attract clients over time, since this often occurs through referrals by, or

5   references from, former clients.

6        16.   Although many legal rate surveys tend to use year of graduation from law

7   school as an ordering device to examine rates, I have found over the years that

8   graduation year alone is not a particularly useful ordering tool once a lawyer begins to

9   be substantially more than eight or nine years beyond law school graduation.  At that

10  point, the market (rather than conscious price parallelism among large firms) begins to

11  take over and makes graduation year alone an increasingly irrelevant factor in

12  determining hourly rates.  Thus, one can often find lawyers in the same field and city

13  who are, respectively, fifteen, twenty and twenty-five years out of law school, but who

14  have similar hourly rates.  One can also find lawyers who are "senior" to other lawyers

15  but have lower rates, and vice-versa.  (Perhaps partial proof of the irrelevancy of

16  graduation year alone as a determinant of hourly rates is that, in my experience, clients,

17  in assessing potential partner-level counsel, almost never ask to know what year a

18  partner graduated from law school.)

19       17.   Keeping the above criteria in mind, I have examined the hourly rates and

20  hours billed for the three partners of K&E who billed substantial time to this matter.

21       Richard L. Wynne

22       18.   Richard L. Wynne has been billed out in this matter at $495 per hour at

23  the very start of the case, increasing to $525 per hour later in the case, and then moving

24  to $550 per hour late in the case, depending on the exact time period involved.  (I

25  understand from Mr. Wynne's declaration that he has billed the majority of his time to

26  other clients at substantially higher hourly rates, but I have not evaluated the

27  appropriateness of those rates since they have not been billed here).  Since Mr. Wynne

28  is the senior attorney on this case and since his is the highest billing rate charged, I

1  have focused most specifically on his hourly rate and on his management of the case.

2  In evaluating the hourly rate, I first compared Mr. Wynne's rate to other partner-level

3  insolvency counsel represented in the national survey compiled by Kirkland & Ellis in

4  September, 2003.

5       19.    Since I am disinclined to think that exact graduation year from law school

6  is an adequate marker, I instead looked at a five year "cohort" of those partners who

7  graduated either in Mr. Wynne's graduation year – 1982 – or in the two years on either

8  side of Mr. Wynne's graduation year (1980, 1981, 1983 and 1984).  There are eighty-

9  one such partners in the survey.  The median hourly rate for those partners (i.e., the

10  hourly rate which finds an equal number of partners above and below that hourly rate) is

11  approximately $540 per hour.  Thus, Mr. Wynne's rate, at either $495 per hour or $525

12  per hour, is below the median and, at $550 per hour, is slightly above the median for

13  that five year cohort.

14       20.    Although the median rate for Los Angeles partners in the cohort is

15  somewhat lower, there are a number of Los Angeles-based partners in the survey who

16  are in or near Mr. Wynne's cohort and whose hourly billing rate is substantially higher

17  than the median.  These include Paul Aronzon of the Los Angeles office of Milbank,

18  Tweed, Hadley & McCloy, a 1979 graduate whose billing rate is reported in the survey

19  as $725 per hour.

20       21.    In going beyond a mere comparison of rates, and attempting to evaluate

21  whether Mr. Wynne's rate is appropriate, I also looked at Mr. Wynne's biographical

22  information.  The inference to be drawn from this information is that Mr. Wynne, who

23  leads K&E's insolvency practice in its Los Angeles office, is a senior and well regarded

24  member of the bankruptcy bar with a wide range of bankruptcy expertise.  He has

25  published on bankruptcy issues in a wide range of publications, from generally oriented

26  legal publications such as *Los Angeles Lawyer Magazine* (where he was featured on

27  the cover) to specialized bankruptcy journals such as the *California Bankruptcy Journal*

28  (a publication of which he is also an editor) and *the American Bankruptcy Law Journal*.

1   Three years ago, he was featured as one of several bankruptcy specialists profiled in an

2   important non-lawyer business newspaper, the *Los Angeles Business Journal:* 'Who's

3   Who Banking & Finance – The Turnaround Artists," October 15, 2000, page 20.  The

4   above articles are attached hereto as Exhibit C.  More recently the *M&A Journal* (a self-

5   styled "independent report on deals and dealmakers"), credited Mr. Wynne with a major

6   role in the last minute rescue of a pre-packaged plan for the Chapter 11 filing of

7   Williams Communications Group.  See Vol. 3, No. 10 (2003), *A Six Month Frenzy: The*

8   *Short Happy Restructuring of Williams Communications.*  Mr. Wynne was adviser to the

9   bond-holders in that transaction.  That article is attached hereto as Exhibit D.  Finally, in

10   April 2003, Mr. Wynne was listed in the K&A Restructuring Register as one of the top 71

11   lawyers in the United States who "practice in the restructuring, reorganization,

12   insolvency and bankruptcy arenas."

13       22.    In addition, Mr. Wynne has appeared as a speaker or panelist in a very

14   large number of settings, ranging from national (e.g., the ABA Litigation Section Annual

15   Meeting and the Annual Meeting of the National Conference of Bankruptcy Judges) to

16   regional (e.g., the Ninth Circuit Bankruptcy Symposium) to local (e.g. the Los Angeles

17   County Bar Association).  See, Exhibit E attached hereto.

18       23.    Finally, I sought to evaluate Mr. Wynne's rate and value by looking at his

19   overall management of the matter, which I believe should factor in to the value of a

20   partner level lawyer, who is called on to manage other professionals.    Mr. Wynne's

21   overall management can be inferred from the structure of the case and the billing.  As a

22   matter of background of which the Court is no doubt well aware, I note that this was a

23   very complicated matter, whose complication was increased by the presence of parallel

24   criminal and civil matters.  (I have personal experience representing a senior corporate

25   officer in a parallel civil/criminal matter and know first hand the difficulties – and

26   opportunities – that that can present.)  Such time-intense, complex cases are often an

27   invitation to what I call a "billing feast," where there is no careful plan, and where, as a

28   consequence, numerous lawyers go wild.  This results in huge amounts of time being

1  billed to needless "legal research," where the use of partners is disproportionate to the

2  use of associates and where an inappropriate number of associates bill substantial time

3  to single projects.

4      24.    To assess whether that happened here, I reviewed the team assignments

5  and sampled substantial portions of the chronological billing records that are attached to

6  K & E's fee applications (I did not, however, read the thousands of pages in full).  I also

7  reviewed the summary of hours by matter, which summaries are also attached to the

8  fee applications, as well as the materials listed in paragraph 7, above.   Finally, I

9  compared the total hours and proportion of hours billed by individual professionals and

10 groupings of those professionals (partners, associates, paralegals and law clerks), both

11 in total and divided into various numbered billing matters (900, 901, 902, etc.)  From

12 that review, I am of the opinion that  this case was very well managed by Mr. Wynne,

13 and that the excellent management would justify a substantial premium above the

14 median rate charged by lawyers in his five year cohort.   Here is what the review

15 showed:

16     25.    First, the review showed that, over time, and with rare exception, the

17 number of hours billed to any particular area by Mr. Wynne and other partners was

18 generally much smaller than the number of hours billed to that area by associates or

19 paralegals.   Indeed, the total hours within each task is divided properly, not only as

20 between or among partners, associates and paralegals, but usually within a

21 professional category as well.  Thus, it is often the case that senior partners bill fewer

22 hours than more junior partners with lower billing rates and senior associates bill fewer

23 hours than do more junior associates.  Categories in which partners bill proportionally

24 higher hours are categories such as meetings with creditors, in which senior lawyers

25 would be expected to have the most involvement, or, within tasks, in situations such as

26 intensive settlement negotiations in which, again, senior lawyers would be expected to

27 have the laboring oar.

28

26.   Second, the review failed to detect any billing "feasts" by associates or partners on particular matters. I did not find, in my samples, any instances of associates spending days on end doing apparently needless, repetitive "research" on narrow issues. Nor did I find partners spending an apparently inappropriate number of hours in review, supervision, re-writing, etc. Instead, my samples demonstrated a reasonably disciplined approach, where both partner, associate and paralegal team members worked on tasks appropriate to their presumed skill levels.

27.   Third, my samples did not disclose an inordinate number of "team meetings." Instead, team meetings seem to have taken place on a reasonable basis, in terms of both frequency and length. Nor do there appear to have been long, expensive internal "memos" in which lawyers regurgitate information that is more easily and more efficiently communicated in brief meetings, such as the ones that took place here.

28.   Thus, the "team" approach that Mr. Wynne constructed to manage this case (including the selection of other partners to manage or co-manage various teams) appears to have worked, and Mr. Wynne appears to have managed this complex matter to his client's advantage in terms of fees expended.

29.   Further supporting my opinion that both Mr. Wynne's hourly rate and total hours billed are reasonable is my own prior experience with Mr. Wynne's talents as a lawyer. That experience began in 1988, when I served as outside general counsel to a brokerage firm which had acquired another brokerage firm that had been financially damaged in the 1987 "crash." It turned out, after the acquisition, that the acquired firm had what might be called "metastasized litigation cancer." To manage the litigation, the parent put the subsidiary into Chapter 11. Mr. Wynne, who was then with the firm of Levene and Eisenberg, was retained as debtor's counsel. I then worked closely with Mr. Wynne, who, in effect, reported to me. Even then, when Mr. Wynne had much less experience than he does now, I was enormously impressed with his abilities, including his ability to deal easily with a very wide range of people, from angry creditors, to opposing counsel, to co-counsel, to his own client. I also observed his creativity in

1    dealing with problems and proposing a Plan of Reorganization. Finally, I observed that

2    he was a very efficient lawyer with excellent case management skills. Thus, it is no

3    surprise to me that Mr. Wynne is now apparently a sought-after insolvency attorney.

4    Billing Rates of Other Partners (Spiegel and Pilmer)

5    30.    Although several partners billed relatively small numbers of hours to this

6    matter in specialized areas (such as tax, trusts and estates and employee benefits), two

7    partners in addition to Mr. Wynne billed substantial numbers of hours to this matter –

8    Bennett L. Spiegel (JD/MBA, Yale law school class of 1984) and  R. Alexander Pilmer

9    (Loyola Law School class of 1993). My review of portions of the chronological billing

10   records, plus my review of the summaries of those records and certain court papers,

11   leads me to the opinion that both of these partners devoted appropriate numbers of

12   hours to appropriate tasks.   Mr. Spiegel appears to have served as, in effect, the

13   intensely engaged COO of the bankruptcy portion of the matter, while Mr. Pilmer, with

14   substantial trial and litigation experience,  appears to have led the litigation efforts.

15   31.    In addition, I have compared the various hourly rates of Mr. Spiegel and

16   Mr. Pilmer (which rates, like Mr. Wynne's rates, increased over time) to the data in the

17   survey set forth in Exhibit A, and am of the opinion that that information, combined with

18   their apparent careful management of the teams in which they were involved, justifies

19   the hourly rates charged.  Mr. Spiegel's hourly rate was $495 per hour in the most

20   recent period; Mr. Pilmer's rate in that period was $360 per hour.

21   Associates and Paraprofessionals

22   32.    I am familiar with the range of rates currently being charged by large Los

23   Angeles law firms for associates and paralegals.  I am of the opinion that the rates

24   charged for paralegals and associates in this matter are well within that range.

25   33.    My business address is c/o Rosenberg & Mendlin, 528 Colorado Avenue,

26   Santa Monica, CA 90410. My business phone number is (310)899-9008, Extension 16.

27   My business fax number is (310) 899-9006.

28

34.     I believe it appropriate to disclose that the three lawyers who compose my law firm, Rosenberg & Mendlin, at one time in the past sublet office space from WSI Management, in which I understand Mr. Wynne had an interest. WSI held the master lease on the floor of the office building in which my firm had offices and supplied reception and conference room services to tenants on that floor. My firm's tenancy on that floor ended in late 2001. I do not believe that this prior relationship affects my expert views or analysis in any way.

I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 26th day of September , 2003 at Los Angeles, California.

Charles B. Rosenberg

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Worldcom, Inc., et al | Illinois | Fried Frank Harris Shriver & Jacobso | / | Scheler, Brad Eric | Partner | 1978 | $925.00 | "The Deal" Article - 8/11/03 |
|  | NY | Wilmer Cutler |  | McLucas, William R | Partner | 1975 | $765.00 | RIS Legal Billing Report, May 2003 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Bogen, Andrew E. |  | 1967 | $750.00 | "The Deal" Article - 8/11/03 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Greaney, Michael E |  | 1977 | $750.00 | "The Deal" Article - 8/11/03 |
| Communication Dynamic | DE | White & Case |  | Reiss, John M | Partner | 1986 | $750.00 | RIS Legal Billing Report, May 2003 |
| PG & E National Energy | Maryland | Clifford Chance US LLP | Co-Counsel for Debtors | Yeres, David J | Partner | 1974 | $745.00 | First Fee Application 2003 |
| Globalstar Capital Corpor | DE | Akin Gump Strauss |  | Golden, Daniel H | Partner | 1978 | $735.00 | RIS Legal Billing Report, May 2003 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Cteri, Richard M | Partner | 1981 | $735.00 | "The Deal" Article - 8/11/03 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Reilly, Conor D |  | 1976 | $735.00 | "The Deal" Article - 8/11/03 |
| Classic Communications, | DE | Willkie Farr |  | Hiller, William E. | Partner | 1978 | $735.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | Reinhold, Richard | Partner | 1976 | $735.00 | First Fee Application 2002 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | Trepper, Myron | Partner | 1968 | $735.00 | First Fee Application 2002 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | Weltman, Laurence | Partner | 1975 | $735.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Reinhold, Richard | Partner | 1977 | $735.00 | First Fee Application 2003 |
| DESA Holdings Corporat | DE | Kirkland & Ellis |  | Sprayregen, James H. M. | Partner | 1985 | $730.00 | RIS Legal Billing Report, May 2003 |
|  |  | Fried Frank Harris Shriver & Jacobso | / | Resnick, Alan | Partner | 1973 | $725.00 | "The Deal" Article - 8/11/03 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Finley, Steven R | Partner | 1974 | $725.00 | "The Deal" Article - 8/11/03 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Landers, Jonathan M. |  | 1966 | $725.00 | "The Deal" Article - 8/11/03 |
|  |  | Kasowitz, Benson, Torres & Friedman | / | Friedman, David M. |  | 1982 | $725.00 | "The Deal" Article - 8/11/03 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Aronzon, Paul | Partner | 1979 | $725.00 | Fee Application - June 2003 |
|  |  | Paul Weiss Rifind Wharton & Garriso | / | Shumskak, Stephen J |  | 1980 | $725.00 | "The Deal" Article - 8/11/03 |
|  |  | Paul Weiss Rifind Wharton & Garriso | / | Thoyer, Judith R |  | 1966 | $725.00 | "The Deal" Article - 8/11/03 |
| SLI, Inc., et al. | DE | Skadden Arps |  | Easton, Richard L. | Partner | 1976 | $725.00 | RIS Legal Billing Report, May 2003 |
|  |  | Stroock & Stroock & Lavan LLP | / | Handelsman, Lawrence |  | 1968 | $725.00 | "The Deal" Article - 8/11/03 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Goldstein, Marcia | Partner | 1976 | $725.00 | Fee Application - October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Weinberg, Jeffrey | Partner | 1974 | $725.00 | Fee Application - October 2002 |
| Communication Dynamic | DE | White & Case |  | Lauria, Thomas E | Partner | 1986 | $725.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications, | DE | Willkie Farr |  | Abrams, Marc | Partner | 1978 | $725.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | Abrams, Marc | Lateral Partner | 1978 | $725.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Baio, Joseph T | Partner | 1979 | $725.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Mention, Francis J | Partner | 1976 | $725.00 | First Fee Application 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Boies, D. | Partner | 1966 | $720.00 | First Fee Application 2002 |
|  |  | Chadbourne & Parke LLP |  | Serle, Howard |  | 1979 | $720.00 | "The Deal" Article - 8/11/03 |
| Worldcom, Inc., et al | NY | Wilmer Cutler |  | Perlstein, William J | Partner | 1974 | $715.00 | RIS Legal Billing Report, May 2003 |
|  |  | Skadden, Arps, Slate, Meagher & Flo | / | Pincus, Robert B |  | 1980 | $710.00 | "The Deal" Article - 8/11/03 |
|  |  | Fried Frank Harris Shriver & Jacobso | / | Jacob, Valerie |  | 1979 | $705.00 | "The Deal" Article - 8/11/03 |
|  |  | Fried Frank Harris Shriver & Jacobso | / | Strauss, Audrey |  | 1972 | $705.00 | "The Deal" Article - 8/11/03 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Scheler, Brad Eric | Partner | 1978 | $700.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | L/O of Gregory P Joseph | Spl Litigation Counsel to Debtor | Joseph, Gregory | Partner | 1975 | $700.00 | Quarter Fee App filed August 2003 |
|  |  | Gibson, Dunn & Crutcher LLP |  | Rosenthal, Michael A. | Partner | 1980 | $695.00 | "The Deal" Article - 8/11/03 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Dunne, Dennis | Partner | 1991 | $695.00 | Fee Application - June 2003 |

Information derived either from public records,
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

EXHIBIT O-1

## KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Worldcom | SDNY | Milbank, Tweed, Hadley & McCloy L | | Wright, Richard J | | 1976 | $695.00 | "The Deal" Article - 8/11/03 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Allerhand, Joseph | Partner | 1979 | $695.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Gold, Simeon | Partner | 1974 | $695.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Weinschel, Alan | Partner | 1970 | $695.00 | Fee Application – October 2002 |
| Classic Communications | DE | Willkie Farr | | O'Connor, Brian | Partner | 1978 | $695.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Trepper, Myron | Partner | 1969 | $695.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | DE | Willkie Farr & Gallagher | Debtor | Chapman, Shelley | Lateral Partner | 1981 | $695.00 | First Fee Application 2002 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | O'Connor, Brian | Partner | 1977 | $695.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Chapman, Shelley C. | Partner | 1992 | $695.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Clifford Chance US, LLP | Co-Counsel for Debtors | Drebsky, Dennis | Partner | 1971 | $690.00 | First Fee Application 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Dichter, Barry J. | Partner | 1975 | $685.00 | RIS Legal Billing Report, May 2003 |
| | | Milbank, Tweed, Hadley & McCloy / | | O'Hara, Robert S. Jr / | | 1964 | $685.00 | "The Deal" Article - 8/11/03 |
| | | Skadden, Arps, Slate, Meagher & Flo/ | | Welch, Edward P. | | 1976 | $685.00 | "The Deal" Article - 8/11/03 |
| SLI, Inc .. et al | DE | Skadden Arps | | LeDuc, Andre | Partner | 1978 | $680.00 | RIS Legal Billing Report, May 2003 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Blanchard, Kimberley | Partner | 1982 | $680.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Fife, Lori | Partner | 1984 | $680.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Goldring, Stuart | Partner | 1984 | $680.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Hoenig, Mark | Partner | 1982 | $680.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Golden, Daniel | Partner | 1979 | $675.00 | Fee Application – November 2002 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Ball, Corinne | Partner | 1979 | $675.00 | Final Fee App - Dec. 2002 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Klee, Kenneth N. | Partner | 1975 | $675.00 | 2003 Hourly Rate Change |
| DFSA Holdings Corporat | DE | Stroock & Stroock | | Sage, Michael J. | Partner | 1988 | $675.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Cohn, Henry M. | Partner | 1981 | $675.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | Finnegan, Cornelius | Partner | 1972 | $675.00 | First Fee Application 2002 |
| Adelphia | SDNY | Willkie Farr & Gallagher | Debtor | Nezter, Roger | Partner | 1982 | $675.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Cohn, Henry M. | Partner | 1981 | $675.00 | First Fee Application 2003 |
| Worldcom, Inc., et al | NY | Wilmer Cutler | | Davidow, Charles E. | Partner | 1980 | $675.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Ellenberg, Mark C. | Partner | 1975 | $670.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Strauss, Audrey | Partner | 1972 | $670.00 | Fee Application (11/1/2002-2/28/200) |
| Adelphia | SDNY | Clifford Chance US, LLP | Employee Counsel | Carroll, John K. | Partner | 1980 | $660.00 | Employment App 2002 |
| Globalstar Capital Corpor | DE | Jones Day | | Cornell, John R. | Partner | 1969 | $660.00 | RIS Legal Billing Report, May 2003 |
| Slater Steel | Delaware | Jones Day Reavis & Pogue | Debtor | Avery, R | Partner | 1971 | $660.00 | Interim Fee App-filed August 2003 |
| CTC Communications | Delaware | Jones Day Reavis & Pogue | Debtor | Cornell, J R | Partner | 1969 | $660.00 | Interim Fee App-filed May 2003 |
| SLI, Inc .. et al | DE | Skadden Arps | | Berlin, Kenneth | Partner | 1974 | $655.00 | RIS Legal Billing Report, May 2003 |
| SLI, Inc .. et al | DE | Skadden Arps | | Rock, Neil L. | Partner | 1989 | $655.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Auslander, Mitchell J | Partner | 1981 | $655.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Lindo, Stephen T | Partner | 1975 | $655.00 | RIS Legal Billing Report, May 2003 |
| Fleming | Delaware | Baker Botts | Spl Counsel to Debtor | Bristow, B. Daryl | Partner | 1964 | $650.00 | 1st Interim Fee App-April 2003 |
| Conseco | Illinois | Baker Botts | Spl SEC Lit Counsel | Don, James | Partner | 1969 | $650.00 | 2002 Employment App |
| PG&E | NDCA | Heller Ehrman-San Francisco | | Popofsky, M. Laurence | | 1963 | $650 | PGE Employment App-5/01 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Gottlieb, Lawrence C. Esq | Partner | 1974 | $650.00 | First Fee Application 2003 |

Information derived either from public records.
RIS Legal Billing Report, May 2003 or
"The Deal" article, August 11, 2003

Page 2 of 14

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
### SEPTEMBER 2003

**EXHIBIT A**

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Pachulski, Richard | Partner | 1979 | $650.00 | 9th Interim Fee App -May 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Carleen, Donald | Partner | 1983 | $645.00 | Qrtly Fee App filed August 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Golay, David | Partner | 1977 | $645.00 | Qrtly Fee App filed August 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Jacobson, Jack | Partner | 1982 | $645.00 | Qrtly Fee App filed August 2003 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Lawrence, Carmen J | Partner | 1982 | $645.00 | Fee Application (11/1/2002-2/28/2003) |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Resnick, Alan | Partner | 1973 | $645.00 | Quarter Fee App filed August 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Scharfstein, Joel | Partner | 1977 | $645.00 | Qrtly Fee App filed August 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Steingart, Bonnie | Partner | 1979 | $645.00 | Qrtly Fee App filed August 2003 |
| | SDNY | Gibson, Dunn & Crutcher LLP | Debtor | Grais, David | Partner | 1979 | $645.00 | Fee Statement filed July 2003 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Thomson, J.R | Partner | 1970 | $645.00 | Final Fee App - Dec. 2002 |
| Globalstar Capital Corpor | DE | Jones Day | | Leake, Paul D | Partner | 1989 | $640.00 | RIS Legal Billing Report, May 2003 |
| SLI, Inc., et al | DE | Skadden Arps | | Lawson, Michael A | Partner | 1978 | $640.00 | RIS Legal Billing Report, May 2003 |
| | SDNY | Gibson, Dunn & Crutcher LLP | Debtor | Buffone, Steven | Partner | 1984 | $635.00 | Fee Statement filed July 2003 |
| Slater Steel | Delaware | Jones Day Reavis & Pogue | Debtor | Hamer, P | Partner | 1990 | $625.00 | Interim Fee App-filed August 2003 |
| SLI, Inc., et al | DE | Skadden Arps | | Galardi, Gregg M | Partner | 1991 | $625.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Finnegan, Cornelius | Partner | 1973 | $625.00 | RIS Legal Billing Report, May 2003 |
| Communication Dynamic | DE | White & Case | | Johnson, M. Elaine | Partner | 1988 | $620.00 | RIS Legal Billing Report, May 2003 |
| Communication Dynamic | DE | White & Case | | Zylberberg, Abraham | Partner | 1974 | $620.00 | RIS Legal Billing Report, May 2003 |
| Worldcom, Inc., et al | NY | Wilmer Cutler | | Lake, F. David | Partner | 1967 | $620.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Mitchell, David S. | Partner | 1980 | $615.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Clifford Chance US, LLP | Employee Counsel | Meister, David | Partner | 1988 | $615.00 | Employment App 2002 |
| | SDNY | Gibson, Dunn & Crutcher LLP | Debtor | McArdle, Wayne | Partner | 1983 | $610.00 | Fee Statement filed July 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | O'Dowd, Sarah A. | Partner | 1978 | $610.00 | 7th Interim Fee App-April 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Patrick, Gregory M | Partner | 1983 | $605.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Ansell, David | Partner | 1979 | $605.00 | Qrtly Fee App filed August 2003 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Stein, Mark J | Partner | 1985 | $605.00 | Fee Application (11/1/2002-2/28/2003) |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Wolfe, Richard | Partner | 1988 | $605.00 | Qrtly Fee App filed August 2003 |
| Adelphia | SDNY | Kaye Scholer LLP | Special Counsel to Employees | Steinberg, Arthur Esq. | Partner | 1980 | $605.00 | First Fee Application 2002 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Jankowsky, Joel | Partner | 1968 | $600.00 | Fee Application – November 2002 |
| Allegiance Telecom, Inc. | SDNY | Akin Strauss Hauer & Feld LLP | Creditors Committee | Parks, Russell W | Partner | 1972 | $600.00 | Employment Application 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Shirazi, Ray I. | Partner | 1988 | $600.00 | RIS Legal Billing Report, May 2003 |
| PG&E | NDCA | Cooley Godward LLP-San Francisco | / | Neal, Stephen C. | Partner | 1973 | $600 | PGE Employment App-5/01 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Blake, Jonathan D. | Partner | 1964 | $600.00 | Employment App 2002 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Chazen, Leonard | Partner | 1967 | $600.00 | Employment App 2002 |
| Adelphia | SDNY | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Craven, George | Partner | 1976 | $600.00 | Interim Fee App-filed August 2003 |
| Communication Dynamic | DE | Paul Weiss | | Saferstein, Jeffrey, D | Partner | 1989 | $600.00 | RIS Legal Billing Report, May 2003 |
| DESA Holdings Corporat | DE | Stroock & Stroock | | Bender, Gerald C. | Partner | 1984 | $595.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Dwyer, R. | Partner | 1972 | $590.00 | First Fee Application 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Zack, S | Partner | 1971 | $590.00 | First Fee Application 2002 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Moore, Amy | Partner | 1984 | $590.00 | RIS Legal Billing Report, May 2003 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Lieb, Richard | Partner | 1954 | $590.00 | First Fee Application 2002 |

Information derived either from public records,
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

## KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk Case Filed | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Enron Corp., et al | NY | Alston & Bird | Corporate Counsel to Debtor | Brown, David E. | Partner | 1986 | $585.00 | RIS Legal Billing Report, May 2003 |
| PG&E | NDCA | Heller Ehrman | | Weise, Stephen | | 1974 | $585 | PGE Employment App-5/01 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | | Alexander, Robert C. | Partner | 1972 | $585.00 | 7th Interim Fee App-April 2003 |
| CTC Communications | Delaware | Jones Day Reavis & Pogue | Debtor | Ryland, E. | Partner | 1992 | $585.00 | Interim Fee App-filed May 2003 |
| Cal PX | CDCA | Kaye Scholer LLC | | Marc Cohen | Partner | 1974 | $585 | Final Fee Application 2003 |
| Flag Telecom | SDNY | Anderson Kill & Olick | Creditors Committee | Rahl, J. Andrew | Partner | 1974 | $580.00 | Final Fee Application 2002 |
| Williams Communication | SDNY | Anderson Kill & Olick | Creditors Committee | Rahl, J. Andrew | Partner | 1974 | $580.00 | Final Fee App - Dec. 2002 |
| DESA Holdings Corporat | DE | Kirkland & Ellis | | Porter, Richard W. | Partner | 1987 | $580.00 | RIS Legal Billing Report, May 2003 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Jacoby, Mark | Partner | 1966 | $580.00 | Fee Application - October 2002 |
| Allegiance Telecom, Inc. | SDNY | Akin Strauss Hauer & Feld LLP | Creditors Committee | Dizengoff, Ira S | Partner | 1992 | $575.00 | Employment Application 2003 |
| Enron Corp., et al. | NY | Alston & Bird | | Cook, Philip C. | Partner | 1972 | $575.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al. | NY | Alston & Bird | | Wheeler, Charles W. | Partner | 1970 | $575.00 | RIS Legal Billing Report, May 2003 |
| Fleming | Delaware | Baker Botts | Spl Counsel to Debtor | Cialone, Joseph | Partner | 1972 | $575.00 | 1st Interim Fee App-April 2003 |
| Enron Corp., et al. | NY | Cadwalader Wickersham | | Polkes, Jonathan D. | Partner | 1985 | $575.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Blake, Jonathan D. | Partner | 1965 | $575.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Falon, Paul | Partner | 1983 | $575.00 | Qrtly Fee App filed August 2003 |
| Globalstar Capital Corpora | DE | Jones Day | | Jenks, Carl | Partner | 1982 | $575.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Kiriakos, Thomas | Partner | 1983 | $575.00 | Interim Fee App-filed August 2003 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Krakauer, Bryan | Partner | 1981 | $575.00 | First Fee Application 2002 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Fein, Ronald | Partner | 1970 | $575.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Stutman, Theodore | Partner | 1967 | $575.00 | 2nd Interim Fee App-11/02-2/03 |
| Classic Communications | DE | Wilkie Farr | | Damele, Frank A. | Partner | 1989 | $575.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Wilkie Farr | | Kelly, Michael J | Partner | 1989 | $575.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Wilkie Farr & Gallagher | Debtor | LeKort, Maurice | Partner | 1989 | $575.00 | First Fee Application 2002 |
| Adelphia | SDNY | Wilkie Farr & Gallagher | Debtor | Needham, Andrew | Partner | 1986 | $575.00 | First Fee Application 2002 |
| Adelphia | SDNY | Wilkie Farr & Gallagher | Debtor | Shalhoub, Paul | Partner | 1991 | $575.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Wilkie Farr & Gallagher LLP | Counsel for Debtors | Feldman, Matthew A. | Partner | 1988 | $575.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Wilkie Farr & Gallagher LLP | Counsel for Debtors | Hochman, Jeffrey S. | Partner | 1992 | $575.00 | First Fee Application 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Feinstein, R. A. | Partner | 1977 | $570.00 | First Fee Application 2002 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Blears, Norman | Partner | 1980 | $570.00 | 7th Interim Fee App-April 2003 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Stern, David M. | Partner | 1975 | $570.00 | 2003 Hourly Rate Change |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Schroeder, Edmund R | Counsel | 1958 | $565.00 | Interim Fee App-filed August 2003 |
| Slater Steel | Delaware | Jones Day Reavis & Pogue | Debtor | Hagen, D. | Partner | 1980 | $565.00 | Interim Fee App-filed August 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Hoxie, Timothy | Partner | 1985 | $560.00 | 7th Interim Fee App-April 2003 |
| Adelphia | Delaware | Kaye Scholer LLP | Special Counsel to Employees | Parver, Jane W. Esq | Partner | 1973 | $560.00 | First Fee Application 2002 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Jones, Laura Davis | Partner | 1986 | $560.00 | 9th Interim Fee App -May 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Jones, Laura Davis | Partner | 1986 | $560.00 | 1st Interim Fee App-April 2003 |
| Classic Communications | DE | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Stang, James | Partner | 1980 | $560.00 | 1st Interim Fee App-April 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Ziehl, Dean | Partner | 1978 | $560.00 | 9th Interim Fee App -May 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Jacobs, Alan | Partner | 1977 | $555.00 | 7th Interim Fee App-April 2003 |
| Conseco, Inc., et al. | IL | Jenner & Block | | Murray, Daniel R | Partner | 1970 | $555.00 | RIS Legal Billing Report, May 2003 |

Information derived either from public records.
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

EXHIBIT A-1

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
### SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Murray, Daniel | Partner | 1970 | $555.00 | Interim Fee App-filed August 2003 |
| Globalstar Capital Corpor | DE | Akin Gump Strauss | | Davison, Tom W | Partner | 1977 | $550.00 | RIS Legal Billing Report, May 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Gaines, Andrew | Partner | 1987 | $550.00 | Fee Application - November 2002 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Heller, Fred | partner | 1978 | $550.00 | Fee Application - November 2002 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld Ll | Creditors Committee | Parks, Russell W | Partner | 1983 | $550.00 | Fee Application - November 2002 |
| Allegiance Telecom, Inc. | SDNY | Akin Gump Strauss Hauer & Feld LLP | Creditors Committee | Davidson, Tom W. | Partner | 1977 | $550.00 | Employment Application 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Greene, Terence J | Partner | 1981 | $550.00 | RIS Legal Billing Report, May 2003 |
| Williams Communication | SDNY | Anderson Kill & Olick | Creditors Committee | Bobbitt, Roy | Partner | 1951 | $550.00 | Final Fee App - Dec. 2002 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Smith, Edward A | Counsel | 1984 | $550.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Baird, Bruce A | Partner | 1975 | $550.00 | Employment App 2002 |
| | SDNY | Gibson, Dunn & Crutcher LLP | Debtor | Weiss, Janet | Partner | 1990 | $550.00 | Fee Statement filed July 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Benvenutti, Peter J | Partner | 1974 | $550.00 | 7th Interim Fee App-April 2003 |
| Williams Communication | SDNY | Hennigan Bennett & Dorman | Spl Counsel to Debtor | Bennett, Bruce | Partner | 1982 | $550.00 | Final Fee App - Dec 2002 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Pohl, P.M. | Partner | 1975 | $550.00 | Final Fee App - Dec. 2002 |
| PG&E | NDCA | Keker & Van Nest - San Francisco | / | Van Nest, Robert A | | 1978 | $550 | PGE Employment App-5/01 |
| Conseco | Illinois | L/O of Gregory P Joseph | Spl Litigation Counsel to Debtor | Jarvis, Pamela | Partner | 1978 | $550.00 | 2002 Employment App |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Sherck, Timothy | Partner | 1975 | $550.00 | Interim Fee App-filed August 2003 |
| Adelphia | SDNY | O'Melveny & Myers LLP | Spl Lit Counsel to Employees | Rosenberg, Jonathan | Partner | 1984 | $550.00 | 2002 Employment App |
| Worldcom | SDNY | Piper Rudnik LLP | Spl Counsel to Debtor | Tauber, Mark | Partner | 1973 | $550.00 | Fee Application-June-Nov 2002 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Kittel, Norman N | Partner | 1983 | $550.00 | First Fee Application 2002 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Davidson, Jeffrey | Partner | 1977 | $550.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Klausner, Gary | Partner | 1974 | $550.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Markell, Bruce | Of Counsel | 1980 | $550.00 | 2nd Interim Fee App-11/02-2/03 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Hurwitz, Elliott | Partner | 1985 | $550.00 | Fee Application - October 2002 |
| Worldcom, Inc. et al | NY | Wilmer Cutler | | Cahn, Mark D | Partner | 1987 | $550.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Latham, John L. | Partner | 1979 | $545.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | Dorsey & Whitney LLP | Spl corp/securities counsel | Shnider, Bruce | Partner | 1977 | $545.00 | 2002 Employment App |
| SLI, Inc., et al | DE | Skadden Arps | | Nagler, David L. | Partner | 1993 | $545.00 | RIS Legal Billing Report, May 2003 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Ray, Stephan | Partner | 1979 | $545.00 | 2nd Interim Fee App-11/02-2/03 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Kalembka, Lech R | Counsel | 1989 | $540.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Buchanan, John G | Partner | 1979 | $540.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Wakdrihm Gerard J | Partner | 1990 | $540.00 | RIS Legal Billing Report, May 2003 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Jenks, F.M. | Partner | 1982 | $540.00 | Final Fee App - Dec 2002 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Bogdanoff, Lee R | Partner | 1985 | $540.00 | 2003 Hourly Rate Change |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Bussel, Daniel J | | 1985 | $540.00 | 2003 Hourly Rate Change |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Patterson, Thomas E. | Partner | 1984 | $540.00 | 2003 Hourly Rate Change |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Tuchin, Michael L. | Partner | 1970 | $540.00 | 2003 Hourly Rate Change |
| Communication Dynamic | DE | White & Case | | Shore, J. Christopher | Partner | 1992 | $540.00 | Final Fee App - Dec 2002 |
| Enron Corp., et al | NY | Alston & Bird | | Stephenson, John E. | Partner | 1984 | $535.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Gravante, N. | Partner | 1985 | $530.00 | First Fee Application 2002 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Faber, Michael | Partner | 1978 | $530.00 | 7th Interim Fee App-April 2003 |

Information derived either from public records,
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003.

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
### SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Slater Steel | Delaware | Jones Day Reavis & Pogue | Debtor | Leavitt, J | Partner | 1973 | $530.00 | Interim Fee App-filed August 2003 |
| DESA Holdings Corporat | DE | Kirkland & Ellis | | Land, Brian R | Partner | 1989 | $530.00 | RIS Legal Billing Report, May 2003 |
| Worldcom, Inc., et al | NY | Wilmer Cutler | | Kilgore, R. Scott | Partner | 1985 | $530.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Levy, Michael R. | Partner | 1974 | $525.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Baxter, Michael S: Patrick | Partner | 1983 | $525.00 | Employment App 2002 |
| | SDNY | Gibson, Dunn & Crutcher LLP | Debtor | Coleman, Kathryn | Partner | 1983 | $525.00 | Fee Statement filed July 2003 |
| | SDNY | Gibson, Dunn & Crutcher LLP | Debtor | Millet, Craig | Partner | 1872 | $525.00 | Fee Statement filed July 2003 |
| PG&E | NDCA | Heller Ehrman-San Francisco | | Rushforth, Brent | Partner | 1970 | $525 | PGE Employment App-5/01 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Peters, Richard | | 1979 | $525.00 | 7th Interim Fee App-April 2003 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Carey, JF | Partner | 1971 | $525.00 | Final Fee App - Dec. 2002 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Indyke, Jay R. Esq | Partner | 1982 | $525.00 | First Fee Application 2003 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Warren, David M. Esq | Partner | 1976 | $525.00 | First Fee Application 2003 |
| Fountainview, Inc., et al | CA | O'Melveny & Myers | | Demos, George C. | Partner | 1989 | $525.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Bendernagel, James F | Partner | 1976 | $525.00 | First Fee Application 2002 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Gerlach, Paul V | Partner | 1982 | $525.00 | First Fee Application 2002 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Wallace, Mark | Of Counsel | 1977 | $525.00 | First Fee Application 2002 |
| Edison Brothers Stores, In | DE | Weil Gotshal | | Youngman, Stephen | Partner | 1985 | $525.00 | 2nd Interim Fee App-11/02-2/03 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Urquhart, Douglas | Partner | 1989 | $525.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Boies, C. | Partner | 1994 | $520.00 | Fee Application - October 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Carpinello, G. F. | Partner | 1975 | $520.00 | First Fee Application 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Korologos, P. | Partner | 1991 | $520.00 | First Fee Application 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Kosnitzky, M. | Partner | 1984 | $520.00 | First Fee Application 2002 |
| Conseco, Inc., et al | IL | Jenner & Block | | Sullivan, Barry | Partner | 1975 | $520.00 | RIS Legal Billing Report, May 2006 |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Sullivan, Barry | Partner | 1975 | $520.00 | Interim Fee App-filed August 2003 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Kelly, CM | Partner | 1988 | $520.00 | Final Fee App - Dec. 2002 |
| UAI Corporation, et al. | IL | Paul Hastings | | Gallagher, John J | Partner | 1972 | $520.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al. | NY | Alston & Bird | | Cushing, Paul M. | Partner | 1987 | $515.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al. | NY | Alston & Bird | | Hill, B. Harvey | Partner | 1964 | $515.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Ives, H. Bryan | Partner | 1980 | $515.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Poe, H. Sadler | Partner | 1971 | $515.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Thatcher, Laura Glover | Partner | 1980 | $515.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Williams, David F | Partner | 1979 | $515.00 | RIS Legal Billing Report, May 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloc | Co-Counsel-Comm Equity Sec H | Barliant, Ronald | Partner | 1969 | $515.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloc | Co-Counsel-Comm Equity Sec H | Muniz, Gerald F. | Partner | 1960 | $515.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloc | Co-Counsel-Comm Equity Sec H | Solow, Alan P. | Partner | 1979 | $515.00 | Final Fee Application 2003 |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Walsh, Charles | Partner | 1964 | $510.00 | 2002 Employment App |
| PG&E | NDCA | Heller Ehrman-San Francisco | | Fiala, Martin | | 1978 | $510 | PGE Employment App-5/01 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Appelman, Daniel | Partner | 1981 | $510.00 | 7th Interim Fee App-April 2003 |
| DESA Holdings Corporat | DE | Kirkland & Ellis | | Kapp, James W | Partner | 1994 | $510.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Krohn, M. David | Partner | 1983 | $505.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Mangum, Christopher D | Partner | 1985 | $505.00 | RIS Legal Billing Report, May 2003 |

Information derived either from public records,
RIS Legal Billing Report, May 2003 or
"The Deal" article, August 11, 2003

EXHIBIT A-1

## KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Enron Corp., et al | NY | Alston & Bird | | Soukup, Lynn A | Partner | 1981 | $505.00 | RIS Legal Billing Report, May 2003 |
| PG & E National Energy | Maryland | Clifford Chance US, LLP | Co-Counsel for Debtors | O'Rourke, Christopher J. | Associate | 1994 | $505.00 | First Fee Application 2003 |
| Conseco | Illinois | Saul Ewing LLP | Conseco Trust Committee | Stoviak, John | Partner | 1976 | $505.00 | Interim Fee App-filed August 2003 |
| PG & E National Energy | Maryland | Sutherland, Asbill & Brennan LLP | Spl Energy Counsel for Debtors | Dweck, Jacob | Partner | 1976 | $505.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Sutherland, Asbill & Brennan LLP | Spl Energy Counsel for Debtors | Rodgers, Peter H | Partner | 1973 | $505.00 | First Fee Application 2003 |
| Enron Corp., et al | NY | Cadwalader Wickersham | | Williams, Matthew J | Associate | 1999 | $502.50 | RIS Legal Billing Report, May 2003 |
| Globalstar Capital Corpor | DE | Akin Gump Strauss | | Kuhn, Stephen B | Partner | 1991 | $500.00 | RIS Legal Billing Report, May 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Davidson, Tom W | Partner | 1991 | $500.00 | Fee Application – November 2002 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Hennberg, Scott | Partner | 1985 | $500.00 | Fee Application – November 2002 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Maynard, Douglas | Partner | 1987 | $500.00 | Fee Application - November 2002 |
| Enron Corp., et al | NY | Alston & Bird | | Connolly, Dennis J | Partner | 1986 | $500.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | Baker Botts | Spl SEC L/t Counsel | Rocap, James | Partner | 1975 | $500.00 | 2002 Employment App |
| Adelphia | SDNY | Brager Wexler Eagel & Morgenstern | Spl Counsel-Comm Equity Secur | Bragar, Raymond A. | Partner | 1973 | $500.00 | Equity Committee |
| Adelphia | SDNY | Brager Wexler Eagel & Morgenstern | Spl Counsel-Comm Equity Secur | Morgenstern, Peter D. | Partner | 1983 | $500.00 | Equity Committee |
| Pathnet Telecommunicati | VA | Covington & Burling | | Cutler, Michael E. | Partner | 1982 | $500.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Herman, Anthony | Partner | 1989 | $500.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Lefevre, D. Michael | Partner | 1979 | $500.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Paul, William M. | Partner | 1978 | $500.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Shaw, Robert E. | Of Counsel | 1984 | $500.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Herman, Anthony | Partner | 1989 | $500.00 | Employment App 2002 |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committee | Cleary, David | Partner | 1987 | $500.00 | 2003 (7th) Fee App |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committee | Mitchell, Nancy | Partner | 1987 | $500.00 | 2003 (7th) Fee App |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Gartrell, Philip | Partner | 1986 | $500.00 | 7th Interim Fee App-April 2003 |
| Conseco, Inc., et al | IL | Jenner & Block | | Steege, Catherine | Partner | 1982 | $500.00 | RIS Legal Billing Report, May 2003 |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Steege, Catherine | Partner | 1986 | $500.00 | Interim Fee App-filed August 2003 |
| Globalstar Capital Corpor | DE | Jones Day | | Salerno, James J | Partner | 1993 | $500.00 | RIS Legal Billing Report, May 2003 |
| Williams Communication | SDNY | Jones Day Reavis & Pogue | Debtor | Gaffey, R.W | Partner | 1982 | $500.00 | Final Fee App - Dec. 2002 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Hughes, John H. | Partner | 1982 | $500.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Clifford Chance US, LLP | Co-Counsel for Debtors | Latimer, Aimee D | Associate | 1996 | $495.00 | First Fee Application 2003 |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Feldstein, Stuart | Partner | 1964 | $495.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Freedman, Larry | Partner | 1985 | $495.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Harding, Arthur | Partner | 1975 | $495.00 | 2002 Employment App |
| FAO Schwarz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Unger, Peter | Partner | 1983 | $495.00 | Employment Application 2003 |
| PG&E | NDCA | Heller Ehrman-San Francisco | | Berman, Stan | | 1988 | $495 | PGE Employment App-5/01 |
| Globalstar Capital Corpor | DE | Jones Day | | Ridgeway, Candace | Partner | 1988 | $495.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLI | Creditors Committee | Barash, Martin R | Partner | 1992 | $495.00 | 2003 Hourly Rate Change |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Brill, Martin | Partner | 1972 | $495.00 | 2nd Interim Fee App-11/02-2/03 |
| FAO Schwarz | Delaware | Levene, Neale, Bender, Rankin & Bri | Co-Counsel to Debtor | Levene, David W. | Partner | 1974 | $495.00 | Employment Application 2003 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Levene, David W | Partner | 1974 | $495.00 | 2nd Interim Fee App-11/02-2/03 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Goldich, Stanley | Partner | 1980 | $495.00 | 9th Interim Fee App -May 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Kharasch, Ira | Partner | 1982 | $495.00 | 1st Interim Fee App-April 2003 |

Information obtained either from public records.
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003.

EXHIBIT A-1

Page 7 of 14

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
### SEPTEMBER 2003

| Bk Case | State Bk Case Filed | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Orgel, Robert | Partner | 1981 | $495.00 | 1st Interim Fee App–April 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Richards, Jeremy | Partner | 1979 | $495.00 | 9th Interim Fee App–May 2003 |
| DESA Holdings Corporat | DE | Stroock & Stroock | | Zeldman, Karyn B | Associate | 1995 | $495.00 | RIS Legal Billing Report, May 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Wilamowsky, Steven | Associate | 1995 | $490.00 | First Fee Application 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Croker, James E. | Partner | 1982 | $490.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | St. Patrick Baxter, Michael | Partner | 1985 | $490.00 | RIS Legal Billing Report, May 2003 |
| Williams Communications | SDNY | Hennigan Bennett & Dorman | Spl Counsel to Debtor | Murphy, Bennett | Partner | 1984 | $490.00 | Final Fee App - Dec. 2002 |
| Slater Steel | Delaware | Jones Day Reavis & Pogue | Debtor | Dinardo, L | Partner | 1974 | $490.00 | Interim Fee App–filed August 2003 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Mandel, Lena | Associate | 1990 | $490.00 | Fee Application – June 2003 |
| Ual Corporation, et al | IL | Paul Hastings | | Span, Robert S | Partner | 1971 | $490.00 | RIS Legal Billing Report, May 2003 |
| Ual Corporation, et al | IL | Paul Hastings | | Steinbrecher, Alan K | Partner | 1977 | $490.00 | RIS Legal Billing Report, May 2003 |
| Communication Dynamic | DE | White & Case | | Houk, Jane S | Associate | 1993 | $490.00 | RIS Legal Billing Report, May 2003 |
| Communication Dynamic | DE | White & Case | | Weissmann, Mara S. | Counsel | 1988 | $490.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Haller, Peter E. | Associate | 1993 | $490.00 | RIS Legal Billing Report, May 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Callan, Carollyn H | Associate | 1994 | $490.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Davis, Joseph G. | Associate | 1992 | $490.00 | First Fee Application 2003 |
| Worldcom, Inc., et al | NY | Wilmer Cutler | | Markus, Eric R. | Partner | 1987 | $490.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | LaFiandra, Aldo | Partner | 1989 | $485.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Weitnauer, John C. | Partner | 1977 | $485.00 | RIS Legal Billing Report, May 2003 |
| FAO Schwartz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Rochelle, William | Partner | 1973 | $485.00 | Employment Application 2003 |
| PG&E | NDCA | Heller Ehrman–San Francisco | | Benvenutti, Peter J | | 1974 | $485 | PGE Employment App–5/01 |
| Globalstar Capital Corpor | DE | Jones Day | | Mandel, Mark S | Partner | 1988 | $485.00 | RIS Legal Billing Report, May 2003 |
| Ual Corporation, et al | IL | Paul Hastings | | Traxler, Katherine A | Counsel | 1990 | $485.00 | RIS Legal Billing Report, May 2003 |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl.t to Debtor | Coyne, Joseph | Partner | 1980 | $485.00 | 2nd Interim Fee App–11/02-2/03 |
| SLI, Inc., et al | DE | Skadden Arps | | Eisenberg, Henry C | Counsel | 1985 | $485.00 | RIS Legal Billing Report, May 2003 |
| SLI, Inc., et al | DE | Skadden Arps | | Kendall, Gail | Special Counsel | 1969 | $485.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Sontag, Jocelyn A | Associate | 1996 | $485.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Van Hove, Jeffrey | Associate | 1994 | $485.00 | RIS Legal Billing Report, May 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Sontag, Jocelyn A. | Associate | 1996 | $485.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Van Hove, Jeffrey | Associate | 1994 | $485.00 | First Fee Application 2003 |
| Worldcom, Inc., et al | NY | Wilmer Cutler | | Delery, Stuart F | Partner | 1993 | $485.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Bennett, Jay D | Partner | 1977 | $480.00 | RIS Legal Billing Report, May 2003 |
| Enron Corp., et al | NY | Alston & Bird | | Smith, Frank G | Partner | 1977 | $480.00 | RIS Legal Billing Report, May 2003 |
| Classic Communications | DE | Willkie Farr | | Allman, Peter J | Special Counsel | 1981 | $480.00 | RIS Legal Billing Report, May 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Dizengoff, Ira S | Partner | 1993 | $475.00 | Fee Application – November 2002 |
| Fleming | Delaware | Baker Botts | Spl Counsel to Debtor | Lemon, C. Neel | Partner | 1979 | $475.00 | 1st Interim Fee App–April 2003 |
| PG&E | NDCA | Cooley Godward LLP-San Francisco | / | Kelly, J. Michael | | 1969 | $475 | PGE Employment App–5/01 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Barnett, Thomas O | Partner | 1989 | $475.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Britton, Edward C. | Partner | 1985 | $475.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Hellerman, Eric | Of Counsel | 1981 | $475.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Livingston, Jr. S. William | Partner | 1970 | $475.00 | RIS Legal Billing Report, May 2003 |

Information derived either from public records,
RIS Legal Billing Report, May 2003. or
"The Deal" article, August 11, 2003.

EXHIBIT ⸺ A

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk Case Filed | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Pathnet Telecommunicati | VA | Covington & Burling | | Phillips, Douglas E. | Of Counsel | 1981 | $475.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Plotkin, Mark E. | Partner | 1987 | $475.00 | RIS Legal Billing Report, May 2003 |
| Pathnet Telecommunicati | VA | Covington & Burling | | Skinner, William P. | Partner | 1976 | $475.00 | RIS Legal Billing Report, May 2003 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Haller, David W. | Partner | 1987 | $475.00 | Employment App 2002 |
| Conseco | Illinois | Dorsey & Whitney LLP | Spl corp/securities counsel | Reeslund, Michael | Partner | 1976 | $475.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Beckner, R. Bruce | Partner | 1978 | $475.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Davids, Seth | Partner | 1978 | $475.00 | 2002 Employment App |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Black, Dennis B | Partner | 1968 | $475.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Shapiro, Daniel P | Partner | 1982 | $475.00 | Final Fee Application 2003 |
| PG&E | NDCA | Heller Ehrman-San Francisco | | Moman, Guy | | 1987 | $475 | PGE Employment App-5/01 |
| PG&E | NDCA | Howard Rice Nemerovski-San Francisco | / | Falk, Jerome B. | | 1966 | $475 | PGE Employment App-5/01 |
| PG&E | NDCA | Howard Rice Nemerovski-San Franci | / | Lopes, James L. | | 1974 | $475 | PGE Employment App-5/01 |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Tompsett, William | Partner | 1974 | $475.00 | Interim Fee App-filed August 2003 |
| FAO Schwartz | Delaware | Morris, Nichols, Arsht & Tunnell | Creditors Committee | Dehney, Robert J. | Partner | 1997 | $475.00 | Employment Application 2003 |
| Worldcom | SDNY | Piper Rudnik LLP | Spl Counsel to Debtor | Clarke, David | Partner | 1981 | $475.00 | Fee Application-June-Nov 2002 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Lewis, David J. | Partner | 1973 | $475.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Cantwell, Michael K. | Associate | 1994 | $475.00 | First Fee Application 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Miller, Kevin M. | Associate | 1996 | $475.00 | First Fee Application 2003 |
| FAO Schwartz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Eberstoff, David | Partner | 1966 | $470.00 | Employment Application 2003 |
| FAO Schwartz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Kornblith, Richard | Partner | 1977 | $470.00 | Employment Application 2003 |
| Worldcom | SDNY | Piper Rudnik LLP | Spl Counsel to Debtor | Starling, Kenneth | Partner | 1973 | $470.00 | Fee Application-June-Nov 2002 |
| FAO Schwartz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Blencowe, Paul | Of Counsel | 1979 | $460.00 | Employment Application 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Smith, Suzanne | Spl Counsel | 1990 | $460.00 | 7th Interim Fee App-April 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Hunter, James | Of Counsel | 1976 | $460.00 | 9th Interim Fee App -May 2003 |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Cohen, I William | Partner | 1966 | $460.00 | 1st Interim Fee App-April 2003 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Gautier, Scott | Associate | 1997 | $455.00 | Fee Application – June 2003 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Morris, Matthew | Associate | 1992 | $455.00 | Fee Application – June 2003 |
| Adelphia | SDNY | Covington and Burling | Spl Counsel to BOD Comm | Long, Robert A. Jr | Partner | 1985 | $450.00 | Employment App 2002 |
| Conseco | Illinois | Dorsey & Whitney LLP | Spl corp/securities counsel | Sawyer, Charles | Partner | 1981 | $450.00 | 2002 Employment App |
| Conseco | Illinois | Fried Frank Harris Shriver & Jacobso | Creditors Committee | Melwani, Vivek | Associate | 1995 | $450.00 | Qrtly Fee App filed August 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Kohn, Richard M. | Partner | 1969 | $450.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Mortiz, Terry F. | Partner | 1970 | $450.00 | Final Fee Application 2003 |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Michigan, Mark | Partner | 1990 | $450.00 | 2003 (7th) Fee App |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Lesko, Joseph M. | Spl Counsel | 1989 | $450.00 | 7th Interim Fee App-April 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Tucker, Barry | Partner | 1973 | $450.00 | 7th Interim Fee App-April 2003 |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | McKenna, James | Partner | 1977 | $450.00 | Interim Fee App-filed August 2003 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Ascher, Stephen L. Esq. | Partner | 1993 | $450.00 | First Fee Application 2003 |
| Conseco | Illinois | L/O of Gregory P. Joseph | Spl Litigation Counsel to Debtor | Kober, Honey | Partner | 1988 | $450.00 | 2002 Employment App |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Reimer, Craig | Of Counsel | 1992 | $450.00 | Interim Fee App-filed August 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Barton, David | Partner | 1981 | $450.00 | 9th Interim Fee App -May 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Gruber, Richard | Partner | 1982 | $450.00 | 9th Interim Fee App -May 2003 |

Information derived from either from public records,
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| BK Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Gruber, Richard | Partner | 1982 | $450.00 | 1st Interim Fee Apr–April 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Kevane, Henry | Partner | 1986 | $450.00 | 1st Interim Fee Apr–April 2003 |
| Conseco | Illinois | Saul Ewing LLP | Conseco Trust Committee | Hoeffner, Timothy | Partner | 1987 | $450.00 | Interim Fee App–filed August 2003 |
| Worldcom | SDNY | Squire, Sanders & Dempsey | Co-Counsel to Debtor | Kalkman, George | Partner | 1978 | $450.00 | Fee Application – November 2002 |
| Worldcom | SDNY | Squire, Sanders & Dempsey | Co-Counsel to Debtor | Lerner, Stephen | Partner | 1985 | $450.00 | Fee Application – November 2002 |
| PG & E National Energy | Maryland | Sutherland, Asbill & Brennan LLP | SpI Energy Counsel for Debtors | Murphy, Richard G. Jr | Partner | 1973 | $450.00 | First Fee Application 2003 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Rona, Michael | Partner | 1995 | $450.00 | Fee Application – October 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Yustein, Ross | Associate | 1994 | $450.00 | Fee Application – October 2002 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Pomerantz, Devorah L. | Associate | 1996 | $450.00 | First Fee Application 2003 |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Stratton, David | Partner | 1978 | $445.00 | 1st Interim Fee App–April 2003 |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Peterman, Nancy | Partner | 1991 | $440.00 | 2003 (7th) Fee App |
| Worldcom | SDNY | Squire, Sanders & Dempsey | Co-Counsel to Debtor | Meyer, Christopher | Partner | 1973 | $440.00 | Fee Application – November 2002 |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Bonfiglio, Joel | Partner | 1986 | $435.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Breisach, Eric | Partner | 1989 | $435.00 | 2002 Employment App |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Kayes, Dennis | Partner | 1966 | $435.00 | 1st Interim Fee App–April 2003 |
| Fleming | Delaware | Baker Botts | SpI Counsel to Debtor | Durst, Timothy | Partner | 1987 | $425.00 | 1st Interim Fee App–April 2003 |
| Adelphia | SDNY | Brager Wexler Eagel & Morgenstern | SpI Counsel–Comm Equity Secur | Blue, Gregory A. | Partner | 1996 | $425.00 | Equity Committee |
| Adelphia | SDNY | Covington and Burling | SpI Counsel to BOD Comm | Anthony, Stephen | SpI Counsel | 1988 | $425.00 | Employment App 2002 |
| Adelphia | SDNY | Covington and Burling | SpI Counsel to BOD Comm | Hart, R. Laird | SpI Counsel | 1980 | $425.00 | Employment App 2002 |
| Adelphia | SDNY | Covington and Burling | SpI Counsel to BOD Comm | Stone, Elaine W. | Of Counsel | 1978 | $425.00 | Employment App 2002 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel–Comm Equity Sec H | Klein, Randall | Partner | 1990 | $425.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Mishtern, Harold | Partner | 1984 | $425.00 | 7th Interim Fee App–April 2003 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Bender, Ron | Partner | 1989 | $425.00 | 2nd Interim Fee App–11/02–2/03 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Neale, David | Partner | 1988 | $425.00 | 2nd Interim Fee App–11/02–2/03 |
| FAO Schwartz | SDNY | Levene, Neale, Bender, Rankin & Bri | Co-Counsel to Debtor | Rankin, Craig M. | Partner | 1991 | $425.00 | Employment Application 2003 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Rankin, Craig M | Partner | 1991 | $425.00 | 2nd Interim Fee App–11/02–2/03 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Brown, Kenneth | Partner | 1981 | $425.00 | 9th Interim Fee App–May 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Brown, Kenneth | Partner | 1981 | $425.00 | 1st Interim Fee App–April 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Nasatir, Iain | Partner | 1983 | $425.00 | 9th Interim Fee App –May 2003 |
| PG & E National Energy | Maryland | Patton Boggs LLP | Counsel for Debtors | Curto, Michael A. | Partner | 1982 | $425.00 | Employment Application 2003 |
| FAO Schwartz | Delaware | Richards, Layton & Finger, P.A. | Co-Counsel to the Debtors | Collins, Mark D | Partner | 1991 | $425.00 | Employment Application 2003 |
| Conseco | Illinois | Saul Ewing LLP | Conseco Trust Committee | Foster, Constance | Partner | 1992 | $425.00 | Interim Fee App–filed August 2003 |
| Adelphia | SDNY | Sidley Austin Brown & Wood LLP | Equity Security Holders | Advani, Suresh T | Partner | 1992 | $425.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Caplan, Michael S. | Associate | 1995 | $420.00 | First Fee Application 2003 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Haber, Eric J. Esq | Partner | 1984 | $420.00 | First Fee Application 2003 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Hazy, Michael | Associate | 1999 | $420.00 | Fee Application – June 2003 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Agnew, Christine | Associate | 1998 | $420.00 | Fee Application – October 2002 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Jaffe, Brett | Associate | 1998 | $415.00 | Fee Application (11/1/2002-2/28/2003) |
| Conseco | Illinois | Jenner & Block LLC | Committee–Debt Holders | Sieger, John | Partner | 1994 | $415.00 | Interim Fee App–filed August 2003 |
| Conseco | Illinois | L/O of Gregory P. Joseph | SpI Litigation Counsel to Debtor | Davies, Susan | | 1991 | $415.00 | 2002 Employment App |
| Conseco | Illinois | L/O of Gregory P. Joseph | SpI Litigation Counsel to Debtor | Fisher, Eric | | 1996 | $415.00 | 2002 Employment App |



Information derived either from public records,
RTS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

## KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Conseco | Illinois | L/O of Gregory P Joseph | Spl Litigation Counsel to Debtor | Jerdee, Peter | | 1992 | $415.00 | 2002 Employment App |
| Conseco | Illinois | L/O of Gregory P Joseph | Spl Litigation Counsel to Debtor | Lipsman, Sandra | | 1983 | $415.00 | 2002 Employment App |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | McFarland, Scotta | Of Counsel | 1980 | $415.00 | 9th Interim Fee App -May 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | McFarland, Scotta | Of Counsel | 1980 | $415.00 | 1st Interim Fee App-April 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloc | Co-Counsel-Comm Equity Sec H | Klein, Frederic R | Partner | 1980 | $410.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Zuniga, Juan E | Spl Counsel | 1992 | $410.00 | 7th Interim Fee App-April 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Hunter, James | Of Counsel | 1976 | $410.00 | 1st Interim Fee App-April 2003 |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Hertzberg, Robert | Partner | 1979 | $410.00 | 1st Interim Fee App-April 2003 |
| Worldcom | SDNY | Piper Rudnik LLP | Spl Counsel to Debtor | Miller, Eric | Partner | 1996 | $410.00 | Fee Application-June-Nov 2002 |
| FAO Schwartz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Hsu, Victor | Partner | 1987 | $405.00 | Employment Application 2003 |
| Allegiance Telecom, Inc. | SDNY | Akin Strauss Hauer & Feld LLP | Creditors Committee | Dublin, Philip C | Partner | 1998 | $400.00 | Employment Application 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Kivos, Linda | Of Counsel | 1981 | $400.00 | 9th Interim Fee App -May 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Rosen, Nathalie Chandler | Of Counsel | 1988 | $400.00 | 9th Interim Fee App -May 2003 |
| Conseco | Illinois | Saul Ewing LLP | Conseco Trust Committee | Garcia, Rudolph | Partner | 1977 | $400.00 | Interim Fee App-filed August 2003 |
| Daewoo Motors | Delaware | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | Varner, Carlton | Partner | 1972 | $400.00 | 2nd Interim Fee App-11/02-2/03 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Griffin, Brian | Associate | 1995 | $395.00 | 7th Interim Fee App-April 2003 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Kurth, Mette H | | 1996 | $395.00 | 2003 Hourly Rate Change |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Golubchik, David | Partner | 1996 | $395.00 | 2nd Interim Fee App-11/02-2/03 |
| FAO Schwartz | Delaware | Levene, Neale, Bender, Rankin & Bri | Co-Counsel to Debtor | Kim, Monica Y. | Associate | 1995 | $395.00 | Employment Application 2003 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Kim, Monica Y | Associate | 1995 | $395.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Reiss, Daniel | Of Counsel | 1990 | $395.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Voorhees, Nellwyn | Of Counsel | 1993 | $395.00 | 2nd Interim Fee App-11/02-2/03 |
| FAO Schwartz | Delaware | Levene, Neale, Bender, Rankin & Bri | Co-Counsel to Debtor | Wells, Anne E | Partner | 1991 | $395.00 | Employment Application 2003 |
| Daewoo Motors | CDCA | Levene, Neale, Bender, Rankin & Bri | Creditors Committee | Wells, Anne E | Partner | 1991 | $395.00 | 2nd Interim Fee App-11/02-2/03 |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Fournier, David | Partner | 1989 | $395.00 | 1st Interim Fee App-April 2003 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Hirsch, Eric | Associate | 1999 | $390.00 | Fee Application (11/1/2002-2/28/20?) |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloc | Co-Counsel-Comm Equity Sec I | Delgado, Natalia Y | Partner | 1982 | $390.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloc | Co-Counsel-Comm Equity Sec I | Flom, Barbara M | Partner | 1987 | $390.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Rockey, Daniel | Associate | 1995 | $390.00 | 7th Interim Fee App-April 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Saunders, Robert | Of Counsel | 1984 | $390.00 | 1st Interim Fee App-April 2003 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Buchanan, Laura | Of Counsel | 1991 | $385.00 | 2003 Hourly Rate Change |
| PG & E National Energy | Maryland | Patton Boggs LLP | Counsel for Debtors | Garr, Sally D | Partner | 1980 | $385.00 | First Fee Application 2003 |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | MacNab, Charles | Partner | 1971 | $385.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | O'Brien, Kenneth | Spl Counsel | 1980 | $385.00 | 2nd Interim Fee App-11/02-2/03 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Altman, J | Partner | 1990 | $380.00 | First Fee Application 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Franklin, K | Partner | 1983 | $380.00 | First Fee Application 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Gomez, J | Partner | 1987 | $380.00 | First Fee Application 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Kuperstein, S | Partner | 1968 | $380.00 | First Fee Application 2002 |
| Worldcom | SDNY | Weil Gotshal & Manges LLP | Debtor | Yoon, Andrew | Associate | 2002 | $380.00 | Fee Application - October 2002 |
| Conseco | Illinois | Dorsey & Whitney LLP | Spl corp/securities counsel | Cadwell, Theodore | Partner | 1975 | $375.00 | 2002 Employment App |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | McSwiggan, Lawerence J | Associate | 1998 | $375.00 | 7th Interim Fee App-April 2003 |

Information derived online from public records.
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

EXHIBIT A

026

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Montz, Alex | Associate | 1997 | $375.00 | Interim Fee App-filed August 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Disse, Werner | Of Counsel | 1989 | $375.00 | 9th Interim Fee App -May 2003 |
| PG & E National Energy | Maryland | Whiteford, Taylor & Preston L.L.P. | Co-Counsel for Debtors | Nussbaum, Paul M. | Partner | 1984 | $375.00 | First Fee Application 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Hogan, C. | Partner | 1988 | $370.00 | First Fee Application 2002 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Chizever, David J. | Partner | 1991 | $370.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Meyers, William C. | Partner | 1987 | $370.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Frye, Stephen | Of Counsel | 1988 | $370.00 | 9th Interim Fee App -May 2003 |
| Adelphia | SDNY | Clifford Chance US, LLP | Employee Counsel | Bourke, James P. | Associate | 2001 | $365.00 | Employment App 2002 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLI | Creditors Committee | Fidler, David A. | Associate | 1997 | $365.00 | 2003 Hourly Rate Change |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Ulrich, Kenneth K. | Partner | 1987 | $360.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Murr, Ryan | Associate | 1998 | $360.00 | 7th Interim Fee App-April 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Wainblat, Larru | Associate | 1999 | $360.00 | 7th Interim Fee App-April 2003 |
| NRG | New York | Leonard, Street, and Deinard, P. A. | Debtor | Weiler, Steve | Partner | 1986 | $355.50 | Employment App 2003 |
| Conseco | Illinois | Dorsey & Whitney LLP | Spl corp/securities counsel | Nyquist, Steven | Partner | 1992 | $355.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Emmer, Matthew | Partner | 1988 | $355.00 | 2002 Employment App |
| PG & E National Energy | Maryland | Patton Boggs LLP | Counsel for Debtors | White, Bruce H. | Partner | 1989 | $355.00 | First Fee Application 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Savin, James | Partner | 1998 | $350.00 | Fee Application - November 2002 |
| Allegiance Telecom, Inc. | SDNY | Akin Strauss Hauer & Feld LLP | Creditors Committee | Adams, Colin M. | Partner | 1999 | $350.00 | Employment Application 2003 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Blum, K. | Partner | 1990 | $350.00 | First Fee Application 2002 |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Finger, Kevin | Partner | 1993 | $350.00 | 2003 (7th) Fee App |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Haskins, Paul | Of Counsel | 1991 | $350.00 | 2003 (7th) Fee App |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Miller, Mark | Partner | 1992 | $350.00 | 2003 (7th) Fee App |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Salazar, Luis | Partner | 1992 | $350.00 | 2003 (7th) Fee App |
| Adelphia | SDNY | O'Melveny & Myers LLP | Spl Lit Counsel to Employees | Feldstein, Jill | Associate | 1998 | $350.00 | 2002 Employment App |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | Kim, Jonathan | Associate | 1995 | $350.00 | 9th Interim Fee App -May 2003 |
| PG & E National Energy | Maryland | Patton Boggs LLP | Counsel for Debtors | Sherman, Stephen H | Partner | 1986 | $350.00 | First Fee Application 2003 |
| Daewoo Motors | CDCA | Stutman Treister & Glatt | Debtor | Yun, Scott | Associate | 1996 | $350.00 | 2nd Interim Fee App-11/02-2/03 |
| PG & E National Energy | Maryland | Sutherland, Asbill & Brennan LLP | Spl Energy Counsel for Debtors | Frank, Daniel E. | Partner | 1984 | $350.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Whiteford, Taylor & Preston L.L.P. | Co-Counsel for Debtors | Fletcher, Martin T. | Partner | 1989 | $350.00 | First Fee Application 2003 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Gordon, Heather | Associate | 2000 | $345.00 | Fee Application (11/1/2002-2/28/200) |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Rupe, Michael | Associate | 1998 | $345.00 | Interim Fee App-filed August 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | McGrady, Erica | Associate | 1997 | $340.00 | Fee Application - November 2002 |
| Adelphia | SDNY | Boies, Schiller & Flexner LLP | Spl Counsel to Debtor | Shaw, A. R. | Partner | 1993 | $340.00 | First Fee Application 2002 |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Monahan, Sharon | Partner | 1983 | $340.00 | 2002 Employment App |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | Daucher, Brian | Partner | 1994 | $340.00 | 2nd Interim Fee App-11/02-2/03 |
| NRG | New York | Leonard, Street, and Deinard, P. A. | Debtor | Morris, Fred | Partner | 1975 | $337.50 | Employment App 2003 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLI | Creditors Committee | Zisblatt, Efrat | Associate | 1997 | $335.00 | 2003 Hourly Rate Change |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Kress, Kay | Partner | 1986 | $335.00 | 1st Interim Fee App-April 2003 |
| PG & E National Energy | Maryland | Willkie Farr & Gallagher LLP | Counsel for Debtors | Berger, James C | Associate | 2002 | $335.00 | First Fee Application 2003 |
| FAO Schwartz | Delaware | Morris, Nichols, Arsht & Tunnell | Creditors Committee | Werkheiser, Gregory W. | Associate | 1996 | $330.00 | Employment Application 2003 |
| Fleming | Delaware | Milbank Tweed Hadley & McCloy | Creditors Committee | Lewis, Joshua | Associate | 2003 | $325.00 | Fee Application – June 2003 |

Information derived either from public records.
RJS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

Page 12 of 14



**KIRKLAND ELLIS**
**HOURLY RATE SURVEY**
**SEPTEMBER 2003**

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Seidl, Michael | Partner | 1996 | $325.00 | 1st Interim Fee App-April 2003 |
| PG & E National Energy | Maryland | Patton Boggs LLP | Counsel for Debtors | Burke, Lisa Lavelle | Partner | 1992 | $325.00 | First Fee Application 2003 |
| NRG | New York | Leonard, Street, and Deinard P.A. | Debtor | Greenswag, Doug | Partner | 1983 | $324.00 | Employment App 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Davis, Ken | Associate | 1996 | $320.00 | Fee Application – November 2002 |
| Fleming | Delaware | Baker Botts | Spl Counsel to Debtor | Robertson, Rebecca | Partner | 1995 | $315.00 | 1st Interim Fee App-April 2003 |
| PG & E National Energy | Maryland | Linowes and Blocher LLP | Co-Counsel-Creditors Committee | Englander, Bradford F | Partner | 1985 | $315.00 | First Fee Application 2003 |
| Adelphia | SDNY | Clifford Chance US LLP | Employee Counsel | Papke, Joan | Associate | 2003 | $310.00 | 2003 Fee Application |
| FAO Schwartz | Delaware | Richards, Layton & Finger, P.A. | Co-Counsel to the Debtors | Knight, John H | Partner | 1994 | $310.00 | Employment Application 2003 |
| Worldcom | SDNY | Akin Gump Strauss Hauer & Feld LL | Creditors Committee | Berry, John | Associate | 1998 | $305.00 | Fee Application – November 2002 |
| Conseco | Illinois | Baker Botts | Spl SEC 1st Counsel | Paxson, Stacy | Associate | 1994 | $300.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Hamrick, Steven | Associate | 1994 | $300.00 | 2002 Employment App |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Scott, Sean | Associate | 2000 | $300.00 | Interim Fee App-filed August 2003 |
| Peregrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Black, Melissa | Associate | 2000 | $295.00 | 7th Interim Fee App-April 2003 |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLF | Creditors Committee | Butnick, Vanessa | Associate | 1999 | $295.00 | 2003 Hourly Rate Change |
| FAO Schwartz | Delaware | Levene, Neale, Bender, Rankin & Bri | Co-Counsel to Debtor | Rodriguez, Jaqueline L. | Associate | 1998 | $295.00 | Employment Application 2003 |
| PG & E National Energy | Maryland | Patton Boggs LLP | Counsel for Debtors | Stapel, Julie K | Associate | 1996 | $295.00 | First Fee Application 2003 |
| Fleming | Delaware | Baker Botts | Spl Counsel to Debtor | Doyle, Rachel | Associate | 1985 | $290.00 | 1st Interim Fee App-April 2003 |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Lavan, David | Associate | 1997 | $290.00 | 2002 Employment App |
| PG & E National Energy | Maryland | Whiteford, Taylor & Preston L.L.P | Co-Counsel for Debtors | Hroblak, Kevin G | Associate | 1998 | $290.00 | First Fee Application 2003 |
| PG & E National Energy | Maryland | Whiteford, Taylor & Preston L.L.P | Co-Counsel for Debtors | Vorsteg, J. Daniel | Associate | 1998 | $290.00 | First Fee Application 2003 |
| FAO Schwartz | Delaware | Fulbright & Jaworski LLP | Special Counsel to Debtor | Guazzo, Tanya | Associate | 2000 | $280.00 | Employment Application 2003 |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Fahey, Stephen | Associate | 1999 | $280.00 | Interim Fee App-filed August 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Lhuiler, Christopher | Associate | 1999 | $280.00 | 1st Interim Fee App-April 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Lowy, Rachel | Associate | 1998 | $280.00 | 1st Interim Fee App-April 2003 |
| Fleming | SDNY | Fleischman and Walsh, LLP | Debtor | McClelland, Jill | Associate | 1991 | $275.00 | 2002 Employment App |
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLF | Creditors Committee | Butler, Brendt | Associate | 2000 | $275.00 | 2003 Hourly Rate Change |
| Adelphia | Illinois | Dorsey & Whitney LLP | Spl corp/securities counsel | Clark, Monica | Associate | 1995 | $270.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Pace, Regina | Associate | 1994 | $270.00 | 2002 Employment App |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Gilley, Craig | Associate | 1995 | $265.00 | 2002 Employment App |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Brown, Gillian | Associate | 1999 | $255.00 | 1st Interim Fee App-April 2003 |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Johnston-Ahlen, Julie | Associate | 2002 | $250.00 | Interim Fee App-filed August 2003 |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Mahdi, Sajida | Associate | 2002 | $250.00 | Interim Fee App-filed August 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Downs, Jeremy M. | Associate | 2002 | $245.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Pachulski Stang Ziehl Young Jones & | Debtor | DePhillips, Kathleen | Associate | 2000 | $245.00 | 9th Interim Fee App -May 2003 |
| Fleming | Delaware | Pepper Hamilton LLP | Creditors Committee | Garber, Aaron | Associate | 1997 | $245.00 | 1st Interim Fee App-April 2003 |
| PG & E National Energy | Maryland | Clifford Chance US LLP | Co-Counsel for Debtor | Mitchell, Sherry | Associate | 2003 | $235.00 | First Fee Application 2003 |
| Adelphia | SDNY | Fleischman and Walsh, LLP | Debtor | Knapp, Aimee | Associate | 2000 | $235.00 | 2002 Employment App |
| Peregrine | * | Pachulski Stang Ziehl Young Jones & | Debtor | Galbraith, Paula | Associate | 2000 | $235.00 | 9th Interim Fee App -May 2003 |
| Fleming | Delaware | Pachulski Stang Ziehl Young Jones & | Co-Counsel to Debtor | Galbraith, Paula | Associate | 2000 | $235.00 | 1st Interim Fee App-April 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Equity Equity Sec H | Sigale, Keith A. | Associate | 1997 | $230.00 | Final Fee Application 2003 |
| Peregrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Bergmann, Joanna | Associate | 2002 | $230.00 | First Fee Application 2003 |

Information derived either from public records,
RIS Legal Billing Report, May 2003, or
"The Deal" article, August 11, 2003

EXHIBIT A

# KIRKLAND ELLIS
## HOURLY RATE SURVEY
## SEPTEMBER 2003

| Bk Case | State Bk CaseFiled | Firm Name | Representation | Attorney Name (Last, First) | Level | Year | Billing Rate | Information Derived From |
|---|---|---|---|---|---|---|---|---|
| Adelphia | SDNY | Klee, Tuchin, Bogdanoff & Stern LLP | Creditors Committee | Mervis, Laine | Associate | 2002 | $225.00 | 2003 Hourly Rate Change |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Levy, Michael N. | Associate | 1998 | $215.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Karcazes, Dimitri G | Associate | 1999 | $210.00 | Final Fee Application 2003 |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | Dixon, Kelly | Associate | 2002 | $210.00 | 2nd Interim Fee App-11/02-2/03 |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | French, Michael | Associate | 2002 | $210.00 | 2nd Interim Fee App-11/02-2/03 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Kane, Susan Helene | Associate | 1999 | $200.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Wexler, A. Colin | Associate | 1999 | $200.00 | Final Fee Application 2003 |
| Pergrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Fernandez, Audrey | Legal Assistant | N/A | $200.00 | 7th Interim Fee App-April 2003 |
| Pergrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Little, Paul | Legal Assistant | N/A | $200.00 | 7th Interim Fee App-April 2003 |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Hornish, Michele | Associate | 2002 | $195.00 | Interim Fee App-filed August 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Madigan, James P | Associate | 2002 | $190.00 | Final Fee Application 2003 |
| Kmart | Illinois | Goldberg Kohn Bell Black Rosenbloo | Co-Counsel-Comm Equity Sec H | Weissman, Andrew E | Associate | 2000 | $190.00 | 7th Interim Fee App-April 2003 |
| Pergrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Bocanegra, Ramon | Legal Assistant | N/A | $190.00 | 7th Interim Fee App-April 2003 |
| Pergrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Pettigrew, Linda | Legal Assistant | N/A | $190.00 | 7th Interim Fee App-April 2003 |
| Pergrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Whitehead, Ann | Legal Assistant | N/A | $190.00 | 7th Interim Fee App-April 2003 |
| Pergrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Fleisher, David | Legal Assistant | N/A | $190.00 | First Fee Application 2003 |
| Adelphia | SDNY | Fried Frank Harris Shriver & Jacobso | Special Counsel to Debtors | Foote, Patrick | Legal Assistant | N/A | $175.00 | Fee Application (11/2002-2/2003) |
| Conseco | Illinois | Greenberg Traurig | Co-Counsel, Creditors Committe | Carlson, Kerry | Legal Assistant | N/A | $175.00 | 2003 (7th) Fee App |
| Pergrine | Delaware | Heller, Ehrman, White & Mc Auliffe | Corporate Counsel to Debtor | Lopez, Paula | Legal Assistant | N/A | $175.00 | 7th Interim Fee App-April 2003 |
| Conseco | Illinois | Jenner & Block LLC | Committee-Debt Holders | Matlock, Michael | Legal Assistant | N/A | $175.00 | Interim Fee App-filed August 2003 |
| Daewoo Motors | CDCA | Sheppard Mullin Richter Hampton | Spl Lit to Debtor | Kapuano, Mathilde | Legal Assistant | N/A | $175.00 | 2nd Interim Fee App-11/02-2/03 |
| Pergrine | Delaware | Kronish Lieb Weiner & Hellman LLP | Equity Security Holders | Goldstein, Rebecca | Legal Assistant | N/A | $170.00 | First Fee Application 2003 |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Burger, Debra | Legal Assistant | N/A | $170.00 | Interim Fee App-filed August 2003 |
| Conseco | Illinois | Mayer Brown Rowe & Maw LLP | Creditors Committee-Co-Counsel | Connor, Andrew | Legal Assistant | N/A | $170.00 | Interim Fee App-filed August 2003 |

(Information derived either from public records, The Legal Billing Report, May 2003, or The Deal article, August 11, 2003

EXHIBIT A

029

Case 9:01-bk-11549-RR    Doc 2187-1    Filed 09/26/03    Entered 09/26/03 00:00:00
Printer Friendly Article: Broad reach Main Document    Page 32 of 72

Page 1 of 6







▶ **RETURN TO ARTICLE** ▶ **E-MAIL THIS ARTICLE**

## Broad reach
**by Matt Miller** Posted 01:22 EST, 11, Aug 2003

### GO TO LEAGUE TABLE RANKINGS

In the bankruptcy trade, there are megafirms and lesser-known boutiques. There are one-stop shops, with offices around the globe and armies of professionals, and there are specialist firms tied to one geographic area or to one narrowly defined area of practice.

Some law firms cut a wide swath and offer professionals that can tackle almost any imaginable bankruptcy case in any imaginable place. Other firms specialize in representing unsecured creditors or secured noteholders. Some find work as special conflicts counsel, others as high-powered litigators. There are firms that are tapped for their deep knowledge of real estate or insurance or telecommunications regulation or bankruptcies related to asbestos.

And the same applies for restructuring firms. Some want to do it all, from offering financial advice to designing restructuring plans to installing management to providing forensic services. Others restrict themselves to one or a few of those demanding specialties.

Just how big and complex has the bankruptcy industry become? In an effort to document just which law and restructuring firms and professionals are landing the most assignments, The Deal has discovered that the range of fee-generating mandates stretches well beyond the high-profile attorneys and financial advisers hired by debtors and by creditors' committees.

Most bankruptcy observers would not be surprised that **Weil, Gotshal & Manges LLP** dominates The Deal's first-ever rankings of top bankruptcy law firms, with 109 active Chapter 11 assignments as of Aug. 1, and that **Houlihan Lokey Howard & Zukin**, with 68 cases, leads the pack of restructuring firms. But the truly compelling aspect of these first-ever rankings is that they show just how much work there is for non-New York and non-Delaware law firms (**Jones Day; Gibson, Dunn & Crutcher LLP;** and **King & Spalding LLP**, to name a few) and for a wide array of restructuring outfits (**Crossroads LLC, Chanin Capital Partners, Huron Consulting Group LLC**). The rankings are proof of just how wide-ranging and lucrative bankruptcy-related practices have become, even for firms on the periphery.

"There are so many different adjuncts of this industry compared to 15 years ago, when I started to practice," says John Thomson, who heads the bankruptcy practice at **Womble Carlyle Sandridge & Rice PLLC** in Atlanta.

Not only has the U.S. experienced an explosion over the past three years in the number of major corporations filing under Chapter 11, but many of the cases are monetarily enormous and devilishly intricate. A few have brought the trade into uncharted territory. Bankruptcy professionals must grapple with determining how to transfer prepaid rights for telephone lines or weed out phantom assets from the collapse of energy futures trading units.

**EXHIBIT B**

Other cases are seemingly ubiquitous. **Enron Corp.**, it's often said, is the Chapter 11 equivalent of the full-employment act. **WorldCom Inc.**, though, could give Enron a serious run for that title. We counted some 317

~~ ~ ~030

separate law firms working on the WorldCom case alone.

"Cases are more complex and broader reaching," says Conor Reilly, a partner with Gibson Dunn.

And lucrative as well: Reilly bills at $735 an hour nowadays. Indeed, as creditors and debtors become more sophisticated and demand more sophisticated assistance, companies, creditors and judges have come to understand, often reluctantly, that that means more advisory work and higher fees.

"The market has become much more skilled at the notions of restructuring," says John Suckow, a managing director and co-head of the creditor advisory group at **Alvarez & Marsal Inc.**, a turnaround firm with 17 current assignments. Skill comes at a price. In this cycle, the bankruptcies are much larger, the companies involved are more complex, and, in some cases, entire sectors like broadband have blown up.

"In the old days, retail cases, manufacturing cases, weren't all that different. In general, they didn't bring with them subject-matter specifics," says Philip D. Anker, a partner with **Wilmer, Cutler & Pickering** who, with 29 current assignments, is second only to **Richards, Layton & Finger PA**'s Mark D. Collins, with 57, based on our survey. "It's not enough today to be a good bankruptcy lawyer. ... We must learn a substantive area of law as well as a substantive business area."

Economists and bankruptcy practitioners alike believe that the spike in major Chapter 11 filings is past, although no one expects the next cycle to take anywhere near a decade to roll out (two years is more like it, especially if interest rates climb substantially). There's more impetus than ever before to get companies out of Chapter 11 as quickly as possible. But even those bankruptcies now on the docket will give practitioners work for years to come.

"We anticipate with the current workload in the door, we're probably not going to suffer a slowdown," says Andrew N. Goldman, another Wilmer Cutler partner. "I don't think anyone is going to sit idle until the next wave comes."

Add to that the mop-up work. Lawyers, especially those involved in litigation, are being called into court to argue issues regarding disputed claims on companies such as Trans World Airlines Inc. that are years out of bankruptcy. Some bankruptcies never seem to die. (The Deal tables account for cases that have come out of bankruptcy on which firms are still doing billable work.)

Then there's all the work outside of the busy bankruptcy courts of Manhattan, Wilmington, Del., and Chicago. Fort Worth, Houston, Pittsburgh, Phoenix and Reno, Nev., all have very active dockets. Then there's the plethora of middle-market bankruptcies, in venues such as Biloxi, Miss., and Newark, N.J. "It's been a busy time for quite a while," concludes Susan Freeman, a partner with **Lewis and Roca LLP**, based in Phoenix. "It will continue for quite a while to come."

But first, some caveats. The Deal's rankings are representative findings. Plenty of firms have full assignment books. We couldn't accommodate them all, but hope to in the future. We narrowed our list to nearly 60 law and restructuring firms that our research showed were getting the most work. We contacted the firms and asked for their response on active Chapter 11 assignments. Thirty-nine participated, including nearly every restructuring firm.

Of course, assignment numbers aren't everything. Being the lead debtor counsel in, say, the WorldCom case means exponentially more manpower, substantially higher fees and a far lengthier mandate than acting as counsel for a minor trade creditor. So raw numbers don't necessarily reflect revenues.

Terminology also complicates comparisons, too. One firm, for example, differentiates between "special labor counsel," "special tax counsel" and "special litigation counsel." Another lumps everything under "special counsel."

Role definition can be especially tricky when it comes to restructuring firms. Restructuring industry stalwarts tend to distinguish between financial advisers, turnaround firms with management and operational roles and investment banks addressing capital structures and deals.

**EXHIBIT B** -__-    ~ ~ ~031

Comparing the number of assignments can also be misleading. Turnaround specialists physically move into a bankrupt company and place individuals in management roles. That's a far cry from simply offering financial advice to a creditors' committee. "You can't handle multiple engagements," says Bettina Whyte, a principal with **AlixPartners LLC**, which specializes in operational turnaround and restructuring and has 24 current assignments.

Some restructuring firms, however, are beginning to offer more than just one service. "You are seeing a blurring of the lines," says Jeff Werbalowsky, co-chief executive and co-founder of investment bank Houlihan Lokey's financial restructuring practice. Werbalowsky and four other Houlihan Lokey bankers captured the top five spots for individual performers. Andrew Miller led the pack with 14 assignments.

And some restructuring pros quickly point out that reporting on the Chapter 11 assignments of workout firms captures only about half of their business. The other half is out-of-court restructurings that never reach Chapter 11.

Fee data is public record, of course. But one of our tables provides a sampling of what lawyers now bill per hour. And while other bankruptcy lawyers bill more than $900 an hour, we only have Brad Eric Scheler of **Fried, Frank, Harris, Shriver & Jacobson** on the record breaking the barrier. (The fee structure for turnaround firms is different. They get a monthly amount and an officers' fee plus a success fee. The financial advisers are compensated at an hourly rate. The investment bankers are awarded a transaction fee.)

That Weil Gotshal leads in the number of active cases won't strike anyone in the profession as shocking. Weil Gotshal has created *the* franchise for bankruptcy practice, especially when it comes to debtor representation. And had we tabulated results by, say, the volume of assets in Chapter 11, the New York firm would have probably been even more dominant. After all, it's currently handling most of history's largest bankruptcies.

But the runner-ups to Weil Gotshal aren't in Manhattan. Three firms either based in Delaware or with a major office there — Richards Layton (with 84 cases), **Young Conaway Stargatt & Taylor LLP** (63) and **Pachulski, Stang, Ziehl, Young, Jones & Weintraub PC** (56) — have enviable franchises.

Indeed, there's plenty of life beyond Manhattan and Wilmington. King & Spalding is Atlanta-based. Gibson Dunn, which just added Richard Cieri from Jones Day, is based in Los Angeles. Both have successfully built national practices. So, too, has Washington-based Wilmer Cutler, with 71 cases, and Pittsburgh-based **Reed Smith LLP**, with 44. Perched in Salt Lake City, Ralph R. Mabey heads the bankruptcy practice of **LeBoeuf, Lamb, Greene & MacRae LLP**, whose active Chapter 11 case roster totals 47. Craig A. Barbarosh co-leads **Pillsbury Winthrop LLP**'s bankruptcy group from an office in Costa Mesa, Calif. Pillsbury Winthrop is working 18 bankruptcies.

"At one level, it's always a national players' game," says Jim Pardo, a King & Spalding partner on 12 cases alone. "It's still the usual suspects showing up in case after case."

There are many reasons for this. Reputation looms large, as does sophisticated knowledge and a first-rate support staff. So does history.

Some major firms are known as either creditor or debtor counsel. Conflicts of interest often prevent switching sides, even if a firm has the desire to do so. According to Pardo, after the first two or three big cases in a cycle, the sides are pretty well set. King & Spalding, for example, has represented bondholders' committees in the past and continues to do so, he says. The firm doesn't even take on debtor work.

Then there's the question of reach. Greater complexities require "geographic breadth and practice breadth," Gibson Dunn's Reilly says. "There are fewer firms that have that breadth to offer."

That's especially true with cross-border cases, a growing trend in bankruptcies, Reilly believes. He cites **Flag Telecom**, which is incorporated in Bermuda, with headquarters in London and extensive interests in Europe, the Middle East and Asia. Flag filed in New York. Gibson Dunn represented the debtor. "You have to coordinate issues in several time zones," Reilly says. "It's a lot easier within one firm."

EXHIBIT B - 65

There's a touch of the counterintuitive at work here. Cases have grown in number and complexity. And lead attorneys' rosters haven't changed all that much, with the big firms retaining the inside track on major filings. But because of factors like conflicts of interest, the need for local counsel or the addition of specialists, those big, complicated Chapter 11s often welcome many smaller firms and less famous practitioners.

"Compared with 20 years ago, the number of practitioners, the number of people you see in the court, the number of practices, have expanded," says Matthew J. Gold, a bankruptcy partner at New York-based firm **Olshan Grundman Frome Rosenzweig & Wolosky LLP**, which lists 54 lawyers.

Gold details bankruptcy-related work involving everything from representing trustees to landlords. "In these big bankruptcy cases, a lot of other companies got enmeshed one way or another," he explains. "There are opportunities to represent these companies."

Consider, for example, **WestPoint Stevens Inc.**, which filed for Chapter 11 in early June. In a common matchup, Weil Gotshal is lead debtor counsel. **Stroock & Stroock & Lavan LLP** represents creditors.

Last month, however, Weil Gotshal sought and received approval to name small New York firm **Stein Riso Mantel LLP** as special conflicts counsel. Stein Riso will weigh in when there is a question about a conflict of interest for Weil Gotshal.

Stein Riso, a 10-person firm, has received a number of similar assignments, says Mark I. Chinitz, the partner involved in the WestPoint Stevens case. "First, firms are increasingly careful to avoid any appearance of conflict," he says. "Second, as large firms have grown even larger, the breadth of practice has increased and there are more conflicts."

Chinitz, a Weil Gotshal alumnus, knows the firm's work and vice versa. "It's a good niche," Chinitz says. "It's a very good niche."

Firms find they can get special bankruptcy-related assignments for many reasons. **Spiegel Inc.** received court approval to employ **Sachnoff & Weaver Ltd.** as special counsel to advise the bankrupt retailer on insurance-related matters. While it has a bankruptcy practice, Chicago-based Sachnoff & Weaver is known for its insurance expertise, including directors' and officers' liability.

Womble Carlyle represented on engagement conditions the two individuals who were named chief restructuring officer and interim CFO for Copperweld Corp., a division of bankrupt **LTV Corp.** Pittsburgh-based Copperweld hopes to emerge as a stand-alone company. This month it named Womble Carlyle as special counsel to advise the steel tubes manufacturer on the take-out facility for Copperweld's DIP financing, or what the company's debt structure will look like when the company emerges from bankruptcy.

A regional presence keeps any number of firms in business. Lewis and Roca's Freeman details work representing secured lenders and creditors' committees on several bankruptcies filed in the Southwest. According to Freeman, more and larger bankruptcies are being filed in jurisdictions such as Phoenix and Reno, where her firm practices.

"Huge and complex cases are likely to be filed in Delaware and New York. That's always the case," she says. "But one of the reasons I came to Phoenix is because midsized cities are getting pretty large and complex cases."

She bristles at the suggestion that firms such as hers must accept life in the minor leagues. "It's not secondary status," she insists.

On the restructuring side, the dynamics are somewhat different. Traditionally, the trade divides itself into three components. There's crisis management, in which the firm takes a hands-on operational role; financial advisory, with no management role; and investment banking, which addresses capital structures and asset sales.

This cycle, however, "we've seen a lot less specialization," AlixPartners' Whyte says.

**EXHIBIT B**   ~ ~ ~ 033

"I see more and more firms trying to be all things to all people rather than stick to their core competencies," adds Peter S. Kaufman, a managing director of financial advisory firm **Gordian Group LLC**, which has six active Chapter 11 assignments. "I think this is a disturbing trend."

Mergers explain some of this newfound sweep. **FTI Consulting Inc.** last year acquired **PricewaterhouseCoopers LLP**'s U.S. business recovery services division. Because of its audit practice, PwC constantly faced conflict issues if it attempted to offer financial advice to both bankrupt companies and creditors. Under FTI, those conflicts lessened. We estimate FTI has 17 active bankruptcy assignments; the firm did not respond to requests for information.

Other acquisitions upset the mix, as well. For example, security and investigation specialist **Kroll Inc.** last year acquired restructuring specialist Zolfo Cooper LLC. Kroll Zolfo Cooper LLC now lists 19 bankruptcy mandates, including Enron.

More deals could be coming. Some in the industry believe **Deloitte & Touche LLP**, with 27 active Chapter 11 cases, and **Ernst & Young LLP** will eventually shed their restructuring businesses as well.

Other major players have diversified internally. Over the past year and a half, Chanin Capital Partners has beefed up M&A capabilities in addition to its traditional financial advisory practice, says senior managing director and co-founder Russ Belinsky. Clients, he says, now demand the option of reorganizing or selling, and Chanin wanted to provide advice on both. Chanin lists 14 Chapter 11 mandates.

The competition goes the other way, too. With the rise of bankruptcies, a number of investment banks that do M&A work created restructuring divisions. More would like to. Crisis management boutiques have also begun popping up all over the place, some touting specialized niches such as healthcare.

Most of these practices are small, however. With the number of bankruptcies receding, many will soon disappear, restructuring veterans believe. For instance, some investment bankers now busy with restructuring will be redeployed for more conventional M&A-related dealmaking.

"We're seeing it now," Houlihan Lokey's Werbalowsky says. "Too many competitors are chasing too few deals."

And as if Chapter 11 wasn't rancorous enough, he suggests the competition for assignments makes it even more ornery.

"More money is at risk, and it's a lot more confrontational," the voluble investment banker says, pausing. "People are getting tougher and meaner."

**Become a member of The Deal community. Click here to subscribe.**

▶ RETURN TO ARTICLE   ▶ E-MAIL THIS ARTICLE   ▶ REPRINT THIS ARTICLE

EXHIBIT B ‑ ‑ ‑ 031

| 🏠 HOME | SITEMAP | ABOUT US | CONTACT US | ADVERTISE | PRIVACY POLICY | TERMS AND CONDITIONS |

©Copyright 2003, The Deal, LLC. All rights reserved. Please send all technical questions, comments or concerns to the Webmaster.

Variables.LayerTagList

EXHIBIT B - _ . ⌐ ⌐ ⌐ 035





Media Industry
TheDeal.com focus
sector in our latest in
Dig deeper into the ni
players driving the



▶ RETURN TO ARTICLE    ▶ E-MAIL THIS ARTICLE

## Bankruptcy and restructuring advisers league tables
Posted 12:35 EST, 11, Aug 2003

Broad reach
Aug. 11, 2003 The range of fee-generating bankruptcy mandates stretches well beyond the main lawyers and financial advisers.
Full Story

### TOP BANKRUPTCY LAW FIRMS

| Rank | Law firm | Location | No. of cases |
|------|----------|----------|--------------|
| 1 | Weil, Gotshal & Manges | New York | 109 |
| 2 | Richards Layton & Finger PA | Wilmington, Del. | 84 |
| 3 | Wilmer, Cutler & Pickering | Washington, D.C. | 71 |
|  | Jones Day | Cleveland, Ohio | 63 |
| 4 | Young Conaway Stargatt & Taylor LLP | Wilmington, Del. | 63 |
| 5 | Pachulski, Stang, Ziehl, Young, Jones & Weintraub PC | Los Angeles | 56 |
| 6 | Gibson, Dunn & Crutcher LLP | Los Angeles | 53 |
| 7 | Leboeuf, Lamb, Green & MacRae LLP | New York | 47 |
| 8 | Reed Smith LLP | Pittsburgh | 44 |
| 9 | King & Spalding LLC | Atlanta | 43 |
| 10 | Kirkland & Ellis LLP | Chicago | 37 |
| 11 | Akin Gump Strauss Hauer & Feld LLP | Washington, D.C. | 35 |
| 12 | Skadden, Arps, Slate, Meagher & Flom LLP | New York | 31 |
| 13 | Schulte Roth & Zabel LLP | New York | 26 |
| 14 | Davis Polk & Wardwell | New York | 23 |
| 15 | Willkie Farr & Gallagher | New York | 21 |
|  | Bingham McCutchen | Boston | 18 |
| 16 | Cleary, Gottlieb, Steen & Hamilton | New York | 18 |
| 17 | Pillsbury Winthrop LLP | San Francisco | 18 |
| 18 | Fried, Frank, Harris, Shriver & Jacobson | New York | 14 |
| 19 | Cadwalader, Wickersham & Taft | New York | 13 |
| 20 | Proskauer Rose LLP | New York | 12 |

Includes all debtor, creditor and other assignments within active bankruptcy cases.
All cases active as of Aug. 1, 2003.

Source: **The Deal**; law firms



EXHIBIT B

## TOP RESTRUCTURING FIRMS

| Rank | Restructuring firm | Location | No. of cases |
|------|-------------------|----------|--------------|
| 1 | Houlihan Lokey Howard & Zukin | Los Angeles | 68 |
| 2 | Rothschild Inc. | New York | 31 |
| 3 | Jefferies & Co. | New York | 28 |
| 4 | Deloitte & Touche LLP | New York | 27 |
| 5 | AlixPartners LLC | Southfield, Mich. | 24 |
| 6 | Lazard | New York | 22 |
|   | Kroll Zolfo Cooper LLC | New York | 19 |
| 7 | The Blackstone Group LP | New York | 19 |
|   | Alvarez & Marsal Inc. | New York | 17 |
| 8 | Crossroads LLC | New York | 17 |
|   | FTI Consulting Inc. | Annapolis, Md. | 17 |
| 9 | Chanin Capital Partners | New York | 14 |
|   | Bridge Associates LLC | New York | 11 |
| 10 | Huron Consulting Group LLC | Chicago | 11 |
|   | Miller Buckfire Lewis Ying & Co. | New York | 11 |
|   | Glass & Associates Inc. | Canton, Ohio | 9 |
| 11 | Greenhill & Co. | New York | 9 |
| 12 | CIBC World Markets | New York | 8 |
| 13 | Grisanti Galef & Goldress I LLC | Atlanta | 7 |
| 14 | Gordian Group LLC | New York | 6 |
| 15 | Seneca Financial Group Inc. | Greenwich, Conn. | 5 |

Includes all debtor, creditor and other assignments within active bankruptcy cases.
All cases active as of Aug. 1, 2003

Source: **The Deal**; restructuring firms

## TOP BANKRUPTCY LAWYERS

| Rank | Lawyer | Law firm | No. of cases |
|------|--------|----------|--------------|
| 1 | Mark D. Collins | Richards Layton & Finger PA | 57 |
| 2 | Philip Anker | Wilmer, Cutler & Pickering | 29 |
| 3 | Martin Bienenstock | Weil, Gotshal & Manges | 25 |
| 4 | Andrew Currie | Wilmer, Cutler & Pickering | 23 |
| 5 | Brian Rosen | Weil, Gotshal & Manges | 22 |
|   | Daniel J. DeFranceschi | Richards Layton & Finger PA | 21 |
| 6 | Michael L. Cook | Schulte Roth & Zabel LLP | 21 |
| 7 | Paul Harner | Jones Day | 17 |
|   | James H.M. Sprayregen | Kirkland & Ellis LLP | 16 |
| 8 | Craig Goldblatt | Wilmer, Cutler & Pickering | 16 |
|   | Melanie Gray | Weil, Gotshal & Manges | 15 |
| 9 | Brendan L. Shannon | Young Conaway Stargatt & Taylor LLP | 15 |
|   | Mark Maloney | King & Spalding LLC | 13 |

- - 037

EXHIBIT B -

|    | Gary Holtzer | Weil, Gotshal & Manges | 13 |
|----|--------------|------------------------|----|
| 10 | James L. Patton Jr. | Young Conaway Stargatt & Taylor LLP | 13 |
|    | Robert S. Brady | Young Conaway Stargatt & Taylor LLP | 13 |
|    | Aaron G. York | Gibson, Dunn & Crutcher LLP | 12 |
| 11 | Jim Pardo | King & Spalding LLC | 12 |
|    | Evan Flaschen | Bingham McCutchen | 11 |
|    | Jesse S. Finlayson | Gibson, Dunn & Crutcher LLP | 11 |
|    | Jonathan M. Landers | Gibson, Dunn & Crutcher LLP | 11 |
| 12 | Michael A. Rosenthal | Gibson, Dunn & Crutcher LLP | 11 |
|    | Richard P. Krasnow | Weil, Gotshal & Manges | 11 |
|    | Duane Morse | Wilmer, Cutler & Pickering | 11 |
|    | Edwin J. Harron | Young Conaway Stargatt & Taylor LLP | 11 |
|    | Pauline K. Morgan | Young Conaway Stargatt & Taylor LLP | 11 |

Includes all debtor, creditor and assignments within active bankruptcy cases.
All cases active as of Aug. 1, 2003.

Source: **The Deal** ; law firms

## TOP RESTRUCTURING PROFESSIONALS

| Rank | Adviser | Restructuring firm | No. of cases |
|------|---------|--------------------|--------------|
| 1 | Andrew Miller | Houlihan Lokey Howard & Zukin | 14 |
| 2 | David Hilty | Houlihan Lokey Howard & Zukin | 12 |
|   | Eric Siegert | Houlihan Lokey Howard & Zukin | 11 |
| 3 | Irwin Gold | Houlihan Lokey Howard & Zukin | 11 |
|   | Jeffrey Werbalowsky | Houlihan Lokey Howard & Zukin | 11 |
| 4 | William Derrough | Jefferies & Co. | 10 |
| 5 | Thane Carlston | Jefferies & Co. | 9 |
|   | Jonathan Cleveland | Houlihan Lokey Howard & Zukin | 8 |
| 6 | Arthur Newman | The Blackstone Group LP | 8 |
|   | Steve Panagos | Kroll Zolfo Cooper LLC | 7 |
|   | Bradley Geer | Houlihan Lokey Howard & Zukin | 7 |
| 7 | Chris DiMauro | Houlihan Lokey Howard & Zukin | 7 |
|   | Dimitar Voukadinov | Houlihan Lokey Howard & Zukin | 7 |
|   | Anthony Schnelling | Bridge Associates LLC | 6 |
| 8 | William (Tuck) Hardie | Houlihan Lokey Howard & Zukin | 6 |
|   | Richard Nevins | Jefferies & Co. | 6 |
|   | Mark Stickel | Bridge Associates LLC | 5 |
|   | Randall Lambert | Chanin Capital Partners | 5 |
|   | Peter Kaufman | Gordian Group LLC | 5 |
|   | Mike Kramer | Greenhill & Co. LLC | 5 |
| 9 | David Trucano | Houlihan Lokey Howard & Zukin | 5 |
|   | Saul Burian | Houlihan Lokey Howard & Zukin | 5 |
|   | Stephen Spencer | Houlihan Lokey Howard & Zukin | 5 |
|   | Pamela Zilly | The Blackstone Group LP | 5 |

EXHIBIT B

Includes all debtor, creditor and other assignments within active bankruptcy cases.
All cases active as of Aug. 1, 2003.

Source: **The Deal** ; law firms

## A SAMPLING OF TOP BANKRUPTCY LAWYER FEES

| Rank | Lawyer | Law firm | Average hourly fee |
|---|---|---|---|
| 1 | Brad Eric Scheler | Fried, Frank, Harris, Shriver & Jacobson | $925 |
| 2 | Andrew E. Bogen; E. Michael Greaney | Gibson, Dunn & Crutcher LLP | 750 |
| 3 | Richard M. Cieri; Conor D. Reilly | Gibson, Dunn & Crutcher LLP | 735 |
| | Alan Resnick | Fried, Frank, Harris, Shriver & Jacobson | 725 |
| | Steven R. Finley; Jonathan M. Landers | Gibson, Dunn & Crutcher LLP | 725 |
| 4 | David M. Friedman | Kasowitz, Benson, Torres & Friedman LLP | 725 |
| | Stephen J. Shimshak; Judith R. Thoyer | Paul Weiss Rifkind Wharton & Garrison | 725 |
| | Lawrence M. Handelsman | Stroock & Stroock & Lavan LLP | 725 |
| 5 | Howard Seife | Chadbourne & Parke LLP | 720 |
| 6 | Robert B. Pincus | Skadden, Arps, Slate, Meagher & Flom LLP | 710 |
| 7 | Valerie Jacob; Audrey Strauss | Fried, Frank, Harris, Shriver & Jacobson | 705 |
| 8 | Michael A. Rosenthal | Gibson, Dunn & Crutcher LLP | 695 |
| | Richard J. Wright | Milbank, Tweed, Hadley & McCloy LLP | 695 |
| 9 | Robert S. O'Hara Jr. | Milbank, Tweed, Hadley & McCloy LLP | 685 |
| | Edward P. Welch | Skadden, Arps, Slate, Meagher & Flom LLP | 685 |
| 10 | Michael A. Rosenthal | Gibson, Dunn & Crutcher LLP | 677 |

These represent neither the professionals nor the firms who will bill the most per hour.
It is just a random sampling. All cases active as of Aug. 1, 2003.

Source: **The Deal** ; law firms, Troubled Company Reporter

**Become a member of The Deal community. Click here to subscribe.**

▶ **RETURN TO ARTICLE**   ▶ **E-MAIL THIS ARTICLE**   ▶ **REPRINT THIS ARTICLE**

EXHIBIT B         039

| ▣ HOME | SITEMAP | ABOUT US | CONTACT US | ADVERTISE | PRIVACY POLICY | TERMS AND CONDITIONS |

©Copyright 2003, The Deal, LLC. All rights reserved. Please send all technical questions, comments or concerns to the Webmaster.

Variables.LayerTagList



By Richard Lee Wynne

# The Coin of the Realm

In the **absence** of treaty or **convention**,

U.S. courts have **adopted** the principle of **comity**

to **govern** transnational **insolvencies**

I n the modern global economy, multinational corporations increasingly enter into—or are forced into—bankruptcy or insolvency proceedings in two or more countries simultaneously. Just as insolvency laws of other countries and international laws of transnational finance and commerce have developed and become more complicated in recent years, so has the body of law governing multinational insolvencies—both in the United States and abroad—experienced remarkable growth in a very short period of time.

The notable exception to this development is the lack of formal treaties between most nations to govern insolvency cases. The result is that individual countries apply the often inconsistent provisions of their own laws. The international legal landscape reveals attitudes that range from outright hostility towards, or lack of recognition of, "foreign" insolvency proceedings or the rights of foreign debtors or cred-

itors, to those that fully accept the jurisidiction, procedural rules, and substantive laws of foreign jurisdictions.

While several areas of multinational insolvency law have evolved signficantly in recent years (such as fraudulent transfer/preference recoveries, corporate governance, and reorganization versus liquidation preferences) the most striking developments have been in the most basic area of multinational insolvency: jurisdiction. This most fundamental issue—the determination of which country's or countries' courts will exercise jurisdiction over a multinational business enterprise—raises, by definition, basic questions of national sovereignty.

*Richard Lee Wynne, a shareholder with Wynne Spiegel Itkin, a Law Corporation, specializes in representing debtors' and creditors' committees, often involving multinational entities. He was creditors' committee counsel in the Maruko, Inc. case.*

KEN CORRAI

041

EXHIBIT



## The Fate of MIICA

In November 1988, Committee J (Creditors' Rights, Insolvency, Liquidation, and Reorganization) of the Business Law Section of the International Bar Association approved The Model International Insolvency Co-Operation Act and recommended it that it be adopted through appropriate domestic legislation. Nearly 10 years later, no nation has responded to the committee's call.

Still, MIICA remains on the table, its goals unchanged. It was designed to encourage the consolidation of international insolvency proceedings in a single jurisdiction operating under the principles of comity and universality. Recognizing that there are substantial differences in domestic insolvency law, Committee J contemplated that the model act would be adopted with considerable modification in some countries.

The text of MIICA consists of seven sections, summarized as follows:

**Section 1.** Describes the circumstances under which a second-country court recognizes in insolvency cases 1) the proceedings of a foreign court; and 2) the foreign representative of a debtor.

**Section 2.** Describes the means by which a second-country court can assist a first-country court through ancillary proceedings.

**Section 3.** Offers foreign representatives an additional means of finding relief in a second-country court if ancillary proceedings are unavailable or denied.

**Section 4.** Establishes principals determining the appropriate substantive insolvency law to be applied to full first-country proceedings and to ancillary second-country proceedings, respectively.

**Section 5.** Grants a foreign representative seeking ancillary relief immunity from the jurisdiction of the second-country court in all other matters.

**Section 6.** Defines "foreign representative" and "foreign proceeding" in a flexible manner; allocates to a second-country court the responsibility for determining that there is proper jurisdiction in the first-country proceedings.

**Section 7.** Recognizes that two or more nations may adopt treaties and conventions to govern international insolvencies, and that such treaties or conventions override the model act. ∎

Yet legislators and diplomats have generally left the coordination and resolution of these jurisdictional issues to judges, accountants, and lawyers.[1] There are virtually no treaties that harmonize the bankruptcy laws of individual nation states. A proposed Model International Insolvency Co-Operation Act (MIICA), sponsored by the International Bar Association's Committee J, Section on Business Law, attempts to address and harmonize cross-border insolvency issues based on the ories of comity and universality. But MIICA has not yet been adopted by any country. (See "The Fate of MIICA," this page.)

The resulting process is, therefore, extraordinarily inconsistent. For example, even if one country's bankruptcy law purports to grant jurisdiction over all of the debtor's property, wherever located (as does U.S. law[2]), other countries may not recognize that country's jurisdiction over offshore assets even if the "home" court attempts to assert its worldwide authority.

For example, in McLean Industries,[3] a U.S. bankruptcy judge entered an order enjoining the continuance of any action against the debtor's foreign property and, further, issued a contempt citation for knowing violation of the automatic stay. Nevertheless, the injunction was widely ignored by foreign creditors, who seized the debtor's assets and commenced foreign bankruptcy proceedings in several jurisdictions. In South Africa, a wholly owned subsidiary of McLean's was forced into receivership. A Dutch court rejected the debtor's request to protect its European headquarters from seizure by creditors and permitted Dutch creditors to file an involuntary bankruptcy against the debtor. In Italy, the court declared a branch office bankrupt and put its assets in receivership in order to recover Italian employee-wage claims. In Belgium, in response to a suit by local creditors, the court appointed a trustee to administer the debtor's local assets. In Hong Kong and Singapore, courts permitted creditors to "arrest" four ships and auction them off. In England, after creditor banks had frozen the debtor's accounts, the court denied the removal of $1 million from the banks and appointed a trustee to liquidate the estate.

Thus, while global jurisdiction is a theoretical nicety contained in certain countries' bankruptcy laws, concurrent, divided, or ancillary case jurisdiction is often required to reorganize or liquidate a multinational business entity. U.S. bankruptcy courts have increasingly had to determine the appropriate level of assistance to provide to representatives of foreign insolvency proceedings, assuming that dual plenary bankruptcy cases are not initiated.[4]

The typical situation for involvement of a U.S. bankruptcy court or practitioner begins when a foreign entity enters into a foreign bankruptcy case, and assets—or even entire business divisions—located in the United States need to be protected or administered in connection with the foreign proceeding. Bankruptcy Code Section 304 defines the bankruptcy court's powers and responsibilities in proceeding with a U.S.-based bankruptcy case ancillary to a foreign bankruptcy case.[5] And Section 305 defines when a bankruptcy court should abstain from exercising the powers and responsibilities set forth in Section 304.[6] Additionally, Section 303(b)(4) permits a foreign representative (trustee, liquidator, or receiver) to initiate an involuntary case against a debtor in the United States.

Section 304 establishes the means by which a representative of a foreign debtor may initiate in the United States a proceeding "ancillary" to a foreign bankruptcy case. An "ancillary" proceeding is limited in scope, permitting the bankruptcy court to take actions such as enforcing the automatic stay of Bankruptcy Code Section 362 (which prevents creditor enforcement actions against the debtor entity), ordering the turnover of estate assets to the foreign estate's representative, and allowing the representative to institute avoidance-power actions to recover preferential or fraudulent transfers.[7]

The intent of Congress in drafting the guidelines for determining whether to allow a foreign representative to commence an "ancillary" proceeding are contained in the legislative history to Bankruptcy Code Section 304(c):

These guidelines are designed to give the court the maximum flexibility in handling ancillary cases. Principles of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules.[8]

The guiding principle behind Section 304 is thus clearly comity between courts of different nations. The U.S. Supreme Court has defined "comity" as follows:

"Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.[9]

Historically, there has been little formal cooperation, or comity, among bankruptcy courts worldwide. Most countries have responded to foreign bankruptcies by protecting domestic interests and local creditors, at times even discriminating against foreign creditors.[10]

EXHIBIT C "   043

Specifically, two contrasting approaches for resolving multinational bankruptcy problems have emerged: the territoriality approach and the universality approach. Under the former, each country sets forth bankruptcy laws to administer all property within its jurisdiction and will not recognize the extraterritorial effect of bankruptcies adjudicated elsewhere. Under the latter approach, a central bankruptcy proceeding occurs in the jurisdiction where the debtor is domiciled or principally conducts its business, and all countries in which assets of the debtor are located apply the substantive laws of the country in which the central proceeding occurs and then order the turnover of all local assets to the central proceeding. Under this approach, all creditors worldwide must submit claims in the central proceeding, and the final adjudication is to be respected by all other nations.

Essentially, the territoriality approach's lack of recognition of another nation's creditors and claims encourages a race to the courthouse, while the universality approach's application of a single bankruptcy law results in a more equal and efficient distribution to all creditors worldwide.

Despite the general acceptance of the principle of comity in the United States, the recognition of foreign insolvency proceedings has been inconsistent. For many years, most U.S. courts favored the territoriality approach and were generally hostile toward the claims of foreign representatives when those claims conflicted with the interests of local creditors. More recently, however, many, but not all, U.S. courts have been willing to cooperate with foreign bankruptcies and to adopt a more universality-oriented, pro-recognition approach, thereby fulfilling the intent of Section 304.

The first major reported U.S. case to adopt the universality approach in a multinational bankruptcy was *Canada Southern Railway Co. v. Gebhard*,[12] in which the Supreme Court rejected the contention that it would be unfair or inconvenient to make American bondholders assert claims in Canada and recognized the binding effect on U.S. creditors of a Canadian bankruptcy scheme that treated domestic and foreign creditors equally. In reaching its decision, the Court relied on principles of equality of distribution and comity.

Many more cases undertaking an extensive "comity" analysis have followed. While these cases all arose under Bankruptcy Code Sections 304 or 305, their reasoning and policy also support the recognition of dual plenary proceedings or a flexible approach to the partial abstention or suspension of proceedings to suit the needs of particular cases.

This development of jurisdictional cooperation has culminated in several recent cases where U.S. bankruptcy courts have approved protocols or negotiated agreements whereby dual plenary proceedings have been permitted in the United States and a foreign jurisdiction for one multinational corporation or group of companies. The Maxwell, Olympia & York, and Maruko cases, all involving multinational companies with billions of dollars in assets and liabilities, were administered as full bankruptcy cases in multiple jurisdictions.[13]

The more typical cases involve foreign representatives seeking the assistance of the U.S. bankruptcy courts for a more limited purpose, such as to void an attachment obtained by local creditors of the foreign entity or otherwise protect the foreign entity. In *In re Culmer*,[14] the bankruptcy court was presented with a request to commence a Section 304

ancillary proceeding in connection with the liquidation of a Bahamian company. Analyzing that section, the court noted that Congress had intended that courts have "maximum flexibility" in handling ancillary cases to achieve a fair result. In response to the objections of certain creditors, and after having examined the provisions of Bahamian bankruptcy law, the court determined that it could not reasonably be asserted that the Bahamian liquidators were partial to national creditors or that the liquidation in the Bahamas was in any way irregular. Instead, based on the location of the debtor's records and employees and the efficiency with which the Bahamian court could deal with all the debtor's creditors, the court concluded that the Bahamian court could best assure an economical and expeditious administration of the estate. The court further noted that the United States had no truly compelling public interest in the matter before it.

Having already noted that a court is "free to broadly mold appropriate relief in near blank-check fashion" in an ancillary proceeding, the *Culmer* court granted substantial relief including: 1) an injunction forbidding attachments or judgments against, or prosecutions affecting, any Bahamian assets in the *Culmer* court's district, without the prior approval of the Bahamian court; 2) an order directing the turnover of all assets of the Bahamian company located in the *Culmer* court's district; and 3) an order requiring that U.S. claimants resolve their claims in the Bahamas, which was to be the central forum.

Thus, the *Culmer* court found that Bahamian bankruptcy law provided a comprehensive procedure for the orderly and equitable distribution of the debtor's assets, substantially in conformity with American law, and held that commencing a proceeding ancillary to the Bahamian case would be an appropriate application of comity. The key lessons of *Culmer* are the court's sensitivity to the needs of a foreign bankruptcy court in efficiently administering an international business entity and the court's flexible fashioning of a remedy that would best achieve an efficient and fair result.

A similar result was upheld by the Second Circuit Court of Appeals in *Cunard Steamship Co. Ltd. v. Salen Reefer Services AB.*[15] A credi-
(Continued on page 60)



**EXHIBIT C-1**

4

**SALES**

# If your accomplishments have been unlimited, why limit your rewards?

*Talk to us about the unlimited success you could achieve as a Prudential Securities Financial Advisor.*

You've already accomplished more than most of your peers. You're at the top of your field, whether as a sales professional, accountant, attorney or entrepreneur. In fact, your accomplishments are starting to outpace your rewards. You should consider the limitless career of a Prudential Securities Financial Advisor.

Our Financial Advisor Training Program builds on your professional strengths and experience. You'll work with a senior financial advisor from day one, and continue that personal relationship as part of your two years of intensive training. In that time, you'll build a solid client base and thoroughly learn the securities business. You'll also be well-paid in the process.

When you finish the program, your compensation will be based solely on your performance, opening the door to unlimited earnings - maybe double or triple what you're making now.

We invest a lot in our Financial Advisors, and we get a big return. Why limit yourself? Give us a call or fax your resume to the number below. Opportunities are available nationwide. Prudential Securities is an Equal Opportunity Employer (M/F/D/V).

**Prudential Securities** 🔷

## Financial Advisor Training Program

JAIME O'BRIEN

*Phone: (619) 930-7823*
*Fax: (619) 930-7898*

©1995 Prudential Securities Incorporated. Member SIPC.

## The Coin of the Realm
*(Continued from page 37)*

tor had obtained an order of attachment against certain of the foreign debtor's assets in the United States. The District Court for the Southern District of New York, relying on principles of comity, vacated the attachment in deference to the Swedish bankruptcy proceeding.

The Second Circuit upheld the district court's decision, because "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." Although the relief accorded the foreign debtor in this case was relatively simple, the *Salen Reefer* court's guiding principle was significant: "The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion."[16]

Sometimes, a foreign debtor will attempt to avoid a foreign proceeding by filing a bankruptcy case in the United States. In *Universal Casualty & Surety Co. Ltd.* v. *Gee (In re Gee),*[17] the court-appointed liquidator of a Cayman Islands company filed a petition under Section 304 seeking discovery against parties in New York and an injunction against disposing of the debtor's assets, books, and records located in the Southern District of New York. The debtor, which claimed the Cayman liquidator was biased against it, sought to file a Chapter 11 petition to block the liquidator's Section 304 petition and other actions.

The *Gee* court dismissed the debtor's Chapter 11 petition and granted the liquidator's Section 304 petition. In support of allowing a Section 304 petition solely for the purposes of discovery, the *Gee* court cited the *Culmer* court's principle that a bankruptcy court is free to mold broad relief in "near blank-check fashion." The *Gee* court also cited the *Salen Reefer* court in noting that American courts have consistently recognized the interest of foreign courts in liquidating the affairs of their own business entities and, further, that the modern trend has been toward a more flexible approach that allows the equitable distribution of assets in the foreign proceeding.

The *Gee* court declared comity to be the most important element of Section 304 and found that the Cayman bankruptcy proceeding was conducted according to fundamental standards of procedural fairness sufficient to warrant the American court's extension of comity. Like the *Culmer* and *Salen Reefer* courts, the *Gee* court found that recognition of the foreign proceeding, at the behest of the

foreign jurisdiction, best assured an economical and expeditious administration of the debtor's estate.

The principles of comity were discussed on a wider statutory scale in *In re Axona International Credit & Commerce Ltd.,*[18] which is, perhaps, the best example of full international cooperation in recent insolvency cases. *Axona* is the first reported case in which a U.S. bankruptcy court allowed a contemporaneous case to be filed in the United States pursuant to Section 303(b)(4), granted an application under Section 305(b) seeking the suspension of the case, and ordered the turnover of local assets to a foreign representative for administration in the foreign proceeding. The interplay in *Axona* between the foreign court and the American bankruptcy court is particularly noteworthy.

*Axona* concerned a Hong Kong company that operated as a wholesale bank solely in Hong Kong, but had substantial deposits located in the United States. Following creditor attachments, the debtor filed a petition in a Hong Kong court in order to wind up its affairs. The court authorized the liquidation of the company and appointed permanent liquidators to do so.

Subsequently, the Hong Kong court authorized the Hong Kong liquidators to file an involuntary Chapter 7 petition against the debtor in the United States under Section 303(b)(4) to avoid preferential transfers.[19] The American court permitted the filing and appointed a Chapter 7 trustee, who commenced adversary proceedings against the attaching creditors. These individual creditors responded in both jurisdictions by 1) moving in the United States to dismiss the Chapter 7 case; and 2) challenging the Hong Kong court's right to authorize the Hong Kong liquidators to commence the case in the U.S. courts.

Because the Hong Kong court rejected the creditors' challenge to its authority, the creditors subsequently withdrew their motion to dismiss in the U.S. case. Nevertheless, the Hong Kong court's holding merits mention, because of its observations, which underline the motivations underlying comity and the practical justifications for dual proceedings. The Hong Kong court recognized that Hong Kong's applicable legal code only governed assets within the jurisdiction and did not extend outside the jurisdiction of the court.[20]

Thus, extraterritorial matters, such as the issue of preferences, were to be determined by the lex situs, which in this case was the law of the United States. Applying its territorial interpretation of Hong Kong law, the Hong Kong court stated that equality would be produced not by artificially imposing one law on all parties, but by treating all parties equally

 EXHIBIT C

in their respective jurisdictions by "affording dominance to the laws in those jurisdictions." Therefore, the Hong Kong court permitted the Hong Kong liquidators to file a Section 303 petition in the United States to take advantage of the Bankruptcy Code's broader avoidance powers.

Following the U.S. trustee's collection of about $7 million through its preference actions, the trustee and the Hong Kong liquidators jointly applied to the U.S. court for the suspension of the U.S. proceedings under Bankruptcy Code Section 305(b) and the turnover of the $7 million to the Hong Kong liquidators for distribution in the Hong Kong proceeding. One creditor opposed the relief requested.

In rejecting the creditor's opposition, the *Axona* court emphasized the "established goal of U.S. and international bankruptcy law to preserve assets for equitable distribution for all creditors wherever located."[31] Analyzing Section 305 in light of the factors set forth in Section 304, the court rejected the objecting creditor's conception of comity as "myopic" and found that comity should be accorded the Hong Kong proceeding because Hong Kong law, while not identical to the U.S. Bankruptcy Code, was not unfair or irregular to U.S. creditors. The court further found that 1) Hong Kong law provided for the orderly and just treatment of all the debtor's creditors; 2) the debtor's books and records were in Hong Kong and the liquidators there were in the best position to evaluate creditors' claims fairly and efficiently; and, perhaps most important, 3) Hong Kong law did not discriminate against foreign creditors.

The *Axona* court's order granting the joint application included a further provision of interest. The court required, as a condition to the turnover order, that the U.S. trustee pay all administrative expenses and certain priority claims and retain $500,000 for the administration of the U.S. estate. Thus, the costs of administering the plenary Chapter 7 proceeding came out of the funds before they were returned to the foreign jurisdiction for distribution in accordance with foreign law. Because the centralized distribution to other creditors was to take place in Hong Kong, the *Axona* court also required that the Hong Kong liquidators notify all creditors who had filed claims in the U.S. proceeding of their right to file appropriate claims in the Hong Kong proceeding. On appeal, the district court approved the decision of the bankruptcy court.[32]

What emerges from these cases is a concern that foreign jurisdictions be accorded recognition—that is, a concern for comity—where foreign bankruptcy laws are generally equitable and not prejudicial to foreign

# Frank Coonis Investigations

Featuring **NO FIND, NO FEE**
Locates and Bank Accounts
**VOLUME DISCOUNTS**

■ Asset Searches

■ Stakeouts

■ 20 Years Experience

■ Fast & Reliable

■ Full Service

■ Bonded and Licensed

■ All Major Credit Cards Accepted

License #PI 8820

**1-800 4 YOUR PI**
**213/747-3985**
**FAX: 213/748-2069**

850 Venice Blvd., Los Angeles 90015

# EXPERT WITNESS
## REAL ESTATE APPRAISER

• **"Mr. Aubé has appeared and proved damages in all cases which were assigned to him. He is our best appraisal expert."**– Ms. Sharron Bangs, who is the Region 12 Director for the National Association of Women in Construction and shareholder of Crawford And Bangs.

• **"Mr. Aubé's appraisal report was a key element in the dismissal of an action against my client"**–Donald Edward Rinaldi, Certified Specialist, Personal and Small Business Bankruptcy, The State Of California, Board Of Legal Specialization.

• **"I won the case thanks to American Research and Appraisal Company"**– Jarintorn Tanatchasai, Attorney At Law.

• **"Our Best Earthquake Damage Appraiser"**–Mr. Alan Rossier, Vice President and Trust Department Manager of Great Western Bank

**CALL JOHN R. AUBÉ**

AMERICAN RESEARCH & APPRAISAL CO.

**(818) 331-0957**

# SAFETY & CONSTRUCTION EXPERTS

WEXCO INTERNATIONAL CORPORATION *HAS BEEN SERVING THE CONSTRUCTION INDUSTRY WITH A TEAM OF ENGINEERS, ARCHITECTS AND PROJECT MANAGERS FOR OVER 25 YEARS.*



**DR. STEPHEN C. WEXLER, PE**
**Chairman**

*American Society of Civil Engineers*
*American Society of Professional Estimators*
*American Society of Safety Engineers*
*American Institute of Architects*

Registered Prof. Engineer (Civil & Safety)
Registered Architect
Certified Cost Engineer
Certified Building Official
Certified Forensic Examiner
Certified Safety Professional
Certified Construction Specifier
Certified Professional Estimator
Certified Management Consultant
Certified Project Mgt. Professional

Arbitrator - American Arbitration Assoc.
Certified Public Works Arbitrator
Contractor's License #629899
UCLA Instructor · Six Years

**PERSONAL INJURY/PREMISES LIABILITY**

■ *Slips, Trips & Falls*
■ *Code & Safety Violations*
■ *Construction Accidents*

**CONSTRUCTION DEFECTS & DAMAGES**

■ *Construction Defect Investigations*
■ *Engineering Analysis*
■ *Damage Assessment/Repair Estimates*

International Conference of Building Officials
National Academy of Forensic Engineers
National Safety Council
National Society of Professional Engineers

Los Angeles        (310) 306-3877
San Francisco     (415) 281-3877
San Diego           (619) 234-3877
California            (800) 559-3877


WEXCO ··INTL ··CORP

046

EXHIBIT C

# DISABILITY CLAIMS CONSULTANT

ADVICE provided
on initial individual
disability claim
OR if insurance
company stops
monthly payments
on existing claim.



Background: 30 plus years
individual disability sales.
Consultant / expert witness,
national author / speaker.

## ART FRIES, RHU
### 1-800-567-1911

**SAVE THIS AD FOR FUTURE**

## ATTORNEYS OFFICES FOR LEASE

### DOWNEY

**1200 sq. ft. of offices
and/or living spaces
located near
Downey Courthouse
(310) 598-3506**



OBJECTIONS TO INTERROGATORIES

## CALIFORNIA DISCOVERY INDEX INTERROGATORIES
**AND SUPPLEMENT WITH
CALIFORNIA AUTHORITIES**

—SAVES RESEARCH TIME—
## Only $95⁵⁰
Including Tax & Handling

### *A .B. Press*
PUBLISHER OF LAW STUDY AIDS

519 N. Spaulding St., Los Angeles, CA 90036
**TELEPHONE (213) 653-3181**

## HALF OF YOUR CREDITS MAY BE EARNED VIA SELF-STUDY!

### Earn MCLE Credit Every Month in
### Los Angeles Lawyer

**Simply read the designated article, take
the test and return it to us with a $15
processing fee.**

**Each issue also brings you informative
legal articles, practice tips, tax tips, risk
management techniques, book reviews,
timely features and computer tips.**

For more information, call Matty Jallow at **(213) 896-6503.**

SEND TO:

Name

Firm Name

Address

City

State                    Zip

Signature

I enclose: Total $

### DON'T MISS OUT!
## SUBSCRIBE TODAY!
**11 ISSUES ONLY $28**

Please complete and
return with your check to:
Los Angeles Lawyer
Subscriptions
P. O. Box 55020
Los Angeles, CA 90055

(Please allow 6-8 weeks for
your first issue.)

creditors and where such recognition would expedite an orderly administration of the estate. The absence of any specific provisions in the Bankruptcy Code beyond the vague guidelines of Section 304(c) has not restricted these courts from acting appropriately. To the contrary, the legislative history of Section 304 supports their "broadly mold[ing] appropriate relief in near blank-check fashion." These courts are unanimous on the need for flexibility in facilitating the orderly and equitable distribution of a debtor's assets among all creditors, within and outside of the United States.

The increasing acceptance of the principles of comity and universality do not, however, mean blind acceptance of a foreign jurisdiction's authority and actions if appropriate safeguards and procedures are not present. For example, in *In re Tam*,[23] the U.S. Bankruptcy Court for the Southern District of New York held that the voluntary liquidation by the shareholders of a Cayman Islands corporation was not a "foreign proceeding" for purposes of Section 304.

The liquidators had filed a Section 304 petition seeking the entry of an order enjoining the prosecution of a state court litigation. The plaintiff argued that since the liquidation was being voluntarily undertaken by the debtor's shareholders outside any Cayman judicial or administrative tribunal, it was not a "foreign proceeding" within the meaning of Bankruptcy Code Section 101(23) and, therefore, was not eligible for relief under Section 304.

In interpreting the phrase "foreign proceeding" as set forth in Section 101(23), the bankruptcy court noted that the term "proceeding" was not defined in the Bankruptcy Code. The court stated that since there was no evidence to the contrary, the court would presume that Congress intended that the term be given its ordinary meaning. The court found that the term was commonly defined as "the form and manner of conducting juridical business before a court or judicial officer[and the] regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment. [The] term also refers to administrative proceedings before agencies, tribunals, bureaus, or the like."

The Bankruptcy Court noted that although courts have granted Section 304 relief in cases where the underlying "foreign proceeding" was not a judicially sanctioned liquidation pending in a foreign court, those cases involved liquidations that were

EXHIBIT C-4

0047

conducted under the auspices of an administrative authority. The court found, however, that the liquidators in a voluntary winding-up as conducted in the Caymans do so without oversight from any Cayman governmental agency, instrumentality, or authority. The liquidators are selected by the shareholders and wind up the affairs of the company and distribute its assets without the necessity of court review or order.

Moreover, during the course of a voluntary winding-up, creditors have no right to be heard in the Cayman court nor to conduct discovery on action taken by the liquidators. Creditors can petition the Cayman court and request that the winding-up be conducted pursuant to court supervision, but short of that, the Cayman court does not sanction the actions taken by the liquidator. Under these circumstances, lacking any perceived protection for creditor interests and judicial oversight, the U.S. bankruptcy court found that the voluntary winding-up was not a foreign proceeding for purposes of Section 304. Accordingly, the court dismissed the Section 304 petition.

Courts have also expresssed a willingness to limit comity in cases where local bankruptcy laws might unfairly assist the debtor in a foreign bankruptcy proceeding. In fact, the very court that so expansively relied on the principals of universality and comity in *Culmer*, took a different tack in *In re Maxwell Communication Corporation plc.*[24] There, the debtor, Maxwell Communication Corporation plc, an English corporation, filed both a Chapter 11 petition in the U.S. Bankruptcy Court for the Southern District of New York and a petition for administration in the High Court of Justice in London. Each court eventually approved a joint plan of reorganization, and both cases remained full plenary proceedings under the laws of the respective nations, sharing jurisdiction by a negotiated protocol.[25]

Pursuant to Bankruptcy Code Section 547, Maxwell Communication then sued to recover prebankruptcy transfers made to various foreign defendants. These foreign defendants moved to dismiss on a number of grounds, including that 1) Section 547 does not apply extraterritorially; and 2) even if it did, the U.S. Bankruptcy Court should refuse to adjudicate the suits on the grounds of forum non conveniens, comity, and abstention.

The bankruptcy court found that the attempt to apply Section 547 to the transfers was extraterritorial since the facts pertaining to the transfers had a "center of gravity" outside the United States: 1) Maxwell Communication was an English corporation; 2) the antecedent debts required by the Bankruptcy Code were incurred overseas, in

# C L A R I T Y

The most precious commodity in a medical legal case. Organization. Logic. Integration. Even common sense. Providing the clarity that makes you feel confident.

☞ **Please consider us.** ☜

**Neuropsychological examination, consultation and testimony**

## PHILIP K. STENQUIST, PH.D., A.B.P.P.

Certified, American Board of Clinical Neuropsychology
Certified, American Board of Professional Psychology

---

## NEUROCOGNITIVE LABORATORY

Lim-Keith Multispecialty Medical Clinic affiliated with the Hollywood Community Hospital Medical Center.

6200 Wilshire Boulevard, Suite 1510, Los Angeles, California 90048
**Tel (213) 964-1440 • Fax (213) 964-1462**

We deliver expert opinion in business and marital litigation matters.


Lester J. Schwartz, CPA


Michael D. Saltsman, CPA

We transform complex financial data and develop persuasive, sound and defensible conclusions.

11900 West Olympic Boulevard
Suite 650
Los Angeles, CA 90064-1151
(310) 826-1040
Fax (310) 826-1065


**ZSS**
**Zivetz**
**Schwartz**
**Saltsman**
**C P A s**
A Professional Corporation

Members of The American Board of Forensic Examiners, Institute of Business Appraisers, California Society of Certified Public Accountants, American Institute of Certified Public Accountants

EXHIBIT C

## REAL ESTATE/REAL PROPERTY MATTERS

*Specializations:*
*Customs & Standards of Practice, Agency Relationships*
*Material Disclosure in Residential Real Estate Sales*



## TEMMY WALKER REALTOR®
*Real Estate Consulting Expert Witnessing*

SERVICES RENDERED:

Litigation Consulting, Expert Testimony, Broker Practice,
Liability Audit, Educational Services, Industry Mediator

*Certified Residential Broker Graduate Realtors Institute, Certified Residential Specialist,*
*California Association of Realtors® Director Since 1981, National Association of*
*Realtors® Director, State Faculty Master Instructor, Member, Real Estate Education*
*Association, Past President, San Fernando Valley Board of Realtors*

5026 Veloz Avenue, Tarzana, California 91356
Telephone (818) 716-1000 • (818) 760-3355 • FAX (818) 884-2065

CALIFORNIA BROKER LICENSE NO. 00469980

---

# PCMI *The Expert Choice®*

**EXPERT**
**LITIGATION**
**CONSULTING,**
**MULTIMEDIA,**
**DESTRUCTIVE**
**TESTING &**
**CONSTRUCTION**
**DEFECT**
**RESTORATION**
**SERVICES**

♦ **Expert Witness in the fields of Construction, Psychology, Medicine & Economics**

♦ **Construction Defect Failure Analysis**

♦ **Contract Issue Analysis - Liability Allocation**

♦ **Building Safety Evaluation**

♦ **Cost Estimates**

♦ **CPM Scheduling & Delay Claims**

♦ **Remedial Design/Build Construction**

♦ **Personal Injury**

♦ **Mediation Presentation**

♦ **Evidence Preservation Storage**

♦ **Trial Graphics, Animation & Computer Presentations**

TOLL FREE: **(800) 576-7264**

Riverside ♦ Los Angeles ♦ Sacramento ♦ San Leandro ♦ Las Vegas, NV

overseas-related transactions; 3) the transfers on account of the debts were made overseas; and 4) the recipients were all foreigners. The court then held that this extraterritorial application of Section 547 was impermissible.

The court noted that nothing in the language or legislative history of Section 547, or of the Bankruptcy Code as a whole, demonstrated a clearly expressed Congressional intent that Section 547 apply extraterritorially. Furthermore, the court found that although U.S. courts may apply U.S. laws extraterritorially whenever conduct is intended to have, and results in having, substantial effect within the U.S., no such intention or effect existed in this case.

The bankruptcy court noted that although the presumption against extraterritoriality generally does not apply when the conduct that Congress seeks to regulate occurs largely within the United States, the conduct alleged in the complaint occurred largely outside the the country and among foreign entities. The court then found that the only contact with the United States was that a portion of the transferred funds consisted of proceeds from the sale of Maxwell Communication's U.S. subsidiaries. The preferential payments occurred overseas, were made in payment of debt incurred overseas, and were between foreign entities only. The bankruptcy court thus held that the presumption against extraterritoriality prevented utilization of Section 547 to avoid the transfer.

As an alternative holding, the bankruptcy court noted that an act of Congress ought never to be construed to violate the law of nations if any alternative construction exists. A nation should refrain from exercising jurisdiction "with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable."[16] That "reasonableness" inquiry focuses on a number of factors, including, but not limited to 1) the extent to which the activity takes place within the other state; 2) the connections between the regulating nation and the person responsible for the activity to be regulated; 3) the extent to which another nation may have an interest in regulating the activity; and 4) the likelihood of conflict with another nation.[17]

The court noted that when the exercise of jurisdiction by each of two states is reasonable, but their regulations conflict, choice-of-law principals must be considered. The court found that traditional choice-of-law rules require a court to evaluate each jurisdiction's contacts with the controversy and to make a reasoned determination as to which jurisdiction's laws and policies are implicated to the greatest extent. In concluding that English law

EXHIBIT C

049

ought to govern resolution of the preference actions, the court noted the numerous English contracts associated with the transfers: 1) Maxwell Communication was an English company; 2) Maxwell Communication negotiated its loans with the defendant banks in England; 3) the loan agreements provided that English law would govern any disputes arising thereunder; 4) the challenged transfers occurred in England, and the recipients were located in England; and 5) the overwhelming majority of Maxwell Communication's creditors were English.

The bankruptcy court found no compelling policy interest in the U.S. forum, because the ultimate purpose of U.S. preference laws—recoupment and equal distribution—was satisfied under the English Insolvency Act of 1986. The court found that England's avoidance law, although different from, was not repugnant to, U.S. law. The court concluded that since there was an insolvency proceeding pending in England, England's interest in applying its avoidance laws to transfers made in England by an English corporation to recipients in England on account of debt incurred in England, was greater than the U.S. interest in applying U.S. law. Since the court found that English law should govern, consideration of comity dictated that Maxwell Communication's preference complaints should be dismissed.

Respect for the needs of other parties and courts is a consistent thread in the cases, as judges struggle (at least, sometimes) to balance the competing interests of local creditors and debtors and their international counterparts. The increasing attention of lawyers and courts in the insolvency systems of this and other countries demonstrates an increasing trend towards comity in managing multinational insolvency problems. As Canadian Judge Blair succinctly recognized in approving the Olympia & York Protocol for sharing jurisdiction between his Canadian Court and his U.S. counterpart:

> Insolvency disputes with international overtones and involving property and assets in a multiplicity of jurisdictions are becoming increasingly frequent. Often there are differences in legal concepts—sometimes substantive, sometimes procedural—between the jurisdictions. The [c]ourts of the various jurisdictions should seek to cooperate amongst themselves, in my view, in facilitating the transborder resolution of such disputes as a whole, where that can be done in a fashion consistent with their own fundamental principles of jurisprudence. The interests of international cooperation and comity, and the interests of developing at least

## KERNS & GRADILLAS
### CERTIFIED COURT REPORTERS

- Real Time
- Remote Real Time
- CaseView/LiveNote™

- Condensed Transcripts
- Full-Text Word Index
- Deposition Suites

- Exhibit Imaging
- In-House Video
- WMBE Certified



9320 Wilshire Blvd.
Suite 100
Beverly Hills 90212

(800) 729-1136
(310) 556-1136
FAX (310) 247-1136

BEVERLY HILLS ■ SAN FRANCISCO ■ BURLINGAME
BAKERSFIELD ■ SANTA BARBARA ■ VENTURA
COSTA MESA ■ SAN DIEGO ■ NEW YORK ■ LONDON

---

## ATTORNEY-CPA-LITIGATION CONSULTANT

Experienced Expert Witness Since 1960
Professor of Law and Accounting
Forensic Law and Accounting

AUTHOR • LECTURER

### DAVID OSTROVE ■ ATTORNEY-CPA

TELEPHONE 213/939-3400 • FAX 213/939-3500

5757 WILSHIRE BOULEVARD, SUITE 535, LOS ANGELES, CALIFORNIA 90036

---

# ONE OF A KIND BICYCLING EXPERT

- I.P.M.B.A. Cycling Instructor
- Effective Cycling Instructor
- P.O.S.T. Cycling Instructor
- P.O.S.T. Subject Matter Expert
- P.O.S.T. Traffic Investigator
- Seventeen Years Law Enforcement
- Certified Bike Mechanic
- Product Evaluation
- Member American Society of Law Enforcement Trainers
- League of American Bicyclists



Sean Collinsworth is the most qualified and articulate expert witness in bicycle matters. He is the only "standard of care expert" in the nation that is certified as an Effective and Police Cyclist Instructor with Traffic Investigator certification. A veteran law enforcement officer from a major Southern California agency, he helped establish the P.O.S.T. guidelines for policing by bicycle, and bike safety training for police in California. He has lectured to over 1400 officers and civilians from New York to California. Mr. Collinsworth trains, lectures, and advises on effective cycling and safety to municipalities and private corporations. He is an experienced rider who spends an average of sixty-five hours a week bicycling under diverse traffic, lighting, and road conditions.

### 805-646-2153  fax 805-646-5387
Post Office Box #1798 Ojai, California 93024

P.O.S.T.= Peace Officers Standards and Training I.P.M.B.A.= International Police on Mountain Bikes Association

50

EXHIBIT C    LOS ANGELES LAWYER / OCTOBER 1996    65

# LEGAL MALPRACTICE EXPERT WITNESS

## BOYD S. LEMON, ESQ.

**30 YEARS BUSINESS TRIAL EXPERIENCE; EXTENSIVE MALPRACTICE LITIGATION EXPERIENCE; RETAINED EXPERT WITNESS IN OVER 150 CASES; FORMER LITIGATION DEPARTMENT CHAIRMAN MAJOR LAW FIRM; JUDGE PRO TEM; STATE BAR ETHICS COMMITTEE AND ARBITRATOR**

## (310) 979-4848 • FAX (310) 979-4840

**USC** UNIVERSITY OF SOUTHERN CALIFORNIA
*The Law School*

# CONTINUING LEGAL EDUCATION PROGRAM
## SCHEDULE OF CLASSES
## FALL 1996 • SPRING 1997

- **CALIFORNIA WORKERS' COMPENSATION LAW**
  Instructors: Marvin N. Shapiro, Esq. and G. Ronald Feenberg, Esq.
  Ten sessions: October 21 - December 16 and December 17, 1996
  Monday evenings, 6:30 p.m. - 9:00 p.m.
  Tuition: $425.00, if paid on or before October 14; $465.00, thereafter.
  MCLE Credit: 22.5 hours

- **BUSINESS REORGANIZATION UNDER THE BANKRUPTCY REFORM ACT**
  Instructor: George M. Treister, Esq.
  Three sessions: February 1, 8 and 22, 1997
  Saturdays, 8:30 a.m. - 1:00 p.m.
  Tuition: $310.00, if paid on or before January 24; $360.00, thereafter.
  MCLE Credit: 12.75 hours

- **RECENT DEVELOPMENTS IN THE LAW OF BANKRUPTCY AND BUSINESS REORGANIZATION**
  Instructor: George M. Treister, Esq.
  Two sessions: June 7 and 14, 1997
  Saturdays, 9:00 a.m. - 1:00 p.m.
  Tuition: $225.00, if paid on or before May 30; $285.00, thereafter.
  MCLE Credit: 7.5 hours

These activities have been approved for Minimum Continuing Legal Education (MCLE) credit by the State Bar of California. The USC Law School certifies that these activities conform to the standards for approved education activities prescribed by the rules and regulations of the State Bar of California governing Minimum Continuing Legal Education. The USC Law School is a State Bar of California MCLE approved provider.

## FURTHER INFORMATION: (213) 740-2582

some degree of certitude in international business and commerce, call for nothing less.[28]  ∎

[1] *See, generally,* Westbrook, *Developments in Transnational Bankruptcy,* 39 ST. LOUIS U. L.J. 745 n.35-46.

[2] *See,* BANKR. CODE §541(a), 28 U.S.C. §1334(c).

[3] United States Line Inc. v. GAC Marine Fuels Ltd. (In re McLean Industries, Inc.), 68 B.R. 690 (Bankr. S.D. N.Y. 1986). *See also* Todd Vogel, *There's No Word for Chapter 11 in Dutch,* BUS. WEEK, Nov. 30, 1987.

[4] The U.S. Bankruptcy Code does not specifically address, or necessarily even contemplate, how simultaneous plenary bankruptcy proceedings in the United States and a foreign jurisdiction for a single business entity are to be coordinated. Although the never-cited provisions of BANKR. CODE §508(a) provide for a credit for payments made to creditors in a foreign proceeding, this provision provides no guidance for dual plenary proceedings. Courts that have confronted this situation in the United States have opted for a comity-based solution, most often a negotiated protocol or agreement between the principal parties or fiduciaries, determining the scope of jurisdiction for each country's insolvency proceeding and coordinating the two plenary proceedings.

[5] BANKR. CODE §304, 11 U.S.C. §304, provides:
(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.
(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may
(1) enjoin the commencement or continuation of
(A) any action against
(i) a debtor with respect to property involved in such foreign proceedings; or
(ii) such property; or
(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
(3) order other appropriate relief.
(c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with
(1) just treatment of all holders of claims against or interests in such estate;
(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
(3) prevention of preferential or fraudulent dispositions of property of such estate;
(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;
(5) comity; and
(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

[6] BANKR. CODE §305, 11 U.S.C. §305, provides:
(a) The court, after notice and a hearing, may dismiss a case under this title or may suspend

EXHIBIT  C

051

all proceedings in a case under this title, at any time if
(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or
(2)(A) there is pending a foreign proceeding; and
(B) the factors specified in §304(c) of this title warrant such dismissal or suspension.
(b) A foreign representative may seek dismissal or suspension under subsection (a)(2) of this section.
(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under §158(d), 1291, or 1292 of Title 28 or by the Supreme Court of the United States under §1254 of Title 28.

⁷ *See* Bankr. Code §304(b)-(c), 11 U.S.C. §304(b)-(c).
⁸ H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 325 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 35 (1978).
⁹ Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S. Ct. 139, 143 (1895). *See also* In re Metzeler, 78 B.R. 674, 676 (Bankr. S.D. N.Y. 1987) (Congress enacted §304 to further the policy of extending comity to foreign bankruptcy proceedings.).
¹⁰ *See, e.g.,* Charles D. Booth, *Recognition of Foreign Bankruptcies: An Analysis and Critique of the Inconsistent Approaches of United States Courts,* 66 Am. Bankr. L.J. 135, 136 (1992).
¹¹ *See, e.g.,* In re Toga Mfg. Ltd., 28 B.R. 165 (Bankr. E.D. Mich. 1983); Interpool, Ltd. v. Certain Freights of the M/Vs Venture Star, 878 F. 2d. 111 (3d Cir. 1989).
¹² Canada Southern Railway Co. v. Gebbard, 109 U.S. 527, 3 S. Ct. 363 (1883).
¹³ Olympia & York Developments Ltd., 20 C.B.R. (3d) 165, 169 (1993); In re Maxwell Communications Corporation P/L/C, Case No. 91 B 15741 (TLB) (Bankr. S.D. N.Y. 1991); In re Maruko, Inc., Case No. SD 91-12303-LMM (Bankr. S.D. Cal. 1991).
¹⁴ In re Culmer, G.A.D., 25 B.R. 621 (Bankr. S.D. N.Y. 1982).
¹⁵ Cunard Steamship Co. Ltd. v. Salen Reefer Services AB, 773 F. 2d 452 (2d Cir. 1985).
¹⁶ *Id.* at 458.
¹⁷ Universal Casualty & Surety Co. Ltd. v. Gee (In re Gee), 53 B.R. 891 (Bankr. S.D. N.Y. 1985).
¹⁸ In re Axona International Credit & Commerce Ltd., 88 B.R. 597 (Bankr. S.D. N.Y. 1988), *aff'd,* 115 B.R. 442 (S.D. N.Y. 1990), *appeal dismissed,* 924 F. 2d 31 (2d Cir. 1991).
¹⁹ Axona, 88 B.R. at 601.
²⁰ *See* Booth, *supra* note 10, at 222 (reporting Hong Kong decision entitled American Express Int'l Banking Corp. v. Johnson, HKLR 372, 380 (1984)).
²¹ Axona, 88 B.R. at 604.
²² Axona, 115 B.R. 44. In light of an interceding amendment to §305(c) limiting review by a court of appeals of a decision under §305(a), the Second Circuit dismissed the appeal to it. 924 F. 2d 31.
²³ In re Tam, 170 B.R. 838 (Bankr. S.D. N.Y. 1994).
²⁴ In re Maxwell Communication Corp. plc, 170 B.R. 800 (Bankr. S.D. N.Y. 1994), *aff'd,* 186 B.R. 807 (S.D. N.Y. 1995).
²⁵ *See* Maxwell, 170 B.R. at 802-03.
²⁶ Hartford Fire Ins. Co. v. California, 509 U.S. 764, 113 S. Ct. 2891, 2921 (1993) (citing Restatement (Third) of Foreign Relations Law §403(1) (1987)).
²⁷ Restatement of Foreign Relations Law §403.
²⁸ Olympia & York Developments Ltd. v. Royal Trustco, 20 C.B.R. (3d) 165 (1993).

**Dear Counselor:**



Lyndehurst, Ltd.

In today's complex world of business and real estate, you need expert guidance and advice in the leasing or purchasing of your office location.

Richard A. Jampol, president of Lyndehurst, Ltd., offers over 35 years of "hands-on" experience as a Real Estate Broker, Consultant, and Office Planner. Our services include all the necessary steps to a successful transaction, including writing proposals and offers, suite planning, building comparison, lease negotiation, and Tenant Improvement advice and coordination. Member: National Association of Realtors; American Industrial Real Estate Association; American Institute of Architects; International Conference of Building Officials.

**CALL LYNDEHURST, LTD. (310) 274-7177**
**Expert Testimony & Litigation Support**

THE CORPORATE LAW DEPARTMENTS SECTION
OF THE
LOS ANGELES COUNTY BAR ASSOCIATION
PRESENTS THE 1996

# OUTSTANDING CORPORATE COUNSEL AWARDS DINNER



HONORING

## ROBERT H. NIDA

VICE PRESIDENT AND GENERAL COUNSEL
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA



FRIDAY, NOVEMBER 1, 1996
6:30 P.M. NO HOST COCKTAILS / 7:30 P.M. DINNER
HOTEL INTER-CONTINENTAL
251 S. OLIVE STREET, LOS ANGELES

$65 PER PERSON
TABLES OF 10 MAY BE PURCHASED FOR $650
BLACK TIE OPTIONAL

FOR RESERVATIONS CALL 213/896-6548

052

**EXHIBIT**

# LOS ANGELES BUSINESS JOURNAL®

**WEEK OF OCTOBER 15, 2001**

WHO'S WHO BANKING & FINANCE – **THE TURNAROUND ARTISTS**

# White Knights in Pinstripe Suits

## Massive debt, restive creditors create opportunity for crop of top lawyers, investment bankers and consultants

REORGANIZATION *and restructuring – these words were used sparingly during the economic boom of the last decade. But with the list of troubled companies growing, a cadre of L.A. professionals is being pressed into service to help out distressed companies and their creditors. Business is booming these days for the turnaround artists. The following is a list of some of the best and most sought after.*

## RICHARD L. WYNNE

**Age:** 43
**Firm:** Kirkland & Ellis
**Specialty:** Bankruptcy and restructuring



**Background:** Originally from New York… B.A., Political Science, Indiana University… J.D. Columbia University '82… Started career in New York doing litigation and corporate bankruptcy… Moved to Los Angeles in 1985, started at Levene & Eisenberg, a boutique bankruptcy firm… Left in 1995 at partner level… Founding partner of Wynne Spiegel Itkin in 1995… Merged with Kirkland & Ellis in June 2001… Active in amateur auto racing… Races a BMW 325 and an Acura NSX… Married, no children… Bel-Air resident.

**Accomplishments:** Represented creditors committee in Carolco Pictures Chapter 11 case… Negotiated sale of film library, including "Terminator 2," "Total Recall," "Basic Instinct," "Cliffhanger" and the "Rambo" series, for more than $100 million… Represented McNall Sports & Entertainment as debtor in Chapter 11 case involving more than $400 million in claims… Currently represents creditors committee in the $600 million Reed Slatkin bankruptcy case…Focused on getting the maximum value for his clients. "There is some science to it, but there's a lot of art in being able to estimate what something will cost versus how much can be recovered," said a client. "I find his counsel to be extremely insightful in those areas. I just want to maximize my return, Rick is very focused on doing that for his clients."

– *Conor Dougherty*





*Reprinted with permission from Los Angeles Business Journal ®*

# THE M&A JOURNAL

## THE INDEPENDENT REPORT ON DEALS AND DEALMAKERS

Volume 3 Number 10

Heinz & Del Mon.
RECEIVED LIBRARY
MAR 0 8 2002
KIRKLAND & ELLIS
CHICAGO OFFICE

## CONTENTS:

### Williams 1
Jones Day and The Blackstone Group shepherded Williams Communications through a restructuring that took an unusually short time, but was not short on complications.
■ The Players 3

### Heinz 8
A Reverse Morris Trust deal structure allowed Heinz to spin off unwanted lines of business to Del Monte, with everyone involved happy with the result.
■ How it works 9

### 2002 Snapshot 10
A look at how many deals hit the record books in which industries.

### Safeway 11
With Britain's Safeway PLC surrounded by eager suitors, we take a look at the origins of the company, and the LBO that dealmakers still say was the most successful of all time—KKR and Safeway Inc.

### Word to the Wise 14
Financial institutions did well compared to many companies in other sectors but they will need to move carefully through the new whitewater of federal requirements and stock exchange reforms.

### Yoyaku 24
Japan's latest changes to its Commercial Code include a new creature; similar to warrants, these rights can be exchanged for shares and will give companies a new way to raise capital.

### Tulane Conference 27
The program signals the rising issues for 2003.

# A Six-Month Frenzy

## THE SHORT HAPPY RESTRUCTURING OF WILLIAMS COMMUNICATIONS

IT WAS FOUR IN THE MORNING. The deal had been painfully coalescing over the last several weeks and days and hours, and was now achingly close to finality.

Within minutes it spilled out of control like mercury.

Just as quickly, it came back together in a different form.

Williams Communications Group was hoping to enter Chapter 11 with a pre-packaged restructuring plan that hinged on $150 million in new money from its erstwhile parent, Williams Companies Group. But the two sides couldn't come to terms. Richard Wynne of Kirkland & Ellis, advisor to the bondholders had just come in to the Jones Day conference room in New York that served as command central. "We're never going to be able to do a deal with these people," he said. Indeed, advisors to Williams Companies, including Thomas Lauria of the Miami office of White & Case, were leaving the building.

Corrine Ball of Jones Day and Tim Coleman of The Blackstone Group, among the many other advisors in the room, looked at Mr. Wynne from across a table covered with documents and coffee containers and all the familiar detritus of dealmaking. It was Friday, April 19 and in four days would come the year anniversary of the spin-off of Williams Communications Group, a key deadline to meet if creditors' possible rights against the former parent were to be preserved. Was all the work about to be for naught?

Mr. Wynne was not finished. "Here's a structure I think will work," he continued. "We'll do it without them. Let's get the $150 million we need from another investor."

After all, Williams Communications was a strong company, despite its heavy debt. A long distance network, its customers were other telecom companies; its rivals were WorldCom, AT&T, and Sprint. Its anchor customer was SBC Communications Inc. With that exclusive twenty-year supply contract, Williams Communications actually had revenue, unlike so many of its confreres in the industry. Mr. Wynne suggested that Williams and its financial advisors at Blackstone simply find a substitute for the reluctant former parent. Recalls Mr. Coleman: "It was like a light bulb. Everyone agreed. At four in the morning, the deal had fallen completely apart and an hour later it was put back together, and made more simple by doing without Williams Companies."

Credit for making it simple also goes to Leucadia National Corp., a New York investment bank that was the winning bidder. Says

*Williams →*



*"The tumult and the shouting dies; The captains and the kings depart."*

054
EXHIBIT

# Williams

*continued*

Irwin Gold of Houlihan Lokey Howard & Zukin, advisor to the out-of-court bondholder committee that became the official creditors' committee: "What separated Leucadia from the other bidders, who were only offering capital, was the solution to the issue of what to do with Williams Cos., the former parent. Without Leucadia, there would have been a three-way discussion about how to divide up the equity of the new company, among the new money, the former parent, and the bondholders. Leucadia cashed out Williams Cos., which simplified and streamlined the process."

There were still six months to go, however. And those six months would involve last-minute arguments before Judge Burton Lifland by Corrine Ball that finally herded SBC into the corral, crucial licenses granted late in the process by the FTC, and perpetual negotiations with the fractious bondholders, banks, board members, and shareholders.

Not to mention the fact that in the midst of all this the energy industry collapses, what with Enron and the California mess, and the former parent company itself stares straight at bankruptcy. Recalls Mr. Lauria of White & Case: "My client suddenly gets credit downgrades and the stock price goes through the floor, and they're suddenly not sure of their own future. They arrange to borrow a billion eight and to sell assets to bring in another billion or two. We almost had dueling bankruptcies. It was one more crazy thing that happened in this deal."

Indeed, it was only on December 1 that some of the key advisors got their fees.

Says one of the relieved: "We didn't know it was going to work until we got the final $180 million out of escrow last Monday. Until then, many of us were walking around in a funny position. With cheeks puckered."

## Angry Banks

In the early 1990s, Williams Cos. was the first to come up with the idea of running fiber optic cable through its network of decommissioned pipelines. Through this network of unused gas pipes, Williams created a telecom network, which it sold to WorldCom. Williams retained certain assets and a single strand of fiber optic cable and, when their non-compete agreement with WorldCom expired, they ramped up the business once again.

From the beginning, says Mr. Lauria, the company wanted to separate the two businesses. The strategy became particularly attractive, he says, after the initial public offering of the communications company when the indicated value of that company, based on the 19 percent of stock now publicly traded, exceeded the combined market cap of the parent. What's more, the energy company was generating $2 billion of after-tax income, but the market was punishing its stock price because it owned 81 percent of a telecom company.

In April of 2001, Williams Companies spun off Williams Communications to shareholders in a tax-free transaction. Prospects for the newly independent telecom looked good. It had a couple of billion in liquidity, recalls Mr. Lauria, which, by all measures, was enough to fund the company's capital deficits for at least two-and-a-half years. "Williams Communications Group is a provider's provider, if you will," Mr. Lauria points out. "They don't sell directly to the consumer but to other networks. They provide a spine for SBC, for example. Despite the rest of the industry coming down around them, they were doing so well that in the third quarter of 2001 they started buying in their own bonds at a discount—$500 million at 40 cents on the dollar. They wanted to deleverage their balance sheet and take advantage of the discount. The banks went ballistic."

Indeed they did. Agents for the Asian lenders charged into the offices of Williams Communications and demanded to know how a telecom company could justify using cash, its scarcest resource, to pay off what the banks saw as junior securities, structurally subordinate to their own claims.

"Think about what was going on in the industrial space at the same time," says Corinne Ball. Level 3 Communications Inc. had just completed a massive tender offer for its bonds. RCN Telecom had made the same move. Banks and other lenders had seen telecom companies burning cash to retire debt before many had come close to breaking even and often just before many liquidated for under ten cents on the dollar. Says The

**Addendum:** In our last issue (volume 3, number 9), we published an article entitled "Confidentiality Agreements in the M&A Process: A practical approach to negotiating confidentiality agreements in the corporate acquisition context," by Henry Lesser (co-chair of the M&A Group at Gray Cary Ware & Freidenrich LLP, Silicon Valley, California) Ann Lederer and Charles Steinberg. We wish to acknowledge that this article was reproduced from Section D of the American Bar Association publication entitled "An International Institute on Mergers & Acquisitions: Doing Deals: North American and European Perspectives (copyright ABA 2002), which in turn acknowledged that the article had been reproduced from 2 Journal of Corporate Disclosure and Confidentiality No.1 (April 1991), p7 and republished in The M&A and Corporate Governance Law Reporter, Vol.II, No.2 (Oct.1991) and in The Mergers & Acquisitions Handbook (2nd.ed.1993).

EXHIBIT D    055

Blackstone Group's Tim Coleman, advisor to Williams Communications: "The banks were saying: 'Don't spend my cash. Unless you can show me you have a viable business, don't spend my cash.'"

The banks not only blasted Williams Communications for spending the cash, but also demanded to know why it had not yet retained restructuring experts. Enter Jones Day's Corinne Ball and The Blackstone Group's Tim Coleman. Ms Ball's first task was to evaluate the banks' vehement objections to the bond repurchase. Did they have a viable claim that Williams Communications by buying back the junior bonds had defaulted on its obligations to the banks?

Her answer was no. "Although the banks were angered, although the banks wanted to be heard, although the banks wanted to stop this program, they did not have an absolutely clear path to achieve their objectives through their documents," she says. "I said, 'These banks frankly don't have a leg to stand on. Tell them we're entitled to run our business as we see fit.'" Mr. Coleman, says Ms Ball generously, had a more long-term approach. "Tim was saying, 'Well, it may be good that you and your banks don't have a default fight right now, but let's think about how you're going to live with these banks into the future, a future that will entail a much more strident and difficult telecom market.' " Mr. Coleman concurs, noting that The Blackstone Group would have advised the company to have approached the repurchase of its bonds with far more caution.

Anyone familiar with bankruptcies and restructurings knows that educating the client is one of the most important tasks. This case was unusual in that the company both had a respectable amount of cash on hand and a significant source of revenue from anchor client SBC. Because it was so different from other failing telecoms, it was that much more difficult for management to see a Chapter 11 filing as a good thing. Explains Mr. Coleman: "The company felt, and rightly so, that they were a better company than some of their predecessors who had gone down into liquidation. They had customers. They had a network. They had a very large relationship with SBC. This was clearly a good business, which made some of the analysis harder for the company."

Williams Communications' first instinct, with its banks playing up, was to replace the banks with new lenders. Says one restructuring expert: "All companies think they have all these great relationships with financial institutions around America, but what they don't realize is that those relationships exist as long as they can continue to pay fees and cause no risks. They all think they can go out and get more help from these people who have always been there with the love and the hugs and the golf outings. And the underwriters are saying, 'I'm here for you. Why don't we try this issue, or why don't we try that approach.' And then the banker comes back sheepishly and says, 'Well, okay, we can't get credit approval for that.' So the company quickly found out that none of its lenders was going to put any more money at risk."

## Getting Rid of Debt

As it worked with its financial advisors at Blackstone, the company next began to look at the possibility of some kind of M&A transaction. It did not want to appear to be a seller in distress but it had not achieved positive cash flow and, with its debt of around $6 billion, interest payments were hitting between $500 and $600 million a year. Says Ms Ball: "Who is going to buy this company, or invest cash in it, when it has $6 billion worth of debt on its balance sheet?" Blackstone advised the company to file for Chapter 11, restructure itself, and eliminate the debt. A new investor or an acquiror would then look at the company with far more optimism.

"There are three kinds of companies that go into Chapter 11," explains Blackstone's Mr. Coleman. "There is the kind that is never going to survive. This is the company with a bad business and a bad balance sheet. Then there is the company that has a bad business and an okay balance sheet. They need to fix that business and use the bankruptcy court to help them fix it. This might be a big retailer that needs to get rid of a group of contracts or shed stores. The third kind of company that goes into Chapter 11 is the one that has a good business and a bad balance sheet. This was Williams Communications."

Blackstone convinced the company that it needed to get rid of its debt and that the only way to do that was to file *Williams* →

**The Players:**

Jones Day
Counsel to Williams
Communications Group
Corinne Ball
Erica Ryland
Marilyn Sonnie

The Blackstone Group

Kirkland & Ellis

Houlihan Lokey

Schulte Roth & Zabel
Counsel to Official
Michael Cook
Michael Sage

Weil, Gotshal & Manges

Cahill Gordon

Clifford Chance Rogers
& Wells

The Consulting firms

Wachovia Securities

# Williams

*continued*

for Chapter 11. "We do think that you can get through this negative cash-burn period and become a cash-flow positive company. But even when you get there, your company will not make enough money soon enough to continue to meet this interest burden. Therefore, what you need to do is go into Chapter 11 and wipe out this debt," recalls Mr. Coleman. "That was the analysis."

Williams Communications and its advisors struggled to put together a package that they could take into court. The former parent, Williams Companies, and the bondholders would share the equity in the reorganized company. Williams Companies would make an additional loan of $150 million so Williams Communications could pay down some of its bank loans.

Williams Cos. had agreed to serve as guarantor for a $1.5 billion note that Williams Communications had issued to a trust, which, in turn, had sold $1.4 billion of that amount in a private placement. "With bankruptcy imminent," recalls Thomas Lauria of White & Case, counsel to Williams Cos., "we wanted to eliminate covenants in those notes that would have caused an acceleration on a bankruptcy of Williams Communications. We agreed to support their Chapter 11 strategy and they agreed to our consent solicitation to get certain of those covenants eliminated. We defused the risk that we would be on the hook for $1.4 billion. That was done in March."

Williams Cos. had also provided a guarantee for $753 million in synthetic lease financing Williams Communications had taken out to build out a portion of its network from Houston to Washington, D.C. "They exercised their right, or purported to exercise their right, to purchase equipment covered by the lease. We, as guarantor, were then obligated to pay the purchase price on their behalf," says Mr. Lauria. "We felt the exercise was not proper. We advised them that we would block the deal, or that we might not fund it, or that we would insist on being treated as a senior secured creditor as to the equipment purchased by that financing. We reached an

> ## "Every party is looking for reasons why their position is the strongest on the planet and why everybody else's is weaker."
>
> ### Tim Coleman
> ### — The Blackstone Group

accommodation and we did fund the purchase."

The centerpiece of the agreement would be $150 million of new money from the former parent company. "It took a lot of work to arrive at that number," recalls Kirkland & Ellis's Richard Wynne. "That amount of money would have enabled the company to pay down its bank debt and proceed with a restructuring." But in the gray hours before dawn that April Friday, that arrangement collapsed. Says Mr. Lauria, counsel to Williams Companies: "We withdrew from the discussions."

All appeared lost until, with Mr. Wynne's lightbulb, Blackstone took on the task of finding a new investor to replace Williams Cos. The company had an agreement with its banks and roughly one-third of its public bondholders to pay down the banks by $150 million, draw up new credit documents covering the outstanding balance, and give the bondholders and Williams Cos. a pro-rata share of the new company. Also, it was agreed that, as a less drastic measure given the Williams Communications' robust prognosis, only the holding company would enter Chapter 11, leaving the operating company out of bankruptcy and all its customers unaffected.

And so the company met its first deadline and filed for Chapter 11 on April 22, 364 days after the parent company spun off Williams Communications Group. Had it filed a day later, the bondholders and other creditors would have had no right to seek redress against the parent. A bankruptcy court can reach back one year to void or restructure transactions to benefit the constituents of a company, but beyond 365 days little can be done.

The company now faced a second deadline. The banks decreed that bankruptcy proceedings had to conclude by October 15. Explains Mr. Lauria: "The banks had liens on the operating subsidiary. If, and only if, the reorganization could be accomplished by October 15, they would not exercise these rights and force the operating company into bankruptcy."

Williams Communications and its advisors had roughly six months to get the job done.

## The OK Corral

As in all restructurings, each group scrutinizes all the relevant documents and marshals arguments that will either preserve its position or enable it to leap over other constituents to a higher position on the food chain. "Every party is looking for reasons why their position is the strongest on the planet and why everybody else's is weaker," says Mr. Coleman.

The banks were in the strongest position

EXHIBIT D    ~U~057

through the whole process because, unusually enough, the company had enough cash on hand to cover all their claims. Says Mr. Coleman of The Blackstone Group: "Remember, all of the way through all of this, you had a group of banks that had in its possession cash collateral, and at any point the banks could seize that cash." Adds Thomas Lauria of White & Case, counsel to Williams Companies: "The banks knew they would get paid in full, regardless. They were the toughest group to get to move on the issues. They also had the least level of concern about whether the company lived or died."

The bondholders were poised to argue that substantial portions of the former parent's $2.3 billion in claims against the company should be treated as equity, relegating these claims to a lower class of credit, with recovery that much less likely. Under Section 105 of the bankruptcy code, "the court may issue any order, process, or judgment that is necessary or appropriate." Factors to be considered include: whether the debt took the form of notes or other named financial instruments; whether it had a fixed maturity date, schedule of payment and rate of interest; whether other financing was available and if a reasonable creditor would made the loan; whether the claims were subordinated to other creditors; and whether advances were used to acquire capital assets or for operating costs.

The central question before the court would have been whether or not an arms-length lender would have made similar loans, or whether the parent had inside knowledge of the borrower's finances and extended the credit to preserve its own equity interest. The bondholders told the court there might be grounds to recharacterize as equity the $1.4 billion in debt incurred from the bond guarantee. Williams Communications, they argued, "had no access to equity or debt markets at the time."

The bondholders said they were also suspicious of Williams Cos.' $753-million claim from the network lease purchase, arguing that the former parent should have issued equity rather than a note to avoid diluting other claims with bankruptcy allegedly imminent. Says Richard Wynne of Kirkland & Ellis: "We looked at thousands of documents and interviewed witnesses."

Meanwhile, Blackstone was running a full search for an investor, contacting both financial and strategic acquirors around the world, maintaining sales logs, entering into confidentiality agreements and starting negotiations with over 50 different potential buyers.

Yet another deadline loomed: July 15, 2001, when Williams Communications was obligated to

make a $150-million payment to its banks, having already given them $200 million when it filed for Chapter 11. "We had to decide how comfortable we were with the process of finding an investor," Mr. Coleman recalls. "Because if we weren't comfortable, then the idea that we would actually go ahead and pay this money out might not be a good one. We felt, along with the board and management, that the process was going well. We had enough interested parties and potential deals on the table to go forward."

### Yet Another Crisis

By the late summer of 2002, Leucadia National Corp., a New York investment group, was the clear front-runner. The New York investor group had approached Williams Cos. in the spring seeking to buy its claims, which it would then be in a position to convert to equity. "We were in the midst of lengthy negotiations with them on the terms of that sale," recalls White & Case's Mr. Lauria. "That conversation expanded to include a discussion of terms on which the bondholders would release their claims as well so that there would be no prospect of litigation for the new company over historical issues."

Then, just as things were going so well yet again, the company's most important asset—its twenty-year exclusive supply contract to one of the country's largest telecom companies—looked set to disintegrate. SBC proclaimed that the spin-off constituted a change in control of Williams communications that triggered SBC's right to renegotiate its contract. "We were all thinking, 'Gee, this will be one of the most effective Chapter 11s ever. Jobs aren't going to be lost, a good company is not going to go under, and it's all proceeding so quickly,'" recalls Mickey Pohl of Jones Day's Pittsburgh office. "Then it looked like SBC would change everything."

SBC had a representative on the board of Williams Cos., who had voted for the spin-off some eighteen months before. "There is plenty of law that says you can't complain about some-

> "The banks knew they would get paid in full, regardless. They were the toughest group to get to move on the issues. They also had the least level of concern about whether the company lived or died."
>
> —Thomas Lauria
> White & Case

Williams →

~~~058

EXHIBIT D

# Williams

*continued*

thing that you helped bring about," says Mr. Pohl. But SBC was alleging that their director knew nothing about the spin-off and that his vote came at the first meeting of the board that he had ever attended. "We had all kinds of e-mails and records to show that this was not his first meeting and that the director was fully briefed," recalls Mr. Pohl.

Corinne Ball and her team had prepared a draft settlement as part of the nascent plan of reorganization, which they put before the judge. As part of his ruling, Judge Lifland declared that the SBC contract was a core asset of the company, that the fate of that contract was essential to any reorganization, and that SBC itself was a key party to the proceedings. Typically, directors and officers are released from any liability in such a reorganization. Significantly, Corinne Ball and her team specifically excluded SBC's representative on the Williams Communications board from this protection. Asks Mr. Pohl: "Why should SBC have it both ways?" Adds Ms Ball: "SBC did not contest the facts, nor did it appeal the judge's order."

> **In the courtroom, Jones Day's Mr. Mickey Pohl stood up, ready to start his opening statement. "May I begin, Your Honor?" That would turn out to be the only sentence on the record.**

Next, Ms Ball asked the judge for a temporary restraining order barring SBC from rescinding the contract. Judge Lifland granted her motion without notice to SBC. "This was not an uncommon order—to preserve the status quo," says Mr. Pohl. "Also, had SBC been given notice and word had leaked to the Street, in bankruptcy court this would have been like crying 'Fire!' in a crowded theater."

Both sides raced to prepare for the hearing on the TRO, which is required to be held within ten days of the order. Ms Ball called Mr. Pohl and they assembled a large litigation team. "We worked twenty hours a day for over a week getting ready for that hearing," says Mr. Pohl. "It was going to be a ten-billion-dollar day." That was what the SBC contract was worth over the rest of its life.

On the day of the hearing, there was standing room only in the courtroom, where Jones Day had its screens and projectors ready. Judge Lifland received both sides in chambers. SBC argued strenuously that its director should be protected under the plan of reorganization as were all the other directors. Ms Ball pointed out that SBC had not appealed the judge's order from the first hearing. She also insisted that SBC was arguing a contradiction: they were important enough to deserve to be released from future liability but not important enough to be prevented from rescinding the company' main asset. The fact that they were appearing in court arguing for protection only revealed the paradox they were trying to straddle. "It was like karate," she recalls. "We turned the force of their attack back on them."

The judge said he had decided to proceed by direct examination, which meant that witnesses' testimony would be read into the record and then each would submit to cross-examination. The judge then virtually dispensed with SBC's main argument. He told them, according to Mr. Pohl, not to spend too much time on the issue of jurisdiction. "I'm sure I have jurisdiction," he said flatly. "Is there any chance this can be resolved by agreement?" The answer was no. For now.

In the courtroom, Mr. Pohl stood up, ready to start his opening statement. "May I begin, Your Honor?" That would turn out to be the only sentence on the record.

The judge looked down from the bench and said, "Where is your adversary?" SBC and its team were huddled in the hallway. "Go out and tell them we're ready to start." When they came in, SBC said it was willing to begin settlement discussions. Says Mr. Pohl: "Opening statements are a wake-up call for everyone."

The Jones Day lawyers said they would agree to a fifteen-minute meeting in the jury room but that they were not prepared to be delayed for no purpose. The talks lasted longer than fifteen minutes, Mr. Pohl recalls, and the judge announced that the hearing would begin after a lunch recess. The two sides needed more time, so the Williams Communications team agreed to bump the hearing forward a week. The temporary restraining order remained in place.

"We cleaned their clock," says Ms. Ball. "They agreed to the entry of the preliminary injunction barring rescission of their contract, and agreed to a settlement."

## The Final Cliff-hanger

At last, the whole deal had been assembled. Then the Federal Trade Commission stepped in.

EXHIBIT D

059

THE M&A JOURNAL

Would the delicate arrangements all collapse yet again?

The feds declared that the reorganization of Williams Communications constituted a change of control and their approval was required for all FTC licenses to be transferred to the new company. "There was much finger pointing as to who had dropped the ball," recalls Mr. Lauria of White & Case. "We concocted an arrangement under which the deal would close, with all Leucadia's money in escrow. Leucadia and the bondholders would each get their equity, and if the licenses were not granted, the money would go back to Leucadia and we would get their equity."

Fortunately for all concerned, the FTC granted the licenses during Thanksgiving week. As it now stands, the unsecured creditors own roughly 54 percent of the equity of the newly reorganized company. Leucadia has invested $150 million in the company, in addition to paying $180 million to purchase the claims of the former parent, and owns 44 percent of the equity. Under the plan of reorganization, there is a channeling injunction, which could allow holders of securities-related claims up to two percent of the equity of the reorganized company and potential recovery from the company's officer and director liability insurance policies. There are nine directors on the board, four selected by the committee of unsecured creditors, four by Leucadia, and one director who is also the CEO. The company will change its name to WilTel Communications Group Inc.

It now has only $375 million in bank debt.

The final vote was as follows:

Class 2—pre-petition secured claims (the banks): holders of $652.5 million in claims voted approve; zero voted to reject, out of $725 million total claims.

Class 4—Williams Cos. assigned claims: $2.36 billion voted to approve; zero voted to reject, out of $2.36 billion eligible to vote.

Class 5—senior redeemable notes (bond holders): $2.15 billion voted to approve; $24.5 million voted to reject, out of $2.36 billion eligible to vote.

Class 6—other unsecured claims: $13 million voted to accept; zero voted to reject.

"This whole thing was such a soap opera," says an advisor who worked on the deal from beginning to end. "We had so many meetings that would end with everybody saying, 'F-you,' and retreating to their corners and then starting again in the morning. But after much saber rattling, it's pretty amazing that in six months, the parties were able to reach a global agreement that solved all these problems." **MA**



EXHIBIT D

# KIRKLAND & ELLIS LLP

## Richard L. Wynne  Partner
rwynne@kirkland.com

Los Angeles
T 213-680-8400
F 213-680-8500



### Areas of Practice
· Restructuring, Insolvency, Workout & Bankruptcy

### Professional Profile
Richard Wynne is the leader of Kirkland's rapidly expanding West Coast restructuring, workout and bankruptcy practice in our Los Angeles office. Rick focuses his practice on the representation of individuals and corporations in financial distress during bankruptcy proceedings as well as out-of-court negotiations. Rick is an ABC (American Board of Certification) Certified Business Bankruptcy Attorney, and is listed in The K&A Restructuring Register as one of the top 71 lawyers in the United States who "practice in the restructuring, reorganization, insolvency and bankruptcy arenas."

Rick was featured in The M & A Journal article, A Six-Month Frenzy. He was also mentioned in the article, Big Suits: Conseco Bankruptcy. Rick's representation of the creditor's committee in the Reed Slatkin Investment Fund bankruptcy was highlighted in the Bankruptcy Court Decisions article, Decision Lets Creditors' Counsel Stay in Fraud Fight. Rick shared his opinion of the Sarbanes-Oxley Act in the article, Officer Liability Could Become Common Bankruptcy Issue from Bankruptcy Court Decisions. He was also quoted in the articles, Chicago Firm Acquires Bankruptcy Boutique and Wynne Spiegel Itkin Joins Kirkland & Ellis regarding Wynne Spiegel Itkin's move to Kirkland's Los Angeles office. The Los Angeles Business Journal featured him as one of the best and most sought after L.A. professionals in the article, White Knights in Pinstripe Suits.

A frequent writer and speaker on bankruptcy-related topics, his work has been featured in various journals, magazines, and seminars (click to view):

The Coin of the Realm
*Los Angeles Lawyer*

The UNCITRAL Rule on Cross-Border Insolvency
*Los Angeles Lawyer*

Reorganizing in a Fish Bowl:  Public Access vs. Protecting Confidential Information
*American Bankruptcy Law Journal*

LBO's:  Legal Binding Obligations or Looting Business Opportunities
*Norton Bankruptcy Law Adviser*

Qualified Retirement Plan Benefits and the Debtor Participant in the Ninth Circuit in Light of the U.S. Supreme Court's Ruling in Patterson v. Shumate
*California Bankruptcy Journal*

Sports Franchises and Bankruptcy Law
*ABI Bankruptcy Battleground West*

### Education
Columbia University Law School (J.D., 1982)

EXHIBIT E                   ~ ~ - 061

Parker School of Foreign and Comparative Law, Columbia University

Indiana University, Bloomington (B.A., 1979) with Distinction

**Admissions/Qualifications**
1982, New Jersey
1983, New York
1985, California

**Courts**
United States Supreme Court
Second Circuit Court of Appeals
Ninth Circuit Court of Appeals
Northern District of California
Southern District of California
Central District of California
District of New Jersey
Eastern District of New York
Southern District of New York

**Memberships & Affiliations**
American Bankruptcy Institute
American Bar Association
Los Angeles Bankruptcy Forum
Financial Lawyers Conference
Los Angeles County Bar Association

**Other Distinctions**
Offices:

California Bankruptcy Journal, Editor, 1993-present

American Bar Association Litigation Section
--Bankruptcy and Insolvency Committee, Co-Chairman, Programs, 1992-1994

Los Angeles County Bar Association
--Chairman, Bankruptcy Committee, 1995-1996
--Chairman, Mediation Subcommittee, 1994-1995
--Chairman, Lobbying Committee, Bankruptcy Judgeship Act, Testified before the House of Representatives' Judiciary Committee

Certifications:

Business Bankruptcy; American Bankruptcy Board of Certification

Certified Mediator, Bankruptcy Court for the Central District of California, 1995-present

**Seminars**
"Failure of Corporate Stewardship," INSOL International Annual Conference, September 2003

"M&A Issues: Buy-side Dynamics," ABI Annual Investment Banking Program, June 2003

"Operating a Business in the Zone of Insolvency," ABA Section of Litigation Program, January 2003

"Negotiating Ethics: An Oxymoron," Financial Lawyers Conference,

· ▪ ~ ~ 062

**EXHIT E**

November 2002

"Liability and Causes of Action Involving Directors and Officers," 76th Annual Meeting of the National Conference of Bankruptcy Judges, October 2002

"Creative Uses of ADR in Bankruptcy," ABI Bankruptcy Battleground West, March 2001

"The Criminal Process vs. the Bankruptcy Process," ABI Bankruptcy Battleground West, March 2000

"Reorganizing in a Fish Bowl: Practical Lessons in Media Relations, Client Control and Protecting Confidential Information" 73rd Annual Meeting of the National Conference of Bankruptcy Judges, October 1999

"Franchise Reorganization Cases," ABI Bankruptcy Battleground West, March 1999

"Remembering Who the Client is - Effective Representation of Creditors and Creditors' Committees in Business Cases," ABI Bankruptcy Battleground West, March 1998

"Lights, Camera, Action: Issues in High Profile Bankruptcy Cases," Los Angeles Bankruptcy Forum, March 1998

"Cross Border Insolvency Problems and Solutions," Los Angeles County Bar Association, December 1997

"Recent Developments, Ninth Circuit Bankruptcy Symposium," February 1997

"Assignments: Absolute or Non-Absolute Cash Collateral or Not Some Musings on the State of the Fight," November 1996

"Alternative Dispute Resolution and Mediation," Arthur Andersen's Corporate Recovery Services Scottsdale Conference, September 1996

"Musical Chairs and Ethical Battles: Changing Firms, Multiple Roles and Disinterestedness," American Bankruptcy Institute, March 1996

"Mediation in Bankruptcy," Federal Bar Association, October 1995

"Reconcilable Differences: Mediation and Arbitration in Bankruptcy Courts," Los Angeles County Bar Association, April 1995

"Current Developments in Chapter 11," American Bankruptcy Institute, Third Annual Bankruptcy Battleground West, March 1995

"Chapter 11 in Five Short Acts," UCLA Anderson School of Management, Executive MBA Symposium, 1995

"The New Federalism in Multinational Insolvencies," National Conference of Bankruptcy Judges, American Bar Association Business Bankruptcy Committee Program, October 1994

"Some Faith, Some Credit: Recent Developments in Multinational Insolvencies," Commercial Insolvency in the Americas Symposium, Spring 1994

"Real Estate Workouts & Insolvency: The Debtor Perspective," Executive Enterprises, Inc. Seminar, San Diego, CA Spring 1994

063

EXHIBIT E

"Reversal of Fortune: Fraudulent Conveyance Laws," Los Angeles County Bar Association, Spring 1994

"Pending Chapter 11 Legislation: SB 540," Los Angeles County Bar Association Fall 1993

"Sex, Lies & Bankruptcy: Intro to Chapter 11," American Bar Association Annual Meeting, 1993 Los Angeles County Bar Association, 1992

"Bankruptcy Litigation," American Bar Association, Litigation Section Annual Meeting, 1991

"LBO's: Legal Binding Obligations or Looting Business Opportunities," Los Angeles County Bar Association, Beverly Hills Bar Association, Infocast Seminars, 1990-1991

**Prior Employment Experience**
Shareholder, Wynne Spiegel Itkin, A Law Corporation, Los Angeles, CA, 1995-2001

Managing Shareholder, 1988-1994, Shareholder, 1988-1995, Associate, 1985-1988, Levene & Eisenberg, P.C., Los Angeles, CA

Associate, Kronish, Lieb, Shainswit, Weiner & Hellman, New York, NY, 1984-1985

Associate, Windels, Marx, Davies & Ives, New York, NY, 1982-1984

EXHIBIT   E   064

## DECLARATION OF SERVICE

      I am over the age of eighteen years and not a party to the within action. I am employed in an office that employs a member of the bar of this Court, at whose direction the within service was made. My business address is Kirkland & Ellis LLP, 777 South Figueroa Street, Los Angeles, California 90017.

      On September 26, 2003, I served the following **DECLARATION OF CHARLES B. ROSENBERG IN FURTHER SUPPORT OF THE FOURTH AND FINAL FEE APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF KIRKLAND & ELLIS LLP** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

      The above-described pleading was transmitted to the indicated parties set forth above in the manner described below:

**XXXX**    **By United States Mail.**

      [X] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on September 26, 2003, at Los Angeles, California.

      I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Cindy Mitchell

***IN RE REED SLATKIN***
**LIMITED NOTICE and POST-**
**EFFECTIVE DATE SPECIAL NOTICE**

UNITED STATES TRUSTEE
Brian Fittipaldi
Staff Attorney
128 East Carillo Street
Santa Barbara, CA 93101

Trustee
R. Todd Neilson
Neilson Elggren LLP
10100 Santa Monica Blvd., #410
Los Angeles, CA 90067

Trust Board Member
Michael B. Azeez
Unitel Wireless Communications Sys
P.O. Box 1000
Pleasantville, NJ 08232-0038

Trust Board Member
Anthony Podell
3 Pine Tree Lane
Rolling Hills, CA 90274

Attorney for Debtor
Richard Pachulski, Esq.
Pachulski, Stang, Ziehl Young Jones &
    Weintraub
10100 Santa Monica Blvd., # 1100
Los Angeles, CA 90067

Attys to Trustee
John P. Reitman
Gumport Reitman & Montgomery
550 South Hope Street, Suite 825
Los Angeles, CA 90071-2627

Trust Board Member
Stuart W. Stedman, President
Wesley West Interests, Inc.
P.O. Box 7
Houston, TX 77001

Trust Board Member
Gregory B. Abbott
1200 Kessler Drive
Aspen, Co 81611

Attorney for Debtor
Jay L. Michaelson, Esq.
Joseph M. Sholder, Esq.
Michaelson Susi & Michaelson
7 West Figueroa Street, 2nd Floor
Santa Barbara, CA 93101-3191

Internal Revenue Svc
367 54 7981
HQ 5420
P.O. Box 99
San Jose, CA 95103-0099

Trust Board Member
George V. Kriste
20643 Seaboard Road
Malibu, CA 90265

Trust Board Member
John K. Poitras
30 Echo Lane
HC-01, Box 30
Woodside, CA 94062

**Request For Post-Effective Date Special**
**Notice ("RSN")**
**Pursuant To Order of the Court**

RSN-ATTYS-Denise Del Bianco
Steve Cochran
Julia W. Brand
Katten Muchin Zavis Rosenman
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

RSN - IRS
Debra W. Yang, U.S. Attorney
Edward M. Robbins, Jr. , Asst U.S. Atty
7211 Federal Building
300 N. Los Angeles Street
Los Angeles, CA 90012

RSN-Attys for Irving Rubin
Earle I Erman Esq.
Erman Teicher Miller Zucker Freedman
400 Galleria Officentre, #444
Southfield MI 48034

RNS-Attys for Jon von Gunten & von
Gunten Inc
Karen L. Grant, Esq.
205 E. Figueroa Street
Santa Barbara, CA 93101

RSN-Attys for Dayton Trust
Andrew W. Alper, Esq.
Frandzel Robins Bloom Csato
6500 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048-4920

RSN
Mary Schewatz
Special Asst U.S. Attorney
950 Hampshire Road, East Pavilion
Thousand Oaks, CA 91361

RSN-Attys for Ansel Slome
Joseph A. Eisenberg, Esq.
Jeffer Mangels Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

RSN-Attys Comerica Bank
David Gould, Esq.
McDermott, Will & Emery
2049 Century Park East, 34th Floor
Los Angeles, CA 90067-3208

RSN-Attys for J. Allen, C. Boron, L. Boron, I Chait, C. Ohl.,
N. Wise, R. Wise
Jeffrey C. Eglash
Buckmaster de Wolf/Charles K. Park
Howrey Simon Arnold & White
550 South Hope Street, Suite 1100
Los Angeles, CA 90071

RSN-Attys-H&A Milgrim Comm Family Trust
Lawrence B. Steinberg, Esq.
Hall Dickler Kent Goldstein & Wood LLP
9665 Wilshire Blvd., Suite 1050
Beverly Hills, CA 90212

RSN-Attys for Jon von Gunten & von
Gunten Inc
J. Scott Bovitz
Bovitz & Spitzer
880 West First Street, Suite 502
Los Angeles, Ca 90012-2445

RSN-Attys Comerica Bank
Arya Towfighi, Esq.
McDermott, Will & Emery
2049 Century Park East, 34th Floor
Los Angeles, CA 90067-3208

RSN-Attys for Parties-in-Interest
Howard Kollitz, Esq.
Richard D. Burstein, Esq.
Danning Gill Diamond & Kollitz LLP
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067-2904

RSN-Attys for Union Bank of Ca
Kenneth R. Chiat, Esq.
Quinn Emanuel Urquhart Oliver & Hedges
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RSN-Creditor
Susan Safirstein
PO Box 2122
Oldsmar, FL 34677

RSN-Attys for Jack Beam/Renee Beam
Michael C. Baum, Esq.
Resch Polster Alpert & Berger LLP
10390 Santa Monica Blvd., 4th Floor
Los Angeles, CA 90025-5058

RSN-Attys for Adversary Defendants-
A. Colaianni & A. Colymbo
Helena K. Kobrin
Moxon & Kobrin
3055 Wilshire Blvd., Suite 900
Los Angeles, CA 90010

RSN - Creditor
Carolyn Judd
1332 3/4 Miller Drive
Los Angeles, CA 90069